**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| | § | |
| **XTRALIGHT MANUFACTURING, LTD.** | § | **Case No. (18-31857-H1-11)** |
| **Debtor.** | § | |
| | § | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(1) AUTHORIZING DEBTOR-IN-POSSESSION POST-PETITION FINANCING;
(2) PROVIDING ADEQUATE PROTECTION; (3) GRANTING LIENS, SECURITY
INTERESTS AND SUPERPRIORITY CLAIMS; (4) AND AUTHORIZING
THE USE OF CASH COLLATERAL**

**AN EMERGENCY HEARING ON THIS MOTION IS SCHEDULED FOR THURSDAY, APRIL 12, 2018 AT 3:30 PM (CDT) BEFORE THE HONORABLE JUDGE MARVIN ISGUR IN COURTROOM 404, 515 RUSK, HOUSTON, TX 77002.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE OUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY CONSIDERATION HAS BEEN GRANTED.  YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

XtraLight Manufacturing, Ltd. (the **"Debtor"**), debtor and debtor-in-possession in the

above-captioned bankruptcy case (the **"Chapter 11 Case"**), hereby files this Emergency Motion

for Interim Order and Final Order (1) Authorizing Debtor-in-Possession Postpetition Financing; (2) Providing Adequate Protection; (3) Granting Liens, Security Interests and Superpriority Claims, and (4) Authorizing the Use of Cash Collateral, pursuant to sections 105, 361, 362, 363 , 364, and 507 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**)[1]:

## I. PROCEDURAL BACKGROUND, JURISDICTION, AND VENUE

1.      The Debtor commenced this case on April 11, 2018 (the **"Petition Date"**) and continues to manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.      No trustee or examiner has been appointed in the Debtor's bankruptcy case.  An official committee of unsecured creditors has not yet been established.

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue of this case and this motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 362, 363, 364, and 507 and Bankruptcy Rules 2002 and 4001.

7.      As of the date of this motion, no official committee of unsecured creditors has been appointed.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Order.

## II. STATEMENT OF FACTS

A.     Business Overview

8.     A detailed factual background of the Debtor's business and operations, as well as the commencement of this Chapter 11 case, is more fully set forth in the *Declaration of Jerry Caroom in Support of the Debtor's Chapter 11 Petition and Request for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference.  A summary of the factual background appears below.

9.     The Debtor is a Texas limited partnership initially engaged in the manufacture, and distribution of commercial and industrial lighting fixtures. The company commenced operations in 1986 and, in 1992 was organized as a Texas corporation. Jerry Caroom (**"Mr. Caroom"**), the debtor's current principal, purchased the company in 2000 and converted it to a limited partnership. The Debtor is managed by its general partner XLM Management, LLC, a Texas limited liability company formed in 2014. Mr. Caroom is XLM Management, L.L.C.'s sole director and manager. The Debtor's headquarters and manufacturing facility are located at 8812 Frey Road, Houston, Texas, which are premises the Debtor leases from Cay Capital LLC, an affiliated entity. The Debtor's has offices in 35 cities throughout the United States. XtraLight Services, a related business owned and operated by Mr. Caroom as a sole proprietorship, provides installation services to the Debtor's customers.[2]

10.     In 2009, the Debtor acquired Utility Metering Services (**"UMS"**), a product-independent firm specializing in the design, build, integration, and maintenance of utility programs.  UMS operates as a division of the Debtor. Through the combination of the Debtor's

---

[2] The Debtor and XtraLight Services share an in integrated, centralized cash management system, as is more fully described in the Debtor's first-day motion for interim and final orders authorizing the Debtor and XtraLight to (a) continue to operate their cash management system and maintain existing bank accounts, and (b) continue to perform intercompany transactions, and (ii) granting related relief.

lighting solutions with UMS' utility network and controls expertise, the nation's leading utility systems integration and automation consulting firm was formed.

11.     The Debtor has assets of approximately $9M and liabilities of approximately $18M, including secured bank debt owed to BBVA Compass Bank of approximately $5M. Company revenues for 2017 were approximately $33.3M and year-to-date, through March 2018, are approximately $5.8 million.  The Debtor currently employees 125 full time employees, including 7 management and executives.

12.     In 2016, a group of 28 employees in Massachusetts initiated litigation against the Debtor alleging wage violations under Massachusetts law related to minimum wage rates and overtime pay.  The plaintiffs are seeking aggregate damages in excess of $12M. The Debtor has vigorously denied the allegations and continued to defend itself in the litigation. However, litigation costs attendant with this matter have exceeded $500K and continue to average $37K per month. These crippling costs, coupled with risks associated with litigation, prompted the filing of this Chapter 11 case.

13.     During the pendency of this case, The Debtor intends to sell its lighting division, along with XtraLight Services, and to reorganize its operations around the UMS division.

B.     Financing History

14.     On or about April 23, 2010, the Debtor and XtraLight Services (collectively **"Borrowers"**) and Compass Bank (**"Compass"**) entered into a Master Loan Agreement (as amended, the **"Pre-Petition Credit Agreement"**) covering a revolving line of credit facility (the **"Revolving Credit Facility"**) secured by collateral of the type typical for asset-based loans (*e.g.*, accounts receivable, equipment, inventory, deposit accounts, related rights, and supporting obligations).

15.     Mr. Caroom, acting through XtraLight Services[3], is a co-borrower under the Pre-Petition Credit Agreement and has pledged similar assets to secure his obligations and those of the Debtor (collectively with the collateral the Debtor pledged, the **"Pre-Petition Collateral"**). Since 2010, the Master Loan Agreement has been amended 12 times such that it currently represents a revolving line of credit of up to $6,000,000, and two term loans, an Advancing Term Note dated December 21, 2017 in the original principal amount of $500,000.00, and Term Note D dated November 6, 2015 in the original principal amount of $1,000,000.

16.     As of the Petition Date, the Debtor is indebted to Compass in the aggregate approximate amount of $5 million as follows: (a) approximately $4,400,000 under the Revolving Credit Facility, (b) approximately $481,412 under the Advancing Term Note, and (c) approximately $194,444 under Term Note D.

### III. RELIEF REQUESTED

A.     Authority to Obtain Post-Petition Financing

17.     The Debtor has determined in the exercise of its sound business judgment that it needs and should maintain the Revolving Credit Facility as post-petition debtor-in-possession financing. The Debtor approached Compass to discuss continuing the Revolving Credit Facility as post-petition financing. Following good faith negotiations, the Debtor and Compass have agreed to maintain the Revolving Credit Facility on the terms set forth below, and to extend it to be effective, on an interim basis, as a post-petition facility (the **"Post-Petition Revolving Credit Facility"**) in accordance with and subject to a Term Sheet (the **"DIP Term Sheet"**) attached hereto as Exhibit A.

---

[3] In the loan documents with Compass, XtraLight Services is referred to as X-TRA Light Services.  Both names are dba's for this sole proprietorship.

18.     Additionally, the Debtor and Compass will work expeditiously to amend the Pre-Petition Credit Agreement to reflect the terms set out in the DIP Term Sheet and constitute a legally enforceable contract (the **"DIP Credit Agreement"**). Undersigned counsel will transmit copies of the DIP Credit Agreement by via e-mail or mail (at the Debtor's expense) to any requesting party in interest, and will also provide a certificate of service showing service of the DIP Credit Agreement, to the Office of the United States Trustee and counsel for Compass, prior to the requested emergency hearing.

19.     The Debtor believes that the Post-Petition Revolving Credit Facility represents the best source of post-petition financing available to it at this time. The Debtor considered and pursued alternative debtor-in-possession financing but believes that the Post-Petition Revolving Credit Facility is the best opportunity to preserve the going concern value of its business and seek reorganization, recognizing Compass's secured position. Without access to the Post-Petition Revolving Credit Facility, the Debtor will be unable to continue business operations in its present capacity and its going concern value will be at risk.

20.     The DIP Term Sheet contemplates a "creeping roll-up" of the Pre-Petition Revolving Credit Facility pending the Court's entry of a final financing order, and ultimately a full roll-up under the DIP Credit Agreement, upon the entry of a final order on this motion. Pursuant to the full roll up, all pre-petition debt to Compass under the Revolving Credit Facility will be converted to post-petition debt under the DIP Credit Agreement, as though all amounts due as of the petition date had been lent post-petition. The Debtor points out this feature, as the effect will be to convert some $4.4 million in pre-petition debt to a like amount of post-petition debt.

21.     As adequate protection under the pre-petition Revolving Credit Facility, Compass will maintain all of its pre-petition liens and, subject to a lien validation process, the Debtor will,

pursuant to Section 364(c) and (d) of the Bankruptcy Code, grant to Compass replacement and supplemental liens in all of its assets and properties, including but not limited to all causes of action under Chapter 5 of the United States Bankruptcy Code (including, but not limited to, Sections 544 through 550, and Section 553 or other applicable law (collectively, **"Post-Petition Collateral"**). The Debtor represents that Compass will be protected adequately with respect to the Revolving Credit Facility by the Pre-Petition Collateral and by the replacement and supplemental liens on the Post-Petition Collateral that otherwise would be defined as Pre-Petition Collateral under the Pre-Credit Agreement. In this manner, the Debtor satisfies Bankruptcy Code § 364(d)'s requirements.

22.     Compass also will be granted a first priority priming lien and security interest in the Post-Petition Collateral to secure all of its post-petition loans and its other claims under the DIP Credit Agreement, including, without limitation, the Post-Petition Revolving Facility. Any extensions of credit under the Post-Petition Revolving Credit Facility (and any of the Obligations under the DIP Credit Agreement) shall be secured by both the Pre-Petition Collateral and the Post-Petition Collateral, without the necessity of any further collateral or security filings by Compass, with all filings creating the Pre- Petition Liens to constitute perfection of the Post-Petition Liens in, to and upon the Pre and Post- Petition Collateral.

23.     Compass has agreed that any party in interest with standing to commence a contested matter or adversary proceeding may object to or challenge the validity of the Pre-Petition Credit Agreement and the liens on the Pre-Petition Collateral by the later of (i) five (5) days following entry of the Final Order and (ii) thirty (30) days following the retention of counsel, if any, by any official  committee, but in no event later than June 10, 2018 (the **"Challenge Period"**). Absent any timely objection, the lien finding shall automatically be final when the Challenge Period expires.

24.     Compass also has demanded and will be granted a super-priority administrative claim under Section 364(c)(1) of the Bankruptcy Code to the extent provided by Section 507(b) of the Bankruptcy Code.

25.     The Debtor and Compass agree that the term of the line of credit under the Post-Petition Revolving Credit Facility, and also the maturity date under the DIP Credit Agreement, shall be the earliest to occur of August 14, 2018, and the following dates: (a) the closing date of the sale of all or substantially all of the assets of either the Debtor pursuant to Section 363(d) of the Bankruptcy Code or XtraLight Services, or any operating division of either of them; (b) the date that is ten days after the date on which a confirmation order is entered in the Chapter 11 Case; (c) the date on which Compass accelerates the obligations under the Post-Petition Revolving Credit Facility; (d) the entry of an order by the Bankruptcy Court granting (i) relief from the automatic stay permitting foreclosure of any assets of either of the Debtor, Caroom, or Cay Capital (each a **"Loan Party"** and together the **"Loan Parties"**); (ii) the granting of any motion by Compass to terminate the use of cash collateral or lift the stay or otherwise exercise remedies against any cash collateral, (iii) entry of an order approving the appointment of a trustee or an estate fiduciary or an examiner which special powers, or (iv) any order granting the dismissal or conversion of any Loan Party's Chapter 11 case; (e) the filing or support by any Loan Party of a plan of reorganization that does not provide for indefeasible payment in full, on or before August 14, 2018, in cash or all obligations under the Post-Petition Revolving Credit Facility; and (f) the date on which any of the Loan Parties proposes to the Bankruptcy Court a sale of all or substantially all of any of the Debtor's assets not approved by Compass; the earliest applicable date being referred to hereinafter as a "Termination Date." On the Termination Date, the Post-Petition Revolving Credit Facility shall be deemed terminated and Compass shall have no further obligation to provide financing

pursuant to the Post-Petition Revolving Credit Facility, the DIP Credit Agreement or any other financing documents.

B.      Authority to Use Cash Collateral

26.     The Debtor seeks authorization to use Compass' cash collateral in accordance with the terms and conditions set forth herein and in accordance with the proposed 13-Week budget (the **"Budget"**) a copy of which is attached hereto as EXHIBIT B, as may be amended prior to the hearing on this motion, which is also the budget that governs and projects availability under the Post-Petition Revolving Credit Facility; (b) authority to use cash collateral on a final basis in accordance with the proposed Budget and Final Order; and (c) granting of adequate protection to Compass as regards the Pre-Petition Collateral pursuant to Bankruptcy Code §§ 361 and 363(c), as described herein.

27.     As noted, the Debtor has an immediate need to use cash collateral, including cash proceeds, to continue the operation of its business and to preserve the value of the business as a going concern.  Without such funds, the Debtor will not be able to pay costs and expenses, including, but not limited to, wages, salaries, rent, professional fees, and general and administrative operating expenses that arise in the administration of the Chapter 11 Case and in the ordinary course of the Debtor's businesses.

28.     The Debtor must be able to use cash collateral to continue its business operations on an uninterrupted basis. The Debtor requests interim authorization to use cash collateral in accordance with the terms and conditions set forth herein and in accordance with the proposed Budget until a final order granting further use of cash collateral can be entered.  The Debtor is without sufficient funds to operate for fourteen or more days until a final hearing on this Motion can be held. The Debtor's inability to pay timely the costs and expenses set forth herein will cause it immediate and irreparable harm. Because the Debtor's request for interim authorization seeks

the use only of that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the value of its assets pending a final hearing, its request complies with Bankruptcy Rules 4001(b)(2) and 6003

29.     The Budget itemizes the sources and uses of cash and provides a projection of cash receipts and expenditures. The Budget includes business expenses that are reasonable and necessary and that must be paid in order to continue the Debtor's business until such time as a final hearing on the Motion can be held. The Budget shall not vary by more than ten percent (10%) for each week during any Budget period or more than five percent (5%) on a cumulative basis for that portion of the Budget period then ended.

30.     Therefore, the Debtor seeks entry of an order pursuant to Bankruptcy Code §§ 361 and 363 and Bankruptcy Rule 4001(b): (a) authorizing the Debtor to use cash collateral to pay overhead, operating expenses, and ordinary course obligations necessary to maintain and preserve the going-concern value of the Debtor's assets and business, and to administer the estate, including, but not limited to, using cash collateral to pay (i) any prepetition operating and other expenses approved by the Court, (ii) the post-petition operations of the Debtor's business, and (iii) all costs and expenses arising in connection with the administration of this estate; and (b) granting adequate protection to Compass.

## IV. AUTHORITY

A.     The Post-Petition Revolving Credit Facility Should be Authorized

31.     Approval of the Post-Petition Revolving Credit Facility and DIP Credit Agreement will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including post-petition salaries and utility and vendor costs. Unless these expenditures are made, the Debtor will be forced to cease operations, which could result in irreparable harm to its business and substantial going concern value being

destroyed.  The credit provided under the Post-Petition Revolving Credit Facility will enable the Debtor to continue to pay salaries and operate its business in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all parties in interest.  This availability of credit hopefully can provide the Debtor's vendors and suppliers the confidence that will enable and encourage them to continue their credit and/or other relationship with the Debtor, or will provide the Debtor with liquidity to afford cash terms to certain extent.  Accordingly, the timely approval of the relief requested herein is imperative.

32.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in sections 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  Section 364(d)(1) of the Bankruptcy Code provides that the Court may authorize a debtor to incur debt secured by a senior or equal lien on property of the estate that is subject to a lien only if (a) the debtor is unable to obtain such credit otherwise, and (b) there is adequate protection of the interest of the holder of the lien on which such senior or equal lien is to be granted.  Section 364(d) is not applicable, as Compass is the senior lender.[4]

33.     The Debtor proposes to obtain the financing set forth in the Post-Petition Revolving Credit Facility by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to sections 364(c)(l), (2) and (3) of the Bankruptcy Code.  The financing thereunder will not create a priming situation where one did not exist previously; therefore, the Debtor is not attempting to

---

[4] To the extent that there exist such valid liens then the liens granted to Compass in the Interim and Final Orders will be junior thereto.

obtain financing secured by a senior or equal lien on property that is subject to a valid lien as set forth in Section 364(d).

34.     The Debtor's liquidity needs can be satisfied only if it is authorized to borrow funds under the Post-Petition Revolving Credit Facility and to use such proceeds to fund operations.  The Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1).  The Debtor also has been unable to obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein that did not require a priming fight with Compass.  Having determined that financing is available only under sections 364(c) of the Bankruptcy Code, the Debtor negotiated with Compass at arm's length.

35.     Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant debtors considerable deference in acting in accordance therewith.  *See, e.g, Bray v. Shenandoah Fed. Sav. & Loan Ass'n* (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co*., 47 B.R. 444, 449 (D. Colo. 1985).  The Debtor's reasonable business judgment is that the Post-

Petition Revolving Credit Facility is both necessary and appropriate under the circumstances of this case.

36.     First, the Debtor has been unable to procure the required funding absent the proposed claims and liens.  The Debtor submits that the circumstances of this case requires the Debtor to obtain financing under sections 364(c) and, to the extent applicable, § 364(d) of the Bankruptcy Code and, accordingly, the Post-Petition Revolving Credit Facility reflects the exercise of sound business judgment.

37.     Second, the Debtor needs the funds to be provided under the Post-Petition Revolving Credit Facility to preserve the value of its estate for the benefit of all creditors and other parties in interest.  Specifically, the Debtor needs the funds to be provided under the Post-Petition Revolving Credit Facility to maintain operations and signal to its suppliers and other vendors that it is credit-worthy and that its vendors can and should continue to provide their products to the Debtor on substantially the same credit terms as during the pre-petition period. Alternatively, the Debtor needs financing to pay ongoing expenses and to procure necessary inventory for servicing customers. Absent the Post-Petition Revolving Credit Facility and use of cash collateral, the Debtor will be unable to operate its business or prosecute the Chapter 11 Case, and the Debtor's vendors may refuse to provide the goods (and credit) the Debtor's business requires.

38.     The terms and conditions of the Post-Petition Revolving Credit Facility were negotiated extensively by well-represented parties in good faith and at arm's length, and were the best that the Debtor could negotiate. Accordingly, Compass and all obligations incurred under the Post-Petition Revolving Credit Facility should be accorded the benefits of section 364(e) of the Bankruptcy Code.

39.     The proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Compass to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Credit Agreement and the Pre-Petition Credit Agreement, and to take various actions without further order of or application to the Court. However, Compass must provide the Debtor and any official committee with five (5) business days' written notice to seek an injunction prior to exercising any enforcement rights or remedies in respect of the collateral or upon a shorter period of time after notice and a hearing. Therefore, the Debtor and any official committee reserve the right to seek injunctive relief to maintain non-consensual use of cash collateral post-termination event (not to force continued lending).

40.     Stay modification provisions of this sort are ordinary and usual features of DIP financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the DIP Credit Agreement, the Post-Petition Revolving Facility Agreement and the proposed Orders.

B.     The Use of Cash Collateral Should be Authorized

41.     Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or approval from the Court. Compass has consented to the Debtor's use of Compass' cash collateral in conformity with this Motion.  Further, section 363(e) provides that "on request of an entity that has an interest in property…proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The Debtor have satisfied the requirements of sections 363(c)(2) and (e), and should be authorized to use the cash collateral.

42.     For the use of the cash collateral, the Debtor is granting Compass a replacement lien on the same categories of collateral as secure the Pre-Petition Credit Agreement and a supplemental lien on all of the Debtor's other assets to secure the Pre-Petition Credit Agreement (the **"Post-Petition Collateral"**), with such Post-Petition Collateral also to be Collateral for post-petition advances under the Post-Petition Revolving Credit Facility.  The Debtor believes that such replacement liens will protect Compass adequately for the use of the Collateral.

43.     The Debtor also will provide Compass with required weekly reporting of financial information relating to projected revenues and expenses, actual revenue and expenses, and variances from the Budget, as applicable, as well as reasonable access to, among other things, the Debtor's management, books, and records, including the reporting required under the Post-Petition Revolving Credit Facility.  *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P.* (In re Stanley Station Assocs., L.P.), 140 B.R. 806, 809 (D. Kan. 1992) ("In addition, we believe the request of MBL for 'timely filing of proper monthly operating reports…' falls within the ambit of adequate protection…"); *Sumitomo Trust & Banking Co. v. Holly's, Inc.* (In re Holly's, Inc.), 140 B.R. 643, 706 (Bankr. W.D. Mich. 1992) (reports required as part of adequate protection).

44.     The Debtor submits that the replacement liens and the provision of timely financial reporting will protect Compass adequately for the use of the collateral.  Thus, Compass' interests are protected adequately, and the requirements for adequate protection under Bankruptcy Code §§ 361 and 363 have been satisfied.

45.     While not part of the Post-Petition Revolving Credit Facility, the DIP Credit Agreement (as reflected in the Budget) requires that the Advancing Term Note and Term Note D be maintained in current status post-petition.  These term notes will remain cross-collateralized

and cross-defaulted with the DIP credit facility, along certain personal obligation of Mr. Caroom and his affiliate, Cay Capital, L.L.C.

C.     The Debtor Requires Immediate Access to Cash Collateral and the DIP Financing

46.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Bankruptcy Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  The Debtor requests that the Bankruptcy Court conduct an expedited preliminary hearing on the Motion (the "Preliminary Hearing") and authorize the Debtor to use the Cash Collateral for the 3-week period detailed within the Interim Budget and in accordance with the terms of the Interim Order and the Interim Budget (with allowance of 10% weekly variances and 5% cumulative variances as to each line item contained within the Interim Budget).

47.     The Budget itemizes the sources and uses of cash and provides a weekly projection of cash receipts and expenditures, and provides a list of reasonable and necessary business expenses that must be paid in order to continue the Debtor's business until a final hearing on the Motion can be held.  The terms and conditions of the Budget and the proposed Interim Order are fair and reasonable, and reflect the exercise of the Debtor's prudent business judgment consistent with the fiduciary duties of a debtor-in-possession.

48.     The Debtor has an immediate need to use cash collateral, including cash proceeds, to continue to operate their businesses.  Without those funds, the Debtor will not be able to make cash expenditures for necessary costs incurred during their reorganization, including but limited to, wages, salaries, rent, professional fees and other expenses that arise in the administration of the Chapter 11 Case and in the ordinary course of the Debtor's business. The Debtor has little to no

unencumbered cash with which to operate its business.  Accordingly, if the Debtor is unable to use cash collateral, the Debtor will be forced to cease business operations immediately, which will impact negatively the value of its assets, cause irreparable harm to the estate, and eliminate the prospect of unsecured creditors receiving a distribution on account of their claims.

49.     The cash collateral that the Debtor proposes to spend in the Interim Budget will be in an amount necessary to prevent the Debtor from suffering "immediate and irreparable harm" and, therefore, meets the requirements for interim relief under Bankruptcy Rule 4001(b)(2) and 6003.

## V. INTERIM RELIEF REQUESTED

50.     The Debtor believes that the relief sought in this Motion is critical to achieving a smooth transition towards operation as Chapter 11 debtor, and will help preserve the Debtor's going-concern value.  The interim relief required herein, including use of cash collateral, and including, on an interim basis, use of the Post-Petition Revolving Facility during the interim period and prior to entry of a Final Order, is necessary to avoid immediate and irreparable harm. Accordingly, the Debtor requests immediate entry of an Interim Order to be submitted in open court, pursuant to Bankruptcy Code §§ 363 and 364 of the Bankruptcy Rule 4001(b)(2) and (c)(2).

## VI. NOTICE

51.     Notice of this Motion has been given to all parties on the Special Notice List, including, without limitation: (i) the Office of the United States Trustee; (ii) the Debtor and its counsel; (iii) Compass; (iv) the twenty (20) largest unsecured creditors of the Debtor; and (v) governmental agencies having a regulatory or statutory interest in these cases. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## VII. CONCLUSION

52.     The Debtor respectfully requests that this Bankruptcy Court enter an order: (i) authorizing the Debtor to obtain post-petition financing as detailed herein pursuant to 11 U.S.C. §§ 364(c) and to the extent applicable 364(d); (ii) authorizing the Debtor to use the Cash Collateral pursuant to 11 U.S.C. § 363(c) on an interim basis in accordance with the terms and conditions set forth within this Motion, the Budget, and the Interim Order; (iii) granting adequate protection pursuant to 11 U.S.C. § 361 as contemplated by this Motion; (iv) scheduling a final hearing on the Motion on a date that is not earlier than 15 days following the filing of this Motion; and (v) granting such other and further relief as is just and proper.

Respectfully submitted, this 11th day of April, 2018.

Respectfully submitted,

HOOVER SLOVACEK LLP

By: */s/ Deirdre Carey Brown*
DEIRDRE CAREY BROWN
State Bar No. 24049116
brown@hooverslovacek.com
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395
*Proposed Counsel to the Debtor and Debtor in Possession*

OF COUNSEL:

HOOVER SLOVACEK LLP
MELISSA A. HASELDEN
State Bar No. 00794778
haselden@hooverslovacek.com
EDWARD L. ROTHBERG
State Bar No. 17313990
rothberg@hooverslovacek.com
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395

*Proposed Counsel to the Debtor and Debtor in Possession*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have contacted <u>Richard Aguilar and Brad Axelrod</u> counsel for Secured Lender about the relief requested herein the Lender agrees to the relief and requires such relief as part of the DIP Facility.

<u>/s/ *Deirdre Carey Brown*</u>
DEIRDRE CAREY BROWN