EXHIBIT 1

[Compass Bank Letterhead]

CONFIDENTIAL

April 11, 2018

XtraLight Manufacturing, Ltd.
Jerry H. Caroom d/b/a X-tra Light Services
8812 Frey Road
Houston, Texas 77034
Attn:  Chief Financial Officer

Ladies and Gentlemen:

Pursuant to recent conversations between Compass Bank (**"Compass"**) and XtraLight Manufacturing, Ltd., a Texas limited partnership (**"XtraLight"**) and Jerry H. Caroom d/b/a X-TRA Light Services (**"Caroom"**), we understand that XtraLight intends to file a voluntary petition for relief (the **"Bankruptcy Case"** and the date of the filing of such petition, the **"Petition Date"**) in the United States Bankruptcy Court for the Southern District of Texas (the **"Bankruptcy Court"**) under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the **"Bankruptcy Code"**), and that XtraLight and Caroom, as co-borrowers, are seeking debtor-in-possession financing for XtraLight, the proceeds of which would be used in accordance with the Budget (as hereinafter defined). Based upon those preliminary conversations, this letter sets forth a general overview of the preliminary terms and conditions concerning a potential debtor-in-possession financing, as proposed by Compass (the **"DIP Financing"**). The DIP Financing shall be approved by the Bankruptcy Court pursuant to a financing order in form and substance satisfactory to Compass and its counsel and that is final under the Bankruptcy Code (the **"Final Financing Order"**).

This overview is not, is not intended to be, and should not be construed as, a commitment to lend, nor should it be construed as an attempt to establish all of the terms and conditions relating to the DIP Financing. It is intended only to serve as a guideline for certain terms and conditions and how the DIP Financing documents might be structured, and it is not intended to preclude negotiations within the general scope of these terms and conditions. Any final documentation regarding the DIP Financing will be subject to further due diligence, approval of terms by XtraLight, Caroom, and Compass, including receipt by Compass of internal credit approval for the DIP Financing, and the preparation, negotiation, execution and delivery of all relevant DIP Financing documentation and is further conditioned upon entry of appropriate final orders by the Bankruptcy Court.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Pre-Petition Credit Facility.

| | |
|---|---|
| DIP Borrower: | XtraLight, as a debtor and debtor-in-possession in the bankruptcy case to be filed with the Bankruptcy Court (the **"Debtor"** or **"DIP Borrower"**). |
| Non-debtor Co-Borrower | Caroom individually, d/b/a X-tra Light Services (Caroom and the DIP Borrower collectively, the **"Borrowers"**). |
| Guarantors: | The DIP Financing would be fully and unconditionally guaranteed by Caroom and certain of his affiliates, including without limitation Cay Capital, L.L.C. (collectively, the **"Guarantors"** and, together with the Borrowers, the **"Loan Parties"**). |
| DIP Lender: | Compass Bank (in such capacity, the **"DIP Lender"**). |

| | |
|---|---|
| Amount and Type of Facility: | After the entry of the Final Financing Order, the DIP Financing will consist of a roll-up of a pre-petition revolving line of credit of up to $6,000,000.00 (the **"Committed Consolidated Revolving Loan Sum"**) at any one time outstanding, inclusive of any amounts outstanding under the revolving line of credit under the Pre-Petition Credit Facility (as hereinafter defined) (the post-petition facility is referred to herein as the **"DIP Revolving Credit Facility"**). |
| Borrowing Availability: | Only the DIP Borrower will be eligible to borrow funds under the DIP Revolving Credit Facility; the Prepetition Credit Facility will be amended accordingly. Moreover, Caroom shall have no further ability to borrow under his personal line of credit with Compass. |
| | The Available Consolidated Revolving Note Commitment under the DIP Revolving Credit Facility will be calculated as the lesser of (i) the Committed Consolidated Revolving Loan Sum (as defined in the Pre-Petition Credit Facility) less the Letter of Credit Exposure, or (ii) the Borrowing Base (as defined in the Pre-Petition Credit Facility) less the Letter of Credit Exposure, and shall be made available to the DIP Borrower from the date of the entry of an interim financing order (the **"Interim Financing Order"**) under the Bankruptcy Code until the date of the entry of the Final Financing Order, subject to and as limited by the budget attached to the Interim Financing Order, as may be superseded by the Budget upon the entry of the Final Financing Order. |
| | The availability under the DIP Revolving Credit Facility shall be reduced by reserves as the DIP Lender may establish in its sole discretion from time to time on no less than two (2) business days' prior notice (in any event not less than 48 hours) to Borrowers to reflect, among other things, contingencies or risks that may materially affect the DIP Collateral (as hereinafter defined), the liens of DIP Lender in such DIP Collateral, or the Borrowers' respective businesses and operations, including, without limitation, a reserve for the Carve-Out (as hereinafter defined). |
| DIP Revolving Credit Facility Fees: | The DIP Borrower shall pay the DIP Lender a non-refundable, fully earned a commitment fee of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00), payable as follows: One Hundred Thirty Thousand Dollars ($130,000.00) on the entry by the Bankruptcy Court of the Interim Financing Order and Twenty Thousand Dollars ($20,000.00) on the Termination Date, provided however that if, on or before August 14, 2018, the Borrowers, and Cay Capital repay in full, in cash all of their respective Obligations to Lender, the $20,000 payment shall be waived. |
| | Compass shall continue to receive its unused commitment fees and letter of credit fees as and when due and payable, which may be paid from any adequate protection payments made in respect of the Pre-Petition Obligations (as hereinafter defined). |
| Interest Rate and Payment Terms: | Interest shall be paid monthly on all outstanding advances under the DIP Revolving Credit Facility as follows: (i) with respect to the DIP Revolving Credit Facility, at the Index Rate plus 260 basis points; |

| | |
|---|---|
| | and (ii) with respect to each of the Advancing Term Note and Term Note D, interest shall accrue at the respective default rates of interest specified in each of those notes (the **"Non-Default DIP Interest Rates"**), but be payable at the non-default rates and if all amounts under all the Pre-Petition Facility, the DIP Revolving Credit Facility, and all of the obligations of Caroom and Cay Capital to Compass are paid in full on or before August 14, 2018, the accrued and unpaid default interest components shall be waived. |
| | Effective immediately upon the occurrence of an Event of Default (as hereinafter defined) unless waived in writing by the DIP Lender, interest on the outstanding loans under the DIP Revolving Credit Facility shall accrue interest at a rate that is five percent (5.00%) per annum in excess of the Non-Default DIP Interest Rate. |
| | All interest under the DIP Financing documents will be calculated on the basis of a year of 360 days for the actual number of days elapsed. |
| | In addition, commencing on the Petition Date and continuing until all Obligations of the Borrowers under the DIP Revolving Credit Facility have been indefeasibly paid in full, in cash, interest on all other loan obligations of each of Caroom and Cay Capital to Compass shall accrue at the respective allowable default rates of interest specified in each of the notes evidencing those loans, but shall be payable at their respective non-default rates, and if all amounts under all the Pre-Petition Facility, the DIP Revolving Credit Facility, and all of the obligations of Caroom and Cay Capital to Compass are paid in full on or before August 14, 2018, 2018, the accrued and unpaid default interest components shall be waived. |
| Pre-Petition Obligations: | The Borrowers owe certain obligations (collectively, the **"Pre-Petition Loans"** under that certain Master Loan Agreement dated as of April 23, 2010, among XtraLight and Caroom (in their capacities as pre-petition borrowers, the "**Pre-Petition Borrowers"**) and Compass Bank, as the pre-petition lender (in such capacity, the **"Pre-Petition Lender"**), as amended, restated, supplemented or otherwise modified from time to time (the **"Pre-Petition Credit Facility"**), which Pre-Petition Loans are guaranteed by Caroom (in such capacity, the **"Pre-Petition Guarantor"**). |
| | Prior to the entry of the Final Financing Order, the Revolving Advances made under and as defined in the Pre-Petition Credit Facility shall be subject to a "creeping" roll-up. Upon entry of the Final Financing Order, the Borrowers' obligations to the Pre-Petition Lender for Revolving Advances under the Pre-Petition Credit Facility shall be deemed obligations under the DIP Revolving Credit Facility, and all obligations of the Pre-Petition Guarantor with respect to the obligations under the Pre-Petition Credit Facility shall be reaffirmed and/or remain in place as to the DIP Revolving Credit Facility. Prior to the entry of the Final Financing Order, the loans made under and as defined in the Pre-Petition Credit Facility |

| | |
|---|---|
| | shall accrue interest as follows: (i) with respect to the DIP Revolving Credit Facility, at the Index Rate plus 260 basis points; and (ii) with respect to each of the Advancing Term Note and Term Note D, at the Non-Default DIP Interest Rates, respectively, but shall otherwise be payable in accordance with the Pre-Petition Credit Facility.<br><br>The obligations of the Pre-Petition Borrowers and the Pre-Petition Guarantor under the Pre-Petition Credit Facility are referred to herein as the **"Pre-Petition Obligations."** The Pre-Petition Obligations are secured by, among other things, (i) a first priority lien on, and security interest in all of XtraLight's Accounts, Equipment, Inventory, Deposit Accounts, and all Related Rights, and all Supporting Obligations and proceeds, cash proceeds, cash equivalents, products, replacements, additions and improvements to, substitutions for, and accessions of any and all of the foregoing (the **"Pre-Petition Collateral"**), (ii) a first priority lien on, and security interest in all of Caroom's Accounts, Equipment, Inventory, Deposit Accounts, and all Related Rights, and all Supporting Obligations and proceeds, cash proceeds, cash equivalents, products, replacements, additions and improvements to, substitutions for, and accessions of any and all of the foregoing (the **"Caroom Collateral"**), and (iii) the benefit of that certain Cross Collateralization Deed of Trust (with Security Agreement and Assignment of Rents and Leases dated as of October 24, 2012 and made by Cay Capital, L.L.C. (**"Cay Capital"**) to secure the Pre-Petition Obligations (the **"Cay Capital Collateral"**). |
| Adequate Protection for Pre-Petition Credit Facility Claims: | (a)    As adequate protection to secure the Pre-Petition Obligations for and to the extent of the post-petition use of Pre-Petition Collateral and proceeds thereof, and for any post-petition diminution in value of Pre-Petition Collateral, the Final Financing Order shall provide that the Pre-Petition Lender shall (i) receive monthly cash payments of $[•] and $[•] (relative to The Advancing Term Note and Term Note D, respectively), (ii) retain its interests in the Caroom Collateral and the Cay Capital Collateral, (iii) be granted a replacement lien on all of the Pre-Petition Collateral and a lien on all of the DIP Collateral (as defined below) (the **"Replacement Lien"**); and (iv) shall have the right to continue to receive all proceeds of the Pre-Petition Collateral and the DIP Collateral. The Replacement Lien shall be subordinate only to (i) the liens granted to the DIP Lender to secure the obligations under the DIP Revolving Credit Facility, (ii) the amount of the Carve-Out, and (iii) other Permitted Liens (as hereinafter defined).<br><br>(b)    As additional adequate protection, (i) Caroom and Cay Capital shall grant to Compass liens on all of their other assets that are not a part of the Caroom Collateral and the Cay Capital Collateral, as the case may be, and (ii) Compass shall have a valid, perfected and enforceable continuing supplemental lien on, and security interest in, all of the assets of the Debtor of any kind or |

<table>
<tr><td></td><td>

nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising before or after the Petition Date, and the proceeds, rents, products and profits therefrom (collectively, the **"Supplemental Liens"**); provided, however, the Supplemental Liens shall be subject to the (i) DIP Liens, (ii) Permitted Liens, and (iii) the Carve-Out.

(c)     As additional adequate protection, Compass shall receive a superpriority administrative expense claim allowed under section 507(b) of the Bankruptcy Code (the **"Superpriority Claim"**) against all assets of the Debtor's estate. The Superpriority Claim shall have priority over any and all other unpaid administrative expenses now existing or hereafter arising, of any kind whatsoever, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in the Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment; provided, however, the Superpriority Claim shall be subject to the (i) Pre-Petition Liens, (ii) Permitted Liens, and (iii) Carve-Out.

</td></tr>
<tr><td>Term:</td><td>

The DIP Financing Facility shall mature on the earliest to occur of 14, 2018 and the following dates: (a) the closing date of the sale of all or substantially all of the assets of either the DIP Borrower pursuant to Section 363(d) of the Bankruptcy Code or the Non-debtor Co-borrower, or any operating division of either of them; (b) the date that is ten days after the date on which a confirmation order is entered in the DIP Borrower's bankruptcy case; (c) the date on which the DIP Lender accelerates the obligations under the DIP Revolving Credit Facility; (d) the entry of an order by the Bankruptcy Court granting (i) relief from the automatic stay permitting foreclosure of any assets of any Loan Party, (ii) the granting of any motion by the DIP Lender to terminate the use of cash collateral or lift the stay or otherwise exercise remedies against any cash collateral, (iii) entry of an order approving the appointment of a trustee or an estate fiduciary or an examiner with special powers, or (iv) any order granting the dismissal or conversion of any Loan Party's Chapter 11 case; (e) the filing or support by any Loan Party of a plan of reorganization that does not provide for indefeasible payment in full, on or before August 14, 2018, in cash of all obligations under the DIP Revolving Credit Facility; and (f) the date on which any of the Loan Parties proposes to the Bankruptcy Court a sale of all or substantially all of any of the DIP Borrower's assets not approved by the DIP Lender and the Pre-Petition Agent; the earliest applicable date being referred to hereinafter as a **"Termination Date."** On the Termination Date, the

</td></tr>
</table>

| | |
|---|---|
| | DIP Revolving Credit Facility shall be deemed terminated and the DIP Lender shall have no further obligation to provide financing pursuant to the DIP Revolving Credit Facility or the DIP Financing documents. |
| Use of Proceeds: | The proceeds of the DIP Financing shall be used solely for: (a) the payment of normal operating expenses consistent with the budget to be attached to the DIP Financing documents (the **"Budget"**) and consistent with that attached hereto as Exhibit A; (b) the payment of interest, fees and expenses relating to the DIP Financing and professional fees of the DIP Lender; (c) the payment of the Carve-Out, (d) the payment of all required adequate protection amounts, including but not limited to all fees and expenses incurred by the Pre-Petition Lender in connection with the Bankruptcy Case. No loan proceeds or cash collateral or any part of the Carve-Out shall be used directly or indirectly by any Loan Party, any committee or any other person or entity to object to challenge or contest the post-petition obligations of the Loan Parties or the DIP Lender's post-petition liens, the Pre-Petition Obligations or the Pre-Petition Lender's pre-petition liens, to bring any action or claim against the DIP Lender or the Pre-Petition Lender, to modify the terms of the Interim Financing Order or the Final Financing Order, to interfere with the rights of the Pre-Petition Lender to credit bid, or to seek any affirmative relief against the DIP Lender or the Pre-Petition Lender. |
| Cash Management Collections and Remittances: | The Borrowers shall use a cash management system that is the same as or substantially similar to their pre-petition cash management system.  Any material changes from such pre-petition cash management system must be approved in advance by the DIP Lender. The Interim Financing Order and the Final Financing Order shall provide the DIP Lender with a valid and enforceable first-priority lien and security interest on the cash held in the Loan Parties bank accounts. |
| Budget and Variances: | The Budget shall be prepared and updated by the DIP Borrower on a weekly basis showing receipts and disbursements projected through August 31, 2018, which shall be in form and substance, and with such detail, acceptable to the DIP Lender in its sole discretion. |
| | Actual amounts for (i) total sales, cash receipts and cash disbursements from operations line items (which shall not include any professional fees) may not vary from the applicable Budget by more than ten percent (10%) for each week during any Budget period or more than five percent (5%) on a cumulative basis for that portion of the Budget period then ended, and (ii) with respect to professional fees, such fees may not vary from the applicable Budget by more than ten percent (10%) for each week during any Budget period or more than five percent (5%) on a cumulative basis per professional fee line item for that portion of the Budget period then ending (and each professional that may receive professional fees shall be reflected on its own Budget line item).  The Budget shall also include a list of all expenditures committed to or assumed |

| | by the Loan Parties during each weekly period (whether or not requiring cash disbursements during the relevant period). The Budget may be amended only with the prior written consent of the DIP Lender.  The Loan Parties shall represent that the Budget (including any proposed amendments thereto) has been prepared in good faith based upon assumptions believed by the Loan Parties and their chief restructuring advisor (**"CRA"**) to be reasonable. |
| --- | --- |
| | The Borrowers shall provide to the DIP Lender a weekly budget report (by the third (3rd) business day of each week) showing actual sales, weekly receipts and disbursements for the immediately prior week and a comparison of all actual receipts and disbursements to the budgeted receipts and disbursements (including the variances referenced above) on both a weekly basis and a cumulative basis from the Petition Date through the last day of the immediately preceding week (the **"Budget Variance Report"**).  The Budget Variance Report will be in such form as will permit DIP Lender to (a) determine all sales and collections for the prior weekly period and cumulatively from the petition date; (b) determine amounts spent during the prior weekly period and cumulatively from the petition date, (c) determine all expenditures assumed and committed to during the prior weekly period and cumulatively from the Petition Date; and (d) identify amounts available to be spent or committed to be spent or intended to be assumed in each of the categories set forth in the Budget during the remaining term of the Budget, with such Budget Variance Report to be in form and substance, and with such detail, acceptable to the DIP Lender in its sole discretion. |
| Final Financing Order (as to liens): | In connection with the DIP Financing, the DIP Lender will require one or more orders of the Bankruptcy Court, in form and substance satisfactory to the DIP Lender in its sole discretion, authorizing and approving the DIP Financing pursuant to Bankruptcy Rule 4001(d) and: |
| | (a)    finding that the DIP Lender has extended credit to the Borrowers in good faith within the meaning of Section 364(e) of the Bankruptcy Code; |
| | (b)    stipulating on behalf of the Loan Parties that (i) the Pre-Petition Obligations are legal, valid and binding obligations of the Loan Parties and are enforceable in accordance with the terms of the Pre-Petition Credit Facility (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (ii) no offsets, defenses or counterclaims to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations are subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iii) subject to the (x) DIP Liens, (y) Permitted Liens, and (z) the Carve-Out, the Pre-Petition Obligations are secured by the DIP Liens and the Supplemental Liens, and the Loan Parties agree not to contest the same. Such lien finding shall be subject to the rights of any official committee(s) or of any |

|  | | other party in interest with standing to commence a contested matter or adversary proceeding to object to or challenge such finding by the later of (1) five (5) days following entry of the Final Financing Order and (2) thirty (30) days following the retention of counsel, if any, by such official committee, but in any even before June 10, 2018 (the **"Challenge Period"**). Absent any timely objection, the lien finding shall automatically be final at the end of the Challenge Period. This process (including the requirements of the Bankruptcy Court's affirmation of the lien finding if there is an objection) is herein referred to as the **"Lien Validation Process"**; |
|  | (c) | granting the DIP Liens (defined below) to the DIP Lender; |
|  | (d) | granting the Superpriority Claims (defined below) to the DIP Lender; |
|  | (e) | providing that the Loan Parties acknowledge and agree that neither they nor anyone claiming by, through or under them, have any claims, offsets, defenses, counterclaims, causes of action of whatsoever kind or nature against the Pre-Petition Lender or the DIP Lender, or their respective officers, directors, employees, agents, advisors, or attorneys arising out of or related to the Pre-Petition Obligations or the DIP Financing and, if any such exist, they are fully released without prejudice to the rights, if any, of any official unsecured creditor's committee as to the Lien Validation Process during the Challenge Period; and |
|  | (f) | providing that all pre-petition and post-petition liens and security interests of the DIP Lender and the Pre-Petition Lender pursuant to the Lien Validation Process shall be valid and perfected first priority upon the entry of such Final Financing Order without any recordation or filing of any nature whatsoever. |
| Final Financing Order (as other matters): | | The Final Financing Order, taken together with the documents relating to the DIP Financing, shall also contain such provisions as the DIP Lender requires for financing and cash collateral orders, including, without limitation, the following: |
|  | (a) | no rights, claims, liens, or the like of the DIP Lender with respect to the DIP Financing being able to be modified in any plan of reorganization or subsequent financing; |
|  | (b) | the DIP Lender reserving its rights to seek Bankruptcy Court modification of the Final Financing Order for cause; |
|  | (c) | the automatic stay being modified to the extent necessary to permit the DIP Lender to perfect any and all security interests and liens granted to it and to exercise its rights and remedies on or after the Termination Date or otherwise to effect the Final Financing Order; provided that the DIP Lender give the Borrowers three (3) business days' written notice of its intent to exercise the rights or remedies under the DIP Financing |

documents, subject to the provisions below with respect to Loan Parties' rights to an emergency stay hearing;

(d) in the event any or all of the provisions of the Final Financing Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other Court, the DIP Lender being entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation affecting the validity and enforceability of any advances made or the liens or priority authorized or created thereby;

(e) nothing in the Final Financing Order affecting the DIP Lender's or the Pre-Petition Lender's claims against third parties;

(f) waivers of relief, claims (including administrative claims), charges and limitation of the DIP Lender's and the Pre-Petition Lender's rights under Sections 105, 506(c), 510, 544, 547, 548, 549 and 553(b) of the Bankruptcy Code or otherwise (at least as to the Final Financing Order and subject to the Lien Validation Process), and, if any such exist, they are fully released to the extent permitted by the Bankruptcy Court and applicable law;

(g) the DIP Lender and the Pre-Petition Lender each being entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply;

(h) the Loan Parties not proposing or supporting any Chapter 11 plan that does not provide for the indefeasible payment on or before August 14, 2018 in full, in cash of all obligations under the DIP Revolving Credit Facility;

(i) the Loan Parties not in any way prime or seeking to prime the liens and security interests provided to the DIP Lender or the Replacement Liens provided to the Pre-Petition Lender by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise;

(j) binding the Loan Parties and any successors and assigns, including any subsequently appointed Chapter 7 or 11 trustee, to the terms of the Final Financing Order;

(k) finding that neither the DIP Lender nor the Pre-Petition Lenders controls any Loan Party;

(l) approval of the various aspects of the DIP Financing and the Pre-Petition Credit Facility, including the current payment during the bankruptcy cases of fees and expenses of the DIP Lender and the Pre-Petition Lender and the fees and expenses of their attorneys and advisors and the indemnification provisions thereof;

| | |
|---|---|
| | (m)  the rights under the Final Financing Order being in addition to the rights existing as of the Petition Date; |
| | (n)  the Final Financing Order being entered no later than twenty-five (25) days after the Petition Date or later if so agreed by the DIP Lender; |
| | (o)  the reservation of Lender's rights in the event of the occurrence of an Event of Default or the occurrence of the Termination Date; |
| | (p)  the reservation of Lender's rights to seek additional adequate protection; |
| | (q)  the reservation of rights for the DIP Lender to assign all of its rights, claims and obligations under the DIP Financing and the Pre-Petition Credit Facility and related documents; |
| | (r)  the Loan Parties providing access on reasonable notice and during regular business hours to their management team, assets, and books and records, and information related thereto to the DIP Lender and the Pre-Petition Lender, and their agents and advisors; and |
| | (s)  all payments made with respect to the DIP Financing being free and clear of all liens and encumbrances, and shall be made without any offset, abatement, withholding or reduction whatsoever. |
| Security for the DIP Financing: | As security for the repayment of loans and all other obligations with respect to the DIP Revolving Credit Facility, Caroom and Cay Capital shall grant to The DIP Lender first priority liens on all of their assets, including, but not limited to the Caroom Collateral and the Cay Capital Collateral, as the case may be. |
| | Subject to the Carve-Out, the DIP Revolving Credit Facility (including accrued interest, fees, costs and expenses) shall be secured, subject and subordinate to any valid, perfected prior liens and security interests existing as of the Petition Date, other than those in favor of the Pre-Petition Lender, by first priority senior and priming liens and security interests (the **"DIP Liens"**) in all of the DIP Borrower's assets and properties, including, without limitation, all of the DIP Borrower's existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of the Loan Parties, and all proceeds thereof, and all bankruptcy-related causes of action and any recovery thereon, including but not limited to all causes of action under Chapter 5 of the United States Bankruptcy Code, including, but not limited to, Section 506(c), Sections 544 through 550, and Section 553 or other applicable law (subject to Lien Validation Process), in each case pursuant to |

| | Section 364(c) and (d) of the Bankruptcy Code (collectively, the **"DIP Collateral"**). |
| --- | --- |
| | No liens under Section 364 of the Bankruptcy Code or otherwise shall be permitted on the Post-Petition Collateral, except for (i) such pre-petition and post-petition liens agreed to in writing as being expressly permitted by the documentation relating to the DIP Financing; (ii) the liens and security interests securing the DIP Financing and Pre-Petition Obligations; and (iii) the liens granted to the DIP Lender and the Pre-Petition Lender under the Final Financing Order for adequate protection and use of cash collateral (collectively, the **"Permitted Liens"**). |
| | To the extent that all cash and checks of the Loan Parties currently in their possession, bank accounts, lockbox accounts or otherwise, and the proceeds thereof, if any, are proceeds of the DIP Collateral, upon entry of the Final Financing Order, the relevant Loan Parties shall deliver such proceeds to the DIP Lender, and thereafter the Loan Parties and any successor to the Loan Parties, including, without limitation, any successor trustee or trustees, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Post-Petition Collateral or Pre-Petition Collateral, including, without limitation, the proceeds of sales authorized pursuant to Section 363 of the Bankruptcy Code or any plan of reorganization which come into their possession to the DIP Lender in the form received (together with any necessary endorsements thereto) for deposit into the disbursement account maintained by the Loan Parties with Compass and as designated by the DIP Lender (the "Disbursement Account"). |
| | The DIP Lender's claims with respect to the DIP Financing Facility shall have the status of a superpriority administrative expense claim (the **"Superpriority Claims"**) pursuant to section 364(c)(1) of the Bankruptcy Code, including, without limitation, having priority over all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (subject only to Carve-Out), and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor in the Chapter 11 Case or any subsequent case or proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment. The Superpriority Claims granted to the DIP Lender shall be payable from and have recourse to all pre-and post-petition property of the Debtor and all proceeds thereof. |
| Administrative Expense Carve Out: | The Budget is expected to include an administrative expense carve out (the **"Carve-Out"**) acceptable to the DIP Lender in its sole discretion for the fees of its legal counsel, its accountants, its tax |

| | |
|---|---|
| | advisor, and allowed United States Trustee administrative expenses pursuant to 28 USC §1930(a)(b). No part of the Carve-Out shall be used to object to or contest any post-petition lien or post-petition obligations or to challenge (as opposed to investigate) any pre-petition credits or pre-petition lien or to otherwise seek affirmative relief against the DIP Lender or the Pre-Petition Lender. |
| Conditions Precedent to the DIP Financing: | The obligation to provide the DIP Financing shall be subject to satisfaction of the following conditions: |

The obligation to provide the DIP Financing shall be subject to satisfaction of the following conditions:

(a) Entry of the Interim Financing Order in form and substance satisfactory to the DIP Lender after notice given and a hearing conducted in accordance with Bankruptcy Rule 4001(c);

(b) entry of an order approving XtraLight's cash management practices, including its practice of advancing funds to Caroom to fund operating expenses of X-TRA Light Services.

(c) Execution and delivery by all appropriate parties of all other loan and security documentation, all satisfactory in form and substance to the DIP Lender;

(d) Payment of all fees and other amounts due and payable on the Closing Date as described in the "DIP Revolving Credit Facility Fees" section hereof, including the payment of the outstanding and currently estimated fees and expenses of the DIP Lender's and the Pre-Petition Lender's attorneys and advisors, with all such fees remaining subject to Bankruptcy Court approval;

(e) Receipt by the DIP Lender of the Budget, in form and substance satisfactory to the DIP Lender, such Budget to include, but not be limited to, an itemization on a weekly basis of all material expenditures proposed to be made, assumed or committed to during the term of the DIP Financing;

(f) Receipt by the Pre-Petition Lender of a release (which shall be satisfactory in form and substance to the Pre-Petition Lender and may be provided for in the Final Financing Order) of all claims and causes of action of the Loan Parties against the Pre-Petition Lender and its affiliates, officers, directors, employees, attorneys and other representatives from any and all claims and causes of action of every kind and nature that the Loan Parties may hold against such released parties, including but not limited to those claims in respect of the Pre-Petition Obligations and assurance that the Pre-Petition Obligations shall be subject only to the Lien Validation Process;

(g) The DIP Lender shall have received by the third day of each business week a Budget to actual cash flow report for the prior week and for the post-petition period as of the last day

of the prior week, together with supporting documentation and other information as the DIP Lender may require;

(h)     If not sooner terminated, concurrent termination of the commitments to extend credit under the Pre-Petition Credit Facility;

(i)     Entry of an order approving the retention of a CRA on terms and with a scope acceptable to the DIP Lender;

(j)     In the reasonable judgment of the DIP Lender, no material adverse change or material disruption has occurred after the date hereof in the financial, banking or capital markets generally (including, without limitation, the markets for loans to or debt securities issued by companies similar to the Borrowers), which has had or could reasonably be expected to have a material adverse effect on the DIP Lender;

(k)     The Loan Parties shall have provided the documentation and other information to the DIP Lender that is required by regulatory authorities under applicable "know your customer" and anti-money-laundering rules and regulations, including, without limitation, the Patriot Act;

(l)     All first-day motions and related orders (including, without limitation, any motions related to the DIP Financing, cash management, sale order and sale procedures referred to below, and any critical vendor or supplier motions) entered by the Bankruptcy Court in the bankruptcy cases shall be in form and substance reasonably satisfactory to the DIP Lender and its counsel;

(m)     The DIP Lender shall be named as loss payee (property/casualty) and additional insured (liability) in respect of all insurance policies of the Loan Parties, and riders to provide 30 days' advance notice to DIP Lender in the event of any non-renewal, cancellation or amendment thereof shall be included in all such policies;

(n)     All documents and instruments required or, in the opinion of the DIP Lender, desirable to perfect the DIP Lender's security interest in the Post-Petition Collateral herein shall have been executed and delivered and, if applicable, be in proper form for filing, and none of such collateral shall be subject to any other pledges, security interests or mortgages, except Permitted Liens (including junior liens securing the Pre-Petition Obligations);

(o)     The DIP Lender shall hold valid and perfected security interests in and liens upon the Pre-Petition Collateral and the Post-Petition Collateral as collateral security for the DIP Revolving Credit Facility and the Pre-Petition Lender shall hold valid and perfected Replacement Liens as collateral security for the adequate protection obligations;

| | |
|---|---|
| | (p) The DIP Borrower shall comply in full with the notice and other requirements of the Bankruptcy Code in a manner acceptable to the DIP Lender and its counsel, with respect to the Interim Financing Order and the Final Financing Order. The Bankruptcy Court shall have entered the Final Financing Order, in form and substance satisfactory to the DIP Lender, authorizing the secured financing under the DIP Financing on the terms and conditions contemplated by this summary of terms granting to the DIP Lender (for the benefit of the DIP Lender) the security interests and liens and super-priority administrative expense claim status described above, modifying the automatic stay to permit the DIP Lender to perfect any and all security interests and liens granted to it and to exercise its rights and remedies on or after the Termination Date or otherwise to effect the Final Financing Order, subject to the requirement that the DIP Lender give the Borrowers three (3) business days' written notice of its intent to exercise the rights or remedies under the DIP Financing documents, and other provisions required by the DIP Lender and its counsel; |
| | (q) No trustee, examiner, receiver or the like shall have been appointed or designated with respect to any of the Loan Parties or their respective businesses, properties or assets, and no motion shall be pending seeking any such relief; and |
| | (r) The DIP Lender shall, in its sole discretion, be satisfied that the Loan Parties have taken all action and are demonstrating progress towards satisfying the Milestones (as hereinafter defined). |
| | (s) The DIP Borrower shall have assumed its leases with Cay Capital. |
| Additional Condition to each Borrowing under the DIP Revolving Credit Facility | The DIP Lender shall, in its sole discretion, be satisfied that the Loan Parties have taken all action and are demonstrating progress towards achieving the Milestones, and are working toward satisfying all proposed sale conditions imposed any sale agreement, as the case may be. |
| Representations and Warranties: | Customary for debtor-in-possession financing agreements as determined by the DIP Lender in its sole discretion, which representations and warranties are expected to include substantially those events of default included in the Pre-Petition Credit Facility, together with such others as may be required by the DIP Lender following completion of its due diligence. |
| Affirmative and Negative Covenants: | Affirmative and negative covenants customarily included in debtor-in-possession financing agreements as determined by the DIP Lender in its sole discretion, including, but not limited to, (a) customary and reasonable reporting requirements as required by the DIP Lender in its sole discretion; (b) compliance with Budget covenants consistent with the section entitled "Budget" together with any additional covenants appropriate in the context of the DIP Revolving Credit |

| | |
|---|---|
| | Facility as required by the DIP Lender in its sole discretion; (c) the Loan Parties shall, from and after the Petition Date, (i) continue to take action and demonstrate progress, satisfactory to the DIP Lender in its sole discretion, toward closing the 363 Sale, (ii) satisfy the terms of each of the Milestones, and (iii) demonstrate progress towards, and work to satisfy, all proposed sale conditions imposed in the Sale Agreement(s), in each case as determined by the DIP Lender in its sole discretion; and (d) the Loan Parties shall, contemporaneously with consummation of the closing the 363 Sale, remit the proceeds of any sale to the DIP Lender for immediate application to the obligations under the DIP Revolving Credit Facility in accordance with the DIP Financing documents. |
| 363 Sale Process: | The Loan Parties shall cause the following milestones (the "Milestones") to be achieved: |
| | (a) On the Petition Date or such later date on which the DIP Lender consents in writing in its sole discretion, the Debtor shall file a motion for an order (the "**Sale Procedures Order**") approving bidding procedures to be employed for a sale of all or substantially all of the assets of XtraLight's lighting division under Section 363 of the Bankruptcy Code (the "**363 Sale**").[1] |
| | (b) On or before April 26, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Procedures Order.[2] |
| | (c) On or before May 3, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, the Debtor shall file a motion for an order (the "**Lease Assumption Order**") authorizing and directing the Debtor to assume its lease with Cay Capital. |
| | (d) On or before July 10, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, the Debtor shall identify one or more "stalking horse" bidder(s) acceptable to the DIP Lender in the DIP Lender's sole discretion, which shall purchase the Debtor's assets for aggregate proceeds which are sufficient to repay in full, in cash of all obligations under the DIP Revolving Credit Facility. |
| | (e) On or before July 25, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, the Debtor shall have entered into a sale agreement with at least one "stalking horse" bidder, each such agreement providing that, concurrently with the entry into the agreement, the |

---

[1] The Debtor, with the DIP Lender's consent, filed the Sale Procedures Order on April 27, 2018.
[2] A hearing to consider the entry of the Sale Procedures Order is set for May 3, 2018, and the Lender has consented to extend the April 26, 2018 deadline until May 3, 2018.



|  | | "stalking horse" bidder shall pay a deposit of not less than 10% of the purchase price payable under the agreement. |
|--|--|--|
| | (f) | On or before August 9, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, there shall have been held an auction in connection with the 363 Sale and in accordance with the provisions set forth in the Sale Procedures Order. |
| | (g) | On or before August 11, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, the Bankruptcy Court shall have entered an order in form and substance satisfactory to the DIP Lender that, among other things, approves the 363 Sale (the **"Sale Order"**). |
| | (h) | On or before August 14, 2018, or such later date to which the DIP Lender consents in writing in its sole discretion, provided that the Bankruptcy Court has waived the stay imposed by Bankruptcy Rule 6004(h) or such later date to which the DIP Lender consents in writing in its sole discretion, the 363 Sale shall have closed, with the proceeds of the 363 Sale being paid directly to the DIP Lender to be applied to the obligations under the DIP Revolving Credit Facility. |
| Events of Default: | | Customary for debtor-in-possession financing agreements, as determined by the DIP Lender in its sole discretion, which events of default (collectively, **"Events of Default"**) are expected to include substantially those events of default included in the Pre-Petition Credit Facility and, without limitation, occurrence of any of the following: |
| | (a) | Failure to make any payment under the DIP Revolving Credit Facility when due; |
| | (b) | Failure to pay any post-petition indebtedness on the date on which such indebtedness is due; |
| | (c) | Breach of any covenant of the DIP Revolving Credit Facility (including, but not limited to, any failure to achieve any of the Milestones); |
| | (d) | Breach of any representation or warranty made by any Loan Party in any DIP Financing document (subject to customary materiality carve-outs); |
| | (e) | Any Chapter 11 case of any Loan Party shall be dismissed or converted to a Chapter 7 case or a motion requesting such relief shall have been granted; |
| | (f) | A Chapter 11 Trustee shall be appointed in the Chapter 11 case of any Loan Party or the filing of any motion or other pleading requesting such relief which any Loan Party fails to timely oppose; |

| | |
|---|---|
| | (g) The filing or support of a proposed plan of reorganization by any Loan Party that does not provide for the indefeasible payment by August 14, 2018 in full, in cash of all of the Loan Parties' obligations under the DIP Revolving Credit Facility; |
| | (h) The entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible payment in full, in cash of all of the Loan Parties' obligations under the DIP Revolving Credit Facility as of the effective date of the plan, but in no event later than August 14, 2018; |
| | (i) Any other superpriority claim or lien equal or superior in priority to that granted pursuant to or permitted under the Final Financing Order shall be granted; |
| | (j) Entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Revolving Credit Facility, the Interim Financing Order or the Final Financing Order, without the prior written consent of the DIP Lender, or the filing of a motion or other pleading requesting such relief which any Loan Party fails to timely oppose; |
| | (k) Any attempt by any Loan Party to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to invalidate, reduce or otherwise impair the DIP Lender's or the DIP Lender's claims, or to subject any of the DIP Collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code; |
| | (l) Any Loan Party shall apply for an order substituting any assets for all or any portion of the DIP Collateral, except as provided in the instruments evidencing and governing the DIP Revolving Credit Facility; |
| | (m) Any payment on, or application for authority to pay any pre-petition claim, lease rejection damages, other than those required to be paid with the proceeds of the DIP Revolving Credit Facility pursuant to its terms, without the prior written consent of the DIP Lender; |
| | (n) The automatic stay of Bankruptcy Code Section 362 shall be lifted so as to allow a third party to proceed against any assets of the Loan Parties; |
| | (o) An examiner having enlarged powers under Section 1106(b) of the Bankruptcy Code shall be appointed, or the filing of a motion or other pleading requesting such relief which any Loan Party fails to timely oppose; |
| | (p) A material adverse change shall occur in the condition or prospects, financial or otherwise, of any Loan Party; |

(q)    Any Loan Party shall, without the DIP Lender's prior written consent, take any affirmative, direct action that results in any current management person of such Loan Party ceasing to be employed by such Loan Party or incurring a material change in job duties;

(r)    Other than as contemplated in the Budget, any Loan Party ceases operation of any portion of its business or takes any material action for the purpose of effecting the foregoing without the prior written consent of the DIP Lender;

(s)    The failure of any Loan Party to comply with the Interim Financing Order, the Final Financing Order, or the terms and conditions of the DIP Financing documents, including the loan documents evidencing the Caroom and Cay Capital loans;

(t)    Judgments and attachments, insolvency, or voluntary or involuntary bankruptcy for any subsidiary of any Loan Party which is not currently disclosed as being subject to proceeding under the Bankruptcy Code;

(u)    The failure to obtain a lien finding acceptable to the DIP Lender within five (5) days after the last day of the Challenge Period (or such later date as may be agreed to by the DIP Lender);

(v)    The Final Financing Order shall not be entered within twenty-five (25) days after the Petition Date or such later date as to which the DIP Lender may agree;

(w)    After entry thereof, either of the Sale Procedures Order or the Sale Order shall cease to be in full force and effect, shall have been reverse, stayed, vacated or subject to stay pending appeal or which shall have been modified or amended in a manner that materially and adversely affects the DIP Lender's and the DIP Lender's rights with respect to repayment of the DIP Revolving Credit Facility;

(x)    Without the prior written consent of the DIP Lender, the Sale Agreement is amended or modified;

(y)    (i) the Bankruptcy Court has not entered the Sale Order on or before the date that is seventy-two (72) days after the Petition Date, or (ii) the 363 Sale has not closed on or before the date that is three (3) days after the Bankruptcy Court's entry of the Sale Order, or in the case of clauses (i) and (ii) of this clause (y), such later date(s) as to which the DIP Lender consents in writing in its sole discretion;

(z)    The DIP Borrower shall fail to disburse the sale proceeds to the DIP Lender contemporaneously with the closing of the 363 Sale; or

(aa)   Any party in interest takes any action to challenge or otherwise interfere with the ability of the Pre-Petition Lender

2096131.7

18

|  | to credit bid in any sale of some or all of the Pre-Petition Collateral. |
|  | (bb) failure to have assumed the Cay Leases by May 1, 2018. |
| Remedies: | Upon the Termination Date or an Event of Default, DIP Lender shall have customary remedies, including, without limitation, the right to realize on all DIP Collateral and the right to exercise any remedy available under applicable law (including, the right to cause a liquidation under Chapter 11 in accordance with the liquidation budget), without the necessity of obtaining any further relief or order from the Bankruptcy Court; provided, however, that the DIP Lender shall provide the Loan Parties with three (3) business days' written notice of the DIP Lender's intent to exercise such remedies and subject to the right of the DIP Borrower or any committee appointed by the Bankruptcy Court to seek an injunction; provided, further, no such notice shall be required for, and nothing herein shall impair or restrict the DIP Lender's right regarding (i) the termination of further DIP Revolving Credit Facility advances following the occurrence of an Event of Default, (ii) the termination of the Loan Parties' use of the DIP Collateral following an Event of Default, (iii) the right to demand repayment of the outstanding DIP Revolving Credit Facility obligations following an Event of Default, (iv) the collection and application of proceeds remitted to one or more lockbox accounts, controlled accounts or other accounts subject to the DIP Lender's control, (v) the right to immediately notify account debtors to direct payments to the DIP Lender. Section 362 relief from the stay in favor of DIP Lender shall be embodied in any order approving the DIP Revolving Credit Facility and the use of cash collateral. |
| Indemnification: | The Loan Parties shall indemnify and hold Compass and its officers, directors, employees and agents (including all of their professionals) (each, an **"Indemnified Party"**) harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and disbursements of attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation or proceeding arising out of or relating to or in connection with the Pre-Petition Credit Facility, the DIP Revolving Credit Facility, the DIP Financing documents, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Revolving Credit Facility, except to the extent the same is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful and malicious misconduct. |
| Governing Law: | The DIP Financing documents will be prepared by counsel to DIP Lender and will be governed by the laws of the State of Texas, without regard to principles of conflicts of law. |

| | While the DIP Borrower is subject to proceedings under the Bankruptcy Code, the Non-debtor Co-borrower and Cay Capital, LLC hereby irrevocably and unconditionally consent to the exclusive jurisdiction of and venue in the Bankruptcy Court for the resolution of all disputes arising under or in connection with the DIP Financing.  If the DIP Borrower is no longer subject to proceedings under the Bankruptcy Code, or if the Bankruptcy Court abstains from or otherwise declines to exercise its jurisdiction, the undersigned hereby irrevocably and unconditionally consent to the exclusive jurisdiction of and venue in any federal or state court with subject-matter jurisdiction in Houston, Texas. |
|---|---|

No Loan Party will disclose the contents of this letter (or that any Loan Party is having any discussions related to a possible loan including the status thereof, termination thereof, any decision on any Loan Party's or Compass's part to no longer consider any such DIP Financing or any terms, conditions, or other facts with respect thereof) to any third party, including, without limitation, any financial institution or intermediary, without Compass's prior written consent, other than to any Loan Party's officers and advisors on a need-to-know basis.

Each Loan Party agrees to inform all such persons who receive information concerning this letter that such information is confidential and may not be disclosed to any other person.  Further, until the transaction proposed herein is consummated or a determination is made by Compass not to pursue such transaction, each Loan Party agrees to negotiate exclusively with Compass regarding any financing the purpose of which is substantially the same as that of the proposed transaction.

This letter, which expires at 5:00 p.m., Central Daylight Time, on April 11, 2015 unless accepted by Parent on behalf of itself and the other Loan Parties prior to such time, shall be governed by and construed in accordance with the laws of the State of Texas, without regard to principles of conflicts of law.

The contents hereof are strictly confidential and are only to be shared internally with the management of the Borrowers and legal counsel for the Borrowers, but not with any other third parties (including, but not limited to, any other potential debt or equity investors in the Borrowers or any of their affiliates).  Any disclosure or use of the contents hereof in negotiations with other debt or equity investors is strictly prohibited.  This document does not reflect a commitment to lend or borrow by any party.

[Remainder of page intentionally left blank.]

2096131.71

Please do not hesitate to contact us if questions arise.

Very truly yours,

COMPASS BANK

By:_____
Name:
Title:

ACKNOWLEDGED AND AGREED:

XTRALIGHT MANUFACTURING, LTD.
By:      XLM Management, LLC,
         General Partner

By:_____
Name:  Jerry H. Caroom
Title:   Manager

_____
Jerry H. Caroom, individually
(doing business as X-TRA Light Services)

CAY CAPITAL L.L.C.

By:_____
Name:  Jerry H. Caroom
Title:   Manager

SIGNATURE PAGE TO DIP REVOLVING CREDIT FACILITY TERM SHEET

EXHIBIT 2

**Xtralight Manufacturing Limited**
**Weekly Budget (Cash Flow $000)**

| Week | This Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending | 13-Apr | 20-Apr | 27-Apr | 4-May | 11-May | 18-May | 25-May | 1-Jun | 8-Jun | 15-Jun | 22-Jun | 29-Jun | 6-Jul | 13-Jul | 13 Weeks |
| | | | | | | | | | | | | | | | | |
| AR Collections | | 537 | 537 | 537 | 537 | 543 | 543 | 543 | 543 | 543 | 629 | 629 | 629 | 629 | 7,382 |
| | | | | | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | | | | | |
| Weekly Payroll | | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (585) |
| Salary Payroll | | | (228) | | | (228) | | (228) | | (228) | | (228) | | (228) | (1,368) |
| commissions | | (50) | | | | (60) | | | | | (70) | | | (70) | (250) |
| Material and Expenses - direct | | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (286) | (3,712) |
| Material Expenses - Credit Cards | | (150) | | | | (150) | | | | | (150) | | | | (450) |
| Debt Repayments | | | | | (36) | | | | | (36) | | | | (36) | (108) |
| Cay Capital Rent | | | | (34) | | | | | (34) | | | | (34) | | (102) |
| Captive Insurance | | | | (95) | | | (31) | | | | (31) | | | (32) | (189) |
| Interest | | | (54) | | | | | (53) | | | | | (53) | | (160) |
| Tooling for Floodlight Fixture | | | | | | | | | | (60) | | | | | (60) |
| US Trustee Fees | | | | | | | | | | | | | | (13) | (13) |
| Accountant/Auditor | | | | | | | | | | | | | (15) | | (15) |
| Tax Advisor | | | | | | | | | | | | (15) | | | (15) |
| Legal | | | | | | | | | | | | | (75) | | (75) |
| Utilities | | | (6) | | | | (7) | | | | | (7) | | | (20) |
| Sales Tax | | | (1) | | | | | | | | | (1) | | | (3) |
| Workers Comp | | | | (8) | | | | | (8) | | | | (8) | | (24) |
| Other Expenses | | (11) | (11) | (11) | (11) | (11) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (135) |
| **Total  cash outflows** | | (542) | (403) | (707) | (378) | (780) | (379) | (622) | (444) | (605) | (592) | (592) | (539) | (707) | (7,284) |
| | | | | | | | | | | | | | | | | |
| Net Cash Flow (change to line of credit) | | (4) | 135 | (169) | 160 | (236) | 165 | (78) | 100 | (61) | 37 | 37 | 90 | (78) | 98 |
| Cumulative cash Flow | | (4) | 131 | (38) | 121 | (115) | 50 | (28) | 72 | 11 | 48 | 85 | 175 | 98 | |

| Line of Credit | | | (4,320) | (4,185) | (4,354) | (4,195) | (4,431) | (4,266) | (4,344) | (4,244) | (4,305) | (4,268) | (4,231) | (4,141) | (4,219) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9th April = | (4,316) | (4,316) | | | | | | | | | | | | | |

| Borrowing Base | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Feb 28 = | 5173 | | | | | | | | | | | | | | |
| Less Services | (615) | | | | | | | | | | | | | | |
| | 4,558 | 4,558 | 4,528 | 4,498 | 4,469 | 4,439 | 4,409 | 4,379 | 4,349 | 4,319 | 4,289 | 4,254 | 4,220 | 4,185 | 4,150 |
| | | | | | | | | | | | | | | | |
| Surplus/(shortfall) in BB | | | 208 | 313 | 114 | 244 | (22) | 113 | 5 | 75 | (16) | (14) | (11) | 44 | (68) |

| Services AR (not in above borrowing base) | | 600 | 600 | 600 | 700 | 700 | 1000 | 1266 | 1266 | 1266 | 1266 | 1850 | 1850 | 1850 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|