THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(B) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN.   ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| XTRALIGHT MANUFACTURING, LTD. | § | CASE NO. 18-31857-H1-11 |
| | § | Chapter 11 |
| Debtor. | § | |

## FIRST AMENDED DISCLOSURE STATEMENT UNDER
## 11 U.S.C. § 1125 AND BANKRUPTCY RULE 3016 IN
## SUPPORT OF PLAN OF REORGANIZATION OF DEBTOR

THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE.  THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION.  ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.

ON AUGUST 30, 2018 THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(B) OF THE BANKRUPTCY CODE.  SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND ATTACHED AS EXHIBIT A, IS BEING SOUGHT FROM CREDITORS WHOSE CLAIMS AGAINST THE DEBTOR ARE IMPAIRED UNDER THE PLAN OF REORGANIZATION.  CREDITORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION IN THE ENVELOPE ADDRESSED TO HOOVER SLOVACEK LLP., ATTENTION: DEIRDRE C. BROWN/MELISSA A. HASELDEN, 5051 WESTHEIMER, SUITE 1200, HOUSTON, TEXAS 77056, NOT LATER THAN SEPTEMBER 7, 2018 AT NOON HOUSTON TIME.

### TABLE OF CONTENTS

**ARTICLE I Introduction and Summary** ............................................................................. 1

    A.    General Information Concerning Disclosure Statement and Plan ................................. 1

    B.    Disclaimers ............................................................................................................... 2

    C.    Answers to Commonly Asked Questions. .................................................................. 3

    D.    Recommendation of XtraLight to Approve the Plan ................................................. 6

    E.    Rules of Interpretation .............................................................................................. 6

    F.    Overview of Plan ...................................................................................................... 7

**ARTICLE II History Of Business And Chapter 11 Case** ..................................................... 8

    A.    Overview of XtraLight's Business............................................................................ 8

    B.    XtraLight's Business Structure ................................................................................ 9

    C.    Events Leading to the Filing of this Chapter 11 Case ............................................. 10

    D.    XtraLight's Financial Situation as of Petition Date ............................................... 11

    E.    Operations During Bankruptcy ............................................................................... 12

    F.    Significant Events in this Chapter 11 Case ............................................................. 12

**ARTICLE III Classification of Claims Under the Plan** ...................................................... 15

    A.    Administrative Expenses and Priority Tax Claims .................................................. 15

    B.    Classification of Secured and Unsecured Claims .................................................... 16

    C.    Treatment of Claims and Interests Under Plan ....................................................... 17

    D.    Other Claims Matters .............................................................................................. 19

**ARTICLE IV Means of Execution of Plan** ......................................................................... 21

    A.    Sources of Consideration for Plan Distributions .................................................... 21

    B.    Disbursing Agent. ................................................................................................... 23

    C.    Vesting of Property of the Estate in Reorganized XtraLight. ................................. 23

    D.    Preservation of Claims and Causes of Action.......................................................... 24

    E.    Other Provisions of the Plan ................................................................................... 26

    F.    Directors and Officers of Reorganized XtraLight. ................................................. 29

    G.    Claims Bar Dates .................................................................................................... 29

    H.    Summary of Financial Projections........................................................................... 29

**ARTICLE V Acceptance and Confirmation of the Plan**...................................................... 29

    A.    Confirmation Hearing .............................................................................................. 30

    B.    Requirements of Confirmation ................................................................................ 30

C. Confirmation without Acceptance of All Impaired Classes ........................................... 33

**ARTICLE VI Voting Procedures** ................................................................................ **34**

A. Ballots and Voting Deadline ....................................................................... 34

B. Holders of Claims Entitled to Vote ............................................................ 34

C. Bar Date for Filing Proofs of Claim .......................................................... 35

D. Definition of Impairment ............................................................................ 35

E. Classes Impaired Under the Plan ................................................................ 36

F. Information on Voting and Ballots ................................**Error! Bookmark not defined.**

**ARTICLE VII Alternatives** ....................................................................................... **37**

A. Conversion to Chapter 7 ............................................................................ 37

B. Dismissal ..................................................................................................... 37

C. No Assurance of Either .............................................................................. 37

D. Preferences and Fraudulent Transfers ....................................................... 37

**ARTICLE VIII Risks Posed to Creditors** ................................................................ **38**

**ARTICLE IX Certain Federal Income Tax Consequences** .................................... **38**

A. Tax Consequences to Creditors .................................................................. 38

**ARTICLE X Management Of Reorganized XtraLight** ........................................... **39**

A. Directors and Officers of XtraLight ........................................................... 39

B. Management Compensation ........................................................................ 39

**ARTICLE XI Conclusion** ......................................................................................... **40**

# ARTICLE I
## INTRODUCTION AND SUMMARY

### A.      General Information Concerning Disclosure Statement and Plan

XtraLight Manufacturing, Ltd., debtor and debtor-in-possession herein ("**XtraLight**"), submits this Disclosure Statement under 11 U.S.C. § 1125 in support of its Plan of Reorganization (the "**Disclosure Statement**") under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016.  A copy of the Plan of Reorganization (the "**Plan**") is attached as **Exhibit A** for your review. All terms used in this Disclosure Statement but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

XtraLight filed a petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division, on April 11, 2018 and has retained Deirdre Brown and Hoover Slovacek LLP as bankruptcy counsel.  XtraLight has prepared this Disclosure Statement to disclose that information which, in its opinion, is material, important, and necessary to an evaluation of the Plan.  Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement must be presented to and approved by the Bankruptcy Court.  Such approval is required by statute and does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

XtraLight seeks to confirm the Plan to effect a comprehensive restructuring of its business. As described in this Disclosure Statement, XtraLight believes that the Plan provides a desirable reworking of its pre-bankruptcy obligations and corporate form, preserves the going-concern value of its Manufacturing and UMS divisions, maximizes recoveries available to all constituents, and provides for an equitable distribution to XtraLight's creditors and stakeholders.

A bankruptcy court's confirmation of a plan of reorganization binds the debtor, any entity or person acquiring property under the plan, any creditor of or interest holder in a debtor, and any other entities and persons as may be ordered by the bankruptcy court to the terms of the confirmed plan, whether or not such creditor or interest holder is impaired under or has voted to accept the plan or receives or retains any property under the plan, through an order confirming the plan (the "**Confirmation Order**").  Among other things (subject to certain limited exceptions and except as otherwise provided in the Plan or the Confirmation Order), the Confirmation Order will discharge the XtraLight from any Claim (as that term is defined in the Plan) arising before the Effective Date (as defined herein and in the Plan) and substitute the obligations set forth in the Plan for those pre-bankruptcy Claims.  Under the Plan, Claims and Interests are divided into groups called "Classes" according to their relative priority and other criteria.

XtraLight is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.  Except to the extent that a Holder of an Allowed Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each Holder of an Allowed Claim or Allowed Interest with regard to XtraLight will receive the same recovery (if any) provided to other Holders of Allowed Claims or Allowed

Interests in the applicable Class, and will be entitled to their Pro Rata share of consideration available for distribution to such Class (if any).

Notwithstanding any other provision in the Disclosure Statement or Disclosure Statement Order, the Bankruptcy Court makes no finding or ruling in the Disclosure Statement Order, other than with respect to the adequacy of the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, with respect to (a) the negotiations, reasonableness, business purpose, or good faith of the Plan, or as to the terms of the Plan (or the treatment of any class of claims thereunder and whether those claims are or are not impaired) for any purpose, (b) whether the Plan satisfies any of the requirements for confirmation under Section 1129 of the Bankruptcy Code, or (c) the standard of review or any factor required for approval of the Confirmation of the Plan. Any objections or requests served in connection with the Plan are hereby reserved and not waived by entry of the Disclosure Statement Order; provided, however, that nothing in the Disclosure Statement or the Disclosure Statement Order shall preclude XtraLight or any other party in interest that is the subject of such objection or discovery requests from seeking to overrule such objections or limit or otherwise overrule such discovery requests.

**Prior to voting on the Plan, you are encouraged to read this Disclosure Statement and all documents attached to this Disclosure Statement in their entirety. As reflected in this Disclosure Statement, there are risks, uncertainties, and other important factors that could cause XtraLight's actual performance or achievements to be materially different from those they may project, and XtraLight undertakes no obligation to update any such statement of risks, uncertainties, or factors or projections. Certain of these risks, uncertainties, and factors are described in Article VIII of this Disclosure Statement, entitled "Risks Posed to Creditors".**

### B.    Disclaimers

The material herein contained is intended solely for the use of known creditors and interest holders of XtraLight and may not be relied upon for any purpose other than a determination by them of how to vote on the Plan.  As to Contested Matters, Adversary Proceedings and other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as a statement made in settlement negotiations under Rule 408 of the Federal Rules of Evidence.  This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding nor shall it be construed as advice on the tax, securities or other legal effects of the Plan as to the Holders of Claims against or equity interests in XtraLight.

To ensure compliance with Treasury department circular 230, each holder of a claim or interest is hereby notified that: (a) any discussion of U.S. Federal Tax issues in this disclosure statement is not intended or written to be relied upon, and cannot be relied upon, by any holder for the purpose of avoiding penalties that may be imposed upon a holder under the Tax Code; (b) such discussion is included hereby by XtraLight in connection with the promotion or marketing (within the meaning of Circular 230) by XtraLight of the transactions or matters addressed herein; and (c)

each holder should seek advice based upon its particular circumstances from an independent tax advisor.

XtraLight compiled the information contained in this Disclosure Statement from records available to it, including, but not limited to, pleadings and reports on file with the Bankruptcy Court, loan agreements and business records. Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While XtraLight has made every effort to retain the meaning of such other instruments or the portions transposed, it urges that any reliance on the contents of such other instruments should depend on a thorough review of the instruments themselves. Except as specifically noted, there has been no independent audit of the financial information contained in this disclosure statement. Neither XtraLight nor counsel for XtraLight can warrant nor represent that the information contained in this disclosure statement is without inaccuracies. Neither XtraLight nor its counsel has verified the information contained in this disclosure statement, although they do not have actual knowledge of any inaccuracies.

Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes on the Plan may be made, except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No other party has been authorized to utilize any information concerning XtraLight or its affairs, other than the information contained in this Disclosure Statement, to solicit votes on the Plan. Creditors and holders of equity interest should not rely on any information relating to XtraLight, other than that contained in this Disclosure Statement and the exhibits attached hereto.

No representations concerning XtraLight or the Plan are authorized other than those that are set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than those contained herein should not be relied upon, and such representations or inducements should be reported to counsel for XtraLight who shall deliver such information to the Bankruptcy Court.

**IF THE REQUISITE VOTE IS ACHIEVED FOR EACH CLASS OF IMPAIRED CLAIMS, THE PLAN IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST XTRALIGHT (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN), WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

      **C.**      **Answers to Commonly Asked Questions.**

As part of XtraLight's efforts to inform Creditors and Interest Holders regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

**THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.**

1.      **Who is the Debtor.**

The Debtor is XtraLight Manufacturing, LLC.  On April 11, 2018 (the "**Petition Date**"), XtraLight filed this voluntary reorganization case ("**Petition Date**") under Chapter 11 of the Bankruptcy Code and was assigned Case No. 18-31857-H1-11 in the United States Bankruptcy Court for the Southern District of Texas.

2.      **What is a Chapter 11 bankruptcy?**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts or to liquidate their assets in a controlled fashion.  The commencement of a chapter 11 case creates an "estate" containing all of the legal and equitable interests of the debtor in property as of the date the bankruptcy case is filed. During a chapter 11 bankruptcy case, the debtor remains in possession of its assets unless the Court orders the appointment of a trustee.  No trustee has been appointed in XtraLight's case.

3.      **If the Plan governs how my Claim or Interest is treated, what is the purpose of this Disclosure Statement?**

In order to solicit votes on a bankruptcy plan, the Bankruptcy Code requires that the proponent of the plan first prepare a disclosure statement that provides sufficient information to allow creditors and interest holders to make an informed decision about the plan.  The disclosure statement and plan are distributed to creditors and interest holders only after the Bankruptcy Court has approved the disclosure statement and determined that the disclosure statement contains information adequate to allow creditors and interest holders to make an informed judgment about the plan.  At that time, creditors and interest holders whose claims and interests are impaired under the Plan also receive a voting ballot.

4.      **Has this Disclosure Statement been approved by the Bankruptcy Court?**

The Bankruptcy Court conditionally approved this Disclosure Statement as containing adequate information.  "Adequate information" means information of a kind, and in sufficient detail, as far as is practicable considering the nature and history of XtraLight's business and the condition of XtraLight's books and records, to enable a hypothetical investor typical of Holders of Claims or interests of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan.  The Bankruptcy Court will consider any objections to the adequacy of the information in this Disclosure Statement at the Confirmation Hearing described below and in the Plan, and final approval of the Disclosure Statement will be determined at that time.  The Bankruptcy Court's conditional approval of this Disclosure Statement does not constitute an endorsement of any of the representations contained in either the Disclosure Statement or the Plan.

**5.      How do I determine how my Claim or Interest is classified?**

To determine the classification of your Claim or Interest, you must determine the nature of your Claim or Interest.  Under the Plan, Claims and Interests are classified into a series of classes. The pertinent articles and sections of the Disclosure Statement and Plan disclose, among other things, the treatment that each class of Claims or Interests will receive if the Plan is confirmed.

**6.      Why is confirmation of the Plan important?**

The Bankruptcy Court's confirmation of the Plan is a condition to XtraLight carrying out the treatment of Creditors and Interest Holders under the Plan.  Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, all parties are legally prohibited from satisfying Claims or Interests as provided in the Plan.  Put more simply, confirmation of a plan in Dhapter 11 is required before any distributions can be made to creditors absent a court order providing otherwise.

**7.      What is necessary to confirm the Plan?**

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires that, among other things, at least one class of impaired Claims or Interests vote to accept the Plan. Acceptance by a class of claims or interests means that at least two-thirds in the total dollar amount of the Allowed Claims or Interests, and more than one-half in number of the Allowed Claims, actually voting in the class vote in favor of the Plan.  Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims/interests.  Besides acceptance of the Plan by each class of impaired creditors or interests, a bankruptcy court also must find that the Plan meets a number of statutory tests before it may confirm the Plan.  These requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept the Plan but who will nonetheless be bound by the Plan's provisions if the Bankruptcy Court confirms the Plan.

Even if all classes of claims and interests accept a plan of reorganization, a bankruptcy court may nonetheless still deny confirmation. Bankruptcy Code Section 1129 sets forth the requirements for confirmation and, among other things, requires that a plan be in the "best interests" of impaired and dissenting creditors and interest holders and that the plan be feasible. The "best interests" test generally requires that the value of the consideration to be distributed to impaired and dissenting creditors and interest holders under a plan may not be less than those parties would receive if the debtor were liquidated under a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.  A plan must also be determined to be "feasible," which generally requires a finding that there is a reasonable probability that the debtor will be able to perform the obligations incurred under the plan and that the debtor will be able to continue operations without the need for further financial reorganization.

In addition to the statutory requirements imposed by the Bankruptcy Code, the Plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

If one or more classes vote to reject the Plan, XtraLight may still request that the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.   To confirm a plan not accepted by all classes, the plan proponent must demonstrate that the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and that has not accepted, the plan.   This method of confirming a plan is commonly called a "cramdown."

### 8. Is there a Committee in this case?

No.  The United States Trustee is responsible for soliciting a committee of creditors holding unsecured claims pursuant to Section 1102(a)(1) of the Bankruptcy Code and sought to solicit a committee in this case.  On May 24, 2018, the US Trustee filed a notice of inability to appoint a committee.

### 9. When is the deadline for returning my ballot?

Unimpaired creditors do not vote. Affiliated Class 4 creditors consent to the treatment herein. As such, all classes are deemed to accept the Plan and ballots shall not be necessary.

### D. Recommendation of Approval of the Plan

XtraLight approved the solicitation of acceptances of the Plan and all of the transactions contemplated thereunder.  In light of the benefits to be attained by the holders of Claims and Interests contemplated under the Plan, XtraLight recommends that such holders of Claims and Interests vote to accept the Plan.  XtraLight has reached this decision after considering the alternatives to the Plan that are available to XtraLight. These alternatives include liquidation under chapter 7 of the Bankruptcy Code or reorganization under chapter 11 of the Bankruptcy Code with an alternative plan of reorganization.  XtraLight determined, after consulting with their financial and legal advisors, that the transactions contemplated in the Plan would likely result in a distribution of greater value to creditors than would a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

### E. Rules of Interpretation

The following rules for interpretation and construction shall apply to the Disclosure Statement: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Disclosure Statement to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in the Disclosure Statement to an existing

document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to a person or entity as a holder of a Claim or Interest includes that person or entity's successors and assigns; (5) unless otherwise specified, all references in the Disclosure Statement to Articles are references to Articles of the Disclosure Statement; (6) unless otherwise specified, all references in the Disclosure Statement to exhibits are references to exhibits to the Disclosure Statement; (7) the words "herein," "hereof," and "hereto" refer to the Disclosure Statement in its entirety rather than to a particular portion of the Disclosure Statement; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Disclosure Statement; (9) unless otherwise set forth in the Disclosure Statement, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in the Disclosure Statement that is not otherwise defined in the Disclosure Statement, Plan, or exhibits to the Disclosure Statement Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, unless otherwise stated; (13) in computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply, and if the date on which a transaction may occur pursuant to the Disclosure Statement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day; and (14) unless otherwise specified, all references in the Disclosure Statement to monetary figures shall refer to currency of the United States of America.

## F.      Overview of Plan

An overview of the Plan is set forth below.  This overview is qualified in its entirety by reference to the Plan. If the Court confirms the Plan and, in the absence of any applicable stay, all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date. A summary of certain risk factors relating to the Plan is set forth below and in Article VIII of this Disclosure Statement.

The Plan should be read carefully and independently of this Disclosure Statement.  The following analysis of the Plan is intended to provide a context for understanding the remainder of this Disclosure Statement and to assist in an understanding of the Plan and the proposed treatment of the Creditors.

The terms of XtraLight's Plan are based upon, among other things, XtraLight's assessment of its ability to achieve the goals of its business plan, make the distributions contemplated under the Plan, and pay its continuing obligations in the ordinary course of business.  Under the Plan, Claims against and Interests in XtraLight are divided into Classes according to their relative seniority and other criteria.

A copy of the Plan is attached as **Exhibit A**.  Generally, if the Plan is confirmed by the Bankruptcy Court and consummated, (A) Administrative Claims of Professionals and the United States Trustee will be paid in cash in full; (B) Priority Claims will be paid in full in cash when due; (C) Allowed Claims of Ad Valorem taxing authorities shall be paid when due; (D) the Allowed Claim of Compass Bank will be purchased by Texas Capital Bank, N.A. on the Effective Date; (E) the Allowed Claims of the Boston Litigation Plaintiffs, as defined herein, shall be paid a total of $410,000.00, with $300,000 due on the Effective Date, $55,000 due six (6) months after the Effective Date, and $55,000 being due twelve (12) months after the Effective Date; (F) Allowed Claims of General Unsecured Creditors shall be paid in full in cash within 30 days of the Effective Date; and (G) Allowed General Unsecured Affiliate Claims will be paid in full on a Pro-Rata basis over three (3) years.

Part of the means of execution of the Plan includes the purchase of Compass Bank's Class 1 Claim by Texas Capital Bank, N.A.  In addition, XtraLight's incurrence of exit financing after the administrative closing of the Bankruptcy Case will be used to repay other Claimants identified herein.  Accordingly, Texas Capital Bank, N.A. will become the secured creditor of Reorganized XtraLight.  A detailed explanation of the exit financing can be found in Article II.F.6.

## ARTICLE II
## HISTORY OF BUSINESS AND CHAPTER 11 CASE

### A.     Overview of XtraLight's Business

XtraLight was founded in 1986 and was organized as a Texas corporation in 1992. The entity was converted to a Texas limited partnership in 2000 when Jerry Caroom ("**Caroom**"), XtraLight's CEO, purchased the entity.  XtraLight maintains its corporate offices and manufacturing facility at 8812 Frey Road, Houston, Texas (the "**Houston Office**").  XtraLight also maintains regional offices in Hammond, LA, Miami, FL, and Raleigh, NC.

XtraLight is an established designer, manufacturer, distributor, and installer of high-performance, energy efficient LED lighting platforms for both interior and exterior commercial and industrial applications.  Historically its customers have consisted of large and medium sized companies, electrical distributors, system integrators, electric utilities, energy service companies, and electrical contractors.  Its revenue is generated from the sale of lighting systems and related services to governmental, commercial and industrial customers on a project by project basis. These projects comprise both new construction as well as replacement of legacy lighting systems.

In 2009, XtraLight acquired a utility metering division ("**UMS**") a product-independent firm specializing in the design, build, integration, and maintenance of utility programs.  UMS offers its customers specialized utility metering programs, including advanced metering, billing systems, smart city design, network lighting and controls, and water conservation systems.

In the years preceding its bankruptcy filing, XtraLight had been profitable and grown several of its divisions incrementally.  In 2015 and 2016 XtraLight had revenues in excess of $30 million.

**B.      XtraLight's Business Structure**

XtraLight, as a limited partnership, is owed by two partners.  The general partner, XLM Management, LLC ("**XLM**"), owns a 1% interest in XtraLight while Caroom, the only limited partner, owns a 99% interest.  XLM is wholly owned by Caroom.

XtraLights business structure is as follows:



XtraLight's lighting business consists of two operating divisions the Manufacturing, and UMS divisions.  The Manufacturing division is engaged in the research, design, and manufacturing of custom and standard energy efficient light fixtures for new construction and retrofit projects throughout North America.  The UMS division designs, builds and installs meter transmission units which remotely read electrical and water meters and transmit data to the clients at specified intervals.  In its business XtraLight employs approximately 150 employees through these two divisions at its four (4) locations.

X-TRA Light Services ("**Services**"), is a related entity and dba of Caroom.  Services primarily installs lighting systems for XtraLight though it has, on occasion, installed third-party products for quality customers.

XtraLight leases the Houston Office from a related entity, Cay Capital LLC ("**Cay Capital**").  Caroom is the sole member of Cay Capital.  XtraLight leases the Houston Office from Cay Capital for $34,000 per month.

### C.    Events Leading to the Filing of this Chapter 11 Case

#### 1.    The Boston Project Litigation

In or around late April 2016, Barletta Engineering Corporation ("**Barletta**") entered into a contract with the Boston Water & Sewer Commission to perform certain radio transmitter upgrades to approximately 30,000 water meter transmission units ("**MTUs**") in Boston.  XtraLight was Barletta's subcontractor on the project and entered into a subcontract with Barletta on or around May 18, 2016 (the "**Boston Project**").

As part of the Boston Project subcontract, XtraLight was responsible for installing MTUs which would remotely read the water meters for residential water users.  To complete the installation of the MTUs, XtraLight engaged a team of its employees to install the meters.

On or about November 23, 2016, a group of 26 XtraLight employees who worked on the Boston Project initiated litigation against XtraLight alleging that it has violated Massachusetts' law by failing to property pay the State's prevailing wage rates, minimum wage rates and overtime pay.  The case is styled as *Israel Aponte and others, Plaintiffs v. Xtralight Manufacturing, Ltd. d/b/a Utility Metering Solutions, Defendant*, Civ. Action No. 16-3616 H, Superior Court of Suffolk Commonwealth of Massachusetts (the "**Boston Litigation**").  The complaint in the Boston Litigation has been amended several times to include additional causes of action as well as join additional plaintiffs.  A total of 28 plaintiffs are currently asserting claims against XtraLight in the Boston Litigation (the "**Boston Litigation Plaintiffs**").  The Boston Litigation Plaintiffs purportedly asserted a damages claim in excess of $12 million during the pendency of the case.

Prior to and during this case, XtraLight asserted that the alleged claims of the Plaintiffs are wholly unfounded and were brought in bad faith.  XtraLight also brought counterclaims against two (2) of the Plaintiffs alleging they committed fraud and misrepresentation in relation to the Boston Project and as a result, caused XtraLight to pay more than was due to them under the terms of their employment.

Unfortunately, XtraLight's defense and prosecution of the Boston Litigation came at a steep price.  Prior to the Petition Date, litigation costs associated with the Boston Litigation exceeded $600,000 with projections showing over a year of continued legal fees which could cost over a $1 million to get to trial and through appeals.  These crippling costs, coupled with risks associated with litigation and negative impacts of unresolved litigation on business operations, prompted the filing of this Chapter 11 case.

**D.      XtraLight's Financial Situation as of Petition Date**

**1.      Pre-Petition Assets**

As of the filing date XtraLight's principal assets consisted of cash, pre-payments, accounts receivable, investments, inventory, vehicles, machinery & equipment, and leasehold improvements valued at approximately $9 million.

Following is a table summarizing the value of these assets reflected on the schedules as of the Petition Date:

| Property | Scheduled Value |
|---|---:|
| Cash and Bank Deposits | $118,837.95 |
| Pre-payments | $199,603.91 |
| Accounts Receivable | $4,085,686.92 |
| Investments | $217,953.00 |
| Inventory | $2,376,113.00 |
| Office Furniture and Equipment | $357,956.00 |
| Machinery and Equipment | $1,626,370.00 |
| Leasehold Improvements | $147,118.00 |
| **Total** | **$9,129,638.78** |

**2.      Pre-Petition Liabilities**

**(a)      Secured Revolving Credit Facility**

XtraLight and its non-debtor affiliate, X-TRA Light Services (the "**Borrowers**"), are Borrowers under a Master Loan Agreement (as amended, the "**Pre-Petition Credit Agreement**") with Compass Bank ("**Compass**") covering a revolving line of credit facility (the "**Revolving Credit Facility**") secured by collateral of the type typical for asset-based loans (*e.g.*, accounts receivable, equipment, inventory, deposit accounts, related rights, and supporting obligations). Since 2010, the Master Loan Agreement has been amended 12 times such that it currently represents a revolving line of credit of up to $6,000,000[1], and two term loans, an Advancing Term Note dated December 21, 2017 in the original principal amount of $500,000.00, and Term Note D dated November 6, 2015 in the original principal amount of $1,000,000.

---

[1] The Consolidated Revolving Note was originally two separate revolving notes entered into on or about April 23, 2010, with an aggregate credit line of $3 million. Subsequently, the notes were consolidated and modified to increase the line of credit to $6 million.

As of the Petition Date, XtraLight was indebted to Compass in the aggregate approximate amount of $5 million as follows:

| Loan | Amount Loaned | Monthly Payment | Current Balance |
|---|---|---|---|
| Advancing Term Note | $500,000 | $9,150 | $481,412 |
| Consolidated Revolving Note | Up to $6 million | Interest Only | $4,400,000 |
| Term Note D | $1,000,000 | $27,778 | $194,444 |

### (b)     Unsecured Liabilities Scheduled by XtraLight

As of the Petition Date, XtraLight's scheduled uncontested general unsecured liabilities of trade creditors totaled approximately $1.1 million.  In addition, the Boston Litigation Plaintiffs asserted claims against XtraLight in excess of $12 million.  XtraLight scheduled but disputed all claims asserted by the Plaintiffs.

### E.     Operations During Bankruptcy

XtraLight has operated its business as Debtor-in-Possession since the Petition Date, and has not made any extraordinary disposition or acquisition of assets since that date.

### F.     Significant Events in this Chapter 11 Case

#### 1.     Post-Petition Financing

*Emergency Motion for Interim Order and Final Order (1) Authorizing Debtor-in-Possession Postpetition Financing; (2) Providing Adequate Protection; (3) Granting Liens, Security Interests and Superpriority Claims, and (4) Authorizing the Use of Cash Collateral (Doc. No. 5).*  This motion (the "**Financing Motion**") was filed to allow XtraLight to use of Compass' cash collateral as well as authorize XtraLight to enter into post-petition financing with Compass. The Financing Motion provided that all amounts owed on the Revolving Credit Facility would be rolled-up into a revolving credit line to be provided by Compass to XtraLight post-petition (the "**DIP Revolving Credit Facility**").  The DIP Revolving Credit Facility is secured by a first-priority lien on all of XtraLight's pre-petition collateral, over which Compass already had perfected liens, as well as all of XtraLight's post-petition property including, but not limited to, accounts, inventory, equipment, and deposit accounts.  Further Compass is entitled to an administrative claim, as defined by Section 503 of the Bankruptcy Code, for all amounts owed on the DIP Revolving Credit Facility.

Orders allowing the interim and use of cash collateral and authorizing post-petition financing were entered on April 12 (Doc No. 19), May 3 (Doc. No. 58), May 17 (Doc No. 81), June 1 (Doc No. 96).  The final order authorizing the use of cash collateral (the "**Final DIP Order**") was entered on June 28, 2018 (Doc No. 106).

*Unopposed Emergency Motion to Modify Final Order (1) Authorizing Debtor-in-Possession Postpetition Financing; (2) Providing Adequate Protection; (3) Granting Liens, Security Interests and Superpriority Claims, and (4) Authorizing the Use of Cash Collateral (Doc No. 113).* The Final DIP Order provided that XtraLight would reach certain milestones related to the sale of the Lighting Division. By agreement, XtraLight and Compass agreed to extend the milestones. An Order Amending Final Order (1) Authorizing Debtor-in-Possession Postpetition Financing; (2) Providing Adequate Protection; (3) Granting Liens, Security Interests and Superpriority Claims, and (4) Authorizing the Use of Cash Collateral was entered on July 20, 2018. (Doc No. 115).

### 2.      Pending Motions

The Debtor has opted not to sell any divisions of the company or spinoff any divisions at this time in order to allow time to rebuild the business with the litigation being resolved and exiting of Bankruptcy, the Debtor believes it will be able to rebuild sales and business which suffered due to the concerns of customers with warranties and other concerns which arose because of the uncertainty with the Debtor in Bankruptcy.

The Debtor will withdraw the *Emergency Motion of Debtor for Order: (A) Approving Sale and Bidding Procedures in Connection with Sale of Assets; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of the Notice of (I) Auction and Sale Hearing and (II) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases and Proposed Cure Costs Relating Thereto (Doc. No. 36)* prior to confirmation.

### 3.      Employment Applications

*Application to Employ Hoover Slovacek LLP as counsel for XtraLight (Doc. No. 75).* This pleading was filed on May 10, 2018 and an order authorizing this employment was entered June 1, 2018. (Doc No. 95).

*Debtor's Emergency Application for Order Authorizing the Employment of Statesman Business Advisors and SSG Advisors, LLC as Joint Business Advisors (Doc. No. 37).* Contemporaneously with the Motion to Sell XtraLight filed an application to employ Statesman Business Advisors and SSG Advisors (the "**Advisors**") to provide investment banking services related to the sale of XtraLight's Lighting Division. In the alternative, XtraLight also requested authority to employ the Advisors to assist in obtaining funds to refinance the debt owed by XtraLight to Compass and its pre-petition creditors. An order approving the retention of the Advisors was approved on May 3, 2018. (Doc. No. 56).

### 4.      Extensions of Exclusivity

*Motions to Extend XtraLight Exclusiving Period for Debtor XtraLight Manufacturing, Ltd. To File and Confirm a Chapter 11 Plan & Solicit Votes Pursuant to 11 U.S.C. § 1121(d) and § 1125 and Request for Expedited Consideration (Doc No. 117).* On July 28, 2018, XtraLight filed a motion to extend the exclusive period in which it might file and confirm a Chapter 11 plan. This

was filed because XtraLight was set for mediation with the Boston Litigation Plaintiffs and the outcome of the mediation would have an effect on the structure of XtraLight's Plan. On August 6, 2018, a hearing was held on XtraLight's motion and an Order was entered extending exclusivity to September 10, 2018.

### 5.    Boston Litigation Pleadings

*Joint Emergency Motion for the Entry of an Order Authorizing Mediation (Doc. No. 108).* On July 9, 2018, XtraLight and the Boston Litigation Plaintiffs moved the Bankruptcy Court for an order authorizing mediation of the claims between them. The Bankruptcy Court approved the mediation request on the same day. (Doc No. 110)

*Stipulation and Order Regarding Proof of Claim Deadline as to Certain Litigation Creditors (Docket No. 128).* On July 30, 2018, XtraLight and the Boston Litigation Plaintiffs participated in mediation during which they reached a settlement which would finally dispose of all claims and causes of action between them. Under the settlement, XtraLight has committed to pay a total of $410,000.00 to the Boston Litigation Plaintiffs via their counsel. Of this, $300,000 will be due and payable upon the Effective Date of the Plan. Thereafter XtraLight shall pay $55,000 within 6 months of the Effective Date and a final payment of $55,000 within 12 months of the Effective Date. On August 2, 2018, the Court entered the stipulation between XtraLight and the Boston Litigation Plaintiffs pursuant to these terms.

### 6.    Exit Financing

Although XtraLight obtained approval of the Motion to Sell, it continued, with the assistance of the Advisors, to look for opportunities to refinance its existing debt rather than resort to the sale of the Lighting Division. In late July 2018, XtraLight obtained an offer from Texas Capital Bank, N.A. ("**TCB**") to refinance the DIP Revolving Credit Facility. The offer was, however, contingent on the final resolution of the Boston Litigation, among other things.

With the Boston Litigation settled, XtraLight has determined that the best course of action going forward is to refinance its debts rather than sell the Lighting Division. Accordingly, XtraLight now intends to retain the Lighting Division post-bankruptcy.

In early 2018, XtraLight obtained a revised term sheet which provides that TCB will purchase the DIP Revolving Credit Facility on the Effective Date. After the purchase, TCB will also provide XtraLight with funds which, when combined with cash on hand, will allow XtraLight the ability to repay all Allowed Claims in full as provided in this Disclosure Statement and in the Plan. Upon closing of the exit financing and approval by the Bankruptcy Court, the Advisors will be entitled to a fee pursuant to the terms of the engagement agreement between them and XtraLight.

## ARTICLE III
## CLASSIFICATION OF CLAIMS UNDER THE PLAN

Total distributions shall not exceed the amount of any Allowed Claim, with interest. The Effective Date shall be after TCB purchases the Class 1 Claim of Compass which will occur only after the Confirmation Order becomes a Final Order and the Court closes or administratively closes the case.

### A.      Administrative Expenses and Priority Tax Claims

In accordance with Section 1123(a)(l) of the Bankruptcy Code, certain Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III. These unclassified Claims are treated as follows.

### 1.      Administrative Claims

Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

### 2.      Payment of Non-Tax Administrative Expense Claims.

Each Holder of an unpaid Allowed Non-Tax Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment

### 3.      Payment of Post-Petition-Tax Administrative Expense Claims.

Each Holder of an unpaid Allowed Administrative Claim for post-petition taxes shall be paid in Cash in full on the later of the statutory due date under applicable law or within five (5) days after the Effective Date, unless the Holder of such Claim agrees to a different treatment.

### 4.      Payment of Non-Tax Priority Claims.

Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

### 5.      Payment of Unsecured Priority Tax Claims.

Allowed Priority Tax Claims shall be paid in full in Cash on the later of when due, thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Unsecured Priority Claim, unless the Holder of such Claim agrees to a different treatment.

### 6.      Payment to Professionals.

All payments to non-ordinary course professionals for actual, necessary services and costs advanced in behalf of the bankruptcy up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of Section 330 of the Bankruptcy Code. Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of Reorganized XtraLight.

### 7.      Payment of United States Trustee Fees Incurred Prior to Confirmation.

All fees incurred pursuant to 28 U.S.C. § 1930(a)(6) for time periods prior to entry of Order Confirming Plan shall be paid by XtraLight on or before the Effective Date.

Reorganized XtraLight shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after entry of Order Confirming Plan.  After confirmation, Reorganized XtraLight shall file with the Bankruptcy Court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to XtraLight by the United States Trustee.

### B.      Classification of Secured and Unsecured Claims

All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

Under the Plan, Claims and Interests are classified as follows:

| Class | Description | Status | Voting Rights |
|-------|-------------|--------|---------------|
| 1 | Allowed Administrative, Superpriority and Secured Claim of Compass Bank. | Unimpaired | Presumed to Accept |
| 2 | Allowed Claims of Boston Litigation Plaintiffs | Unimpaired | Presumed to Accept |
| 3 | Allowed Claims of General Unsecured Creditors | Unimpaired | Presumed to Accept |

| 4 | Allowed Claims of Insiders & Affiliates | Impaired/Consent to Treatment | Consents and Presumed to Accept |
|---|---|---|---|
| 5 | Allowed Interests of Equity Holders | Unimpaired | Presumed to Accept |

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, prior to the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 Cases. In addition, the Bankruptcy Court may in accordance with Section 506(b) of the Bankruptcy Code conduct valuation hearings to determine the Allowed Amount of any Secured Claim.  Given the terms of the Plan with all creditors consenting or presumed to accept, there will be no voting or ballots sent out.

### C.     Treatment of Claims and Interests Under Plan

Certain Claims, including Priority Tax Claims and Administrative Claims, are not classified under the Plan, and are not entitled to vote on the Plan. The treatment of these Claims is set forth in Article III.A., *supra*.

The table below summarizes the classification and treatment of the prepetition Claims and Interests under the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan.

| Class | Type of Claim or Equity Interest | Approx. Allowed Claims or Interests | Treatment of Claims or Interests | Percentage Recovery Under Plan |
|---|---|---|---|---|
| 1 | Administrative, superpriority, and secured | $5,000,000 | The Allowed Class 1 Secured Claim of Compass Bank will be purchased by TCB on the Effective Date. Compass Bank's claim is deemed allowed and all amounts owing under the DIP Facility by non-Debtors shall also be paid at the closing on the Exit Facility with TCB. | 100% |

| Class | Type of Claim or Equity Interest | Approx. Allowed Claims or Interests | Treatment of Claims or Interests | Percentage Recovery Under Plan |
|---|---|---|---|---|
| 2 | Unsecured | $410,000 | The Holders of the Allowed Class 2 Claim will receive a total of $410,000 under the Plan.  Of this, $300,000 shall be paid upon the Effective Date of the Plan with the funds remitted to Plaintiffs' counsel for distribution to Plaintiffs. Thereafter, XtraLight shall pay of $55,000 within 6 months of the Effective Date and a final payment of $55,000 within 12 months of the Effective Date to Plaintiffs. | 100% |
| 3 | Unsecured | $997,220 | Except to the extent that the holder of an Allowed General Unsecured Claim and XtraLight agree to different treatment, the holders of each Allowed Class 3 Claim shall receive 100% of their claim payable on the Effective Date and failure to do so within 90 days after the Effective Date shall be deemed a default. | 100% |
| 4 | Unsecured Affiliate Claims | $3,838,280 | Except to the extent that the holder of an Allowed General Unsecured Affiliate Claim and XtraLight agree to different treatment or any nature provided complies with Exit Facility, the holders of Allowed Class 4 Claims shall be permitted to offset any amount due to XtraLight.  The remaining balance, if any, shall be paid on a Pro Rata basis over a period of three (3) years only after payment in full of all Allowed Class 1, Class 2, and Class 3 Claims. | 100% |

| Class | Type of Claim or Equity Interest | Approx. Allowed Claims or Interests | Treatment of Claims or Interests | Percentage Recovery Under Plan |
|---|---|---|---|---|
| 5 | Equity | Unknown | Holders of Allowed Class 5 Claims will retain an interest in the Reorganized XtraLight to the same extent as the held one prior to the Petition Date.  There shall be no distribution under the Plan on account of Allowed Class5 Claims unless and until all Allowed Class 1, Class 2, Class 3 and Class 4 Claims are paid in full. | N/A |

**Except as provided otherwise in the Plan or by order of the Bankruptcy Court, only holders of Claims or Interests who hold those Claims or Interests as of the Record Date shall be entitled to the treatment described above**. The Record Date for Allowed Claims is the date the order conditionally approving the Disclosure Statement was entered by the Bankruptcy Court. The Record Date for Equity Interests shall be the Petition Date.

**D.      Other Claims Matters**

**1.      Satisfaction of Claims and Interests.**

Holders of Claims and Interests shall receive the distributions provided for in the Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

**2.      Assumption and Rejection of Executory Contracts.**

XtraLight will assume all contracts, except for those rejected on **Exhibit A** to the Plan. Any Claims arising from rejection of an executory contract or lease must be filed on or before twenty (20) days from the Effective Date.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Allowed Claims arising from rejection of Executory Contracts, if timely filed and allowed, will be paid as a Class 3 General Unsecured Claim.

**3.      Objections to Claims.**

Reorganized XtraLight or the Disbursing Agent shall, on and after the Effective Date, have the right to make and file objections to Claims, including Administrative Expenses.  Unless otherwise ordered by the Bankruptcy Court, all objections to Claims that are the subject of proofs

of claim or requests for payment filed with the Bankruptcy Court shall be filed and served upon the holder of the Claim as to which the objection is made no event later than ninety (90) days after the Effective Date.

### 4.       Prosecution of Objections.

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim and Reserved Avoidance Actions may be made by Reorganized XtraLight and/or Disbursing Agent.

### 5.       Disallowance of Claims.

All Claims held by Persons against whom XtraLight or its Estate habr asserted a Claim or Cause of Action under Sections 522(f), 522(h), 542, 543, 544, 547, 548, 549, 550, 551, 553, or 724(a) of the Bankruptcy Code, including, without limitation, the Chapter 5 Actions and the Derivative Claims, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and holders of such Claims may not vote to accept or reject the Plan until such time as such Claims or Causes of Action against the Person have been settled or a Final Order entered and all sums due XtraLight by that Person are turned over to XtraLight.

### 6. Disputed Claims.

Except as otherwise provided in the Plan, no payments shall be made with respect to all or any portion of a Disputed claim unless and until any and all objections to such Disputed Claim have been determined by a Final Order.  Payments and distributions to each holder of a Disputed Claim, to the extent that the Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan.  Any payments that would have been made prior to the date on which a Disputed Claim becomes an Allowed Claim shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court determining such Claim to be an Allowed Claim becomes a Final Order.

For purposes of the Plan, any and all Claims that are subject to disallowance pursuant to Bankruptcy Code Sections 502(e) and 509 shall be deemed to be disallowed as of the Confirmation Date, notwithstanding the absence of any objection thereto.

## ARTICLE IV
## MEANS OF EXECUTION OF PLAN

### A. Sources of Consideration for Plan Distributions

Reorganized XtraLight shall fund distributions under the Plan as follows:

### 1. Cash on Hand at the XtraLight.

XtraLight shall use Cash on hand, in its discretion, to fund distributions to certain Holders of Claims against the XtraLight in accordance with the Plan.

### 2. Exit Facility

On and as a condition to the Effective Date, TCB will purchase the DIP Revolving Credit Facility from Compass.  Reorganized XtraLight, Services, and Cay Capital will enter into exit financing with TCB as follows (the "**Exit Facility**"):

| Credit Facility | Borrower(s) | Terms | Security |
|---|---|---|---|
| $5 million Revolving Line of Credit | XtraLight and Services | Interest at prime<br><br>Maturity 2 years from closing | All material assets including equipment, accounts receivable, royalty rights, chattel paper, general intangibles, inventory, and cash value life insurance |
| $600,000 Term Loan | XtraLight and Services | Interest at LIBOR rate plus 2.50%<br><br>Maturity 5 years from closing | All material assets including equipment, accounts receivable, royalty rights, chattel paper, general intangibles, inventory, and cash value life insurance |
| $2.1 million Term Loan | Cay Capital | Interest at LIBOR plus 2.75%<br><br>Maturity 10 years from closing | First lien deed of trust on the Houston Office |

Reorganized XtraLight may use the proceeds of the Exit Facility for any purpose permitted by the Exit Facility documents (the "**Exit Facility Documents**"), including the funding of distributions under the Plan and satisfaction of ongoing working capital needs.

The following are conditions precedent to closing of the Exit Facility:

- Final resolution of the Boston Litigation and approval of mediated settlement pursuant to Bankruptcy Rule 9019 in the Plan;

- Final Entry of the Confirmation Order;

- Findings in the Confirmation Order approving the Exit Facility;

- Findings in the Confirmation Order regarding the lien priorities of the borrowers' secured creditors and affected collateral as of the entry of the Confirmation Order;

- Terminations of all existing security interests on the respective borrowers' property on or before the Closing;

- Evidence of that all ad valorem property taxes assessed against borrowers' respective assets are paid in full as of the Closing.

The Confirmation Order shall constitute approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by Reorganized XtraLight in connection therewith), and authorization for Reorganized XtraLight to enter into and perform under the Exit Facility Documents and such other documents as may be required or appropriate.

The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of Reorganized XtraLight, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any other applicable non-bankruptcy law.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (b) shall be deemed automatically perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facility Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any applicable non-bankruptcy law. Reorganized XtraLight and the persons and entities granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

**B.      Disbursing Agent.**

Reorganized XtraLight shall act as the Disbursing Agent.  If Reorganized XtraLight chooses not to act as the Disbursing Agent, then it shall designate a substitute.

**C.      Vesting of Property of the Estate in Reorganized XtraLight.**

Except as otherwise provided in the Plan, upon the Effective Date of the Plan, all property of XtraLight and of its Estate shall vest in Reorganized XtraLight free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of the Plan or the Exit Facility

Documents.  Except as otherwise provided in the Plan, Reorganized XtraLight may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**D.      Preservation of Claims and Causes of Action**

**1.      Avoidance Actions**

Under Section 547 of the Bankruptcy Code, a debtor's bankruptcy estate may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one (1) year preference period.

There are certain defenses to preference recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the estate, the transferee has an Unsecured Claim against the debtor to the extent of the recovery.

On August 11, 2018, XtraLight filed its Statement of Financial Affairs (Doc No. 8) which includes, among other information, a list of potentially preferential transfers made within the preference period.  Copies of each Debtor's Statement of Financial Affairs and any amendments thereto filed in this bankruptcy case may be viewed online any time through the Bankruptcy Court's PACER System at www.txs.uscourts.gov. XtraLight has not yet analyzed whether any of these payments are preferences (within the meaning of the Bankruptcy Code) or whether the recipients of such payments would have a defense to a preference action, if commenced.  Creditors should be aware that payments received within the preference period may be subject to avoidance and recovery in a subsequent action by any Chapter 7 Trustee that may be appointed in this case if the Plan is not confirmed.  **Upon the Effective Cate, Reorganized XtraLight will be vested with the sole authority to review, initiate, and/or pursue any and all preference actions.**

Under Section 548 of the Bankruptcy Code and various state laws, a debtor may avoid as "constructive fraudulent transfers" certain obligations and may recover certain prepetition transfers of property, including the grant of a security interest in property, incurred or made while insolvent to the extent the debtor receives less than fair (or "reasonably equivalent") value for such obligations or property. In addition, avoidance actions exist under Sections 544, 545, 549 and 553(b) of the Bankruptcy Code that allow a debtor to avoid and/or recover certain property. As of the date of the distribution of this Disclosure Statement, XtraLight has not analyzed whether any transfers made by XtraLight are subject to challenge as constructive fraudulent transfers.  Any and

all such potential claims and causes of action will be preserved and transferred to Reorganized XtraLight who will pursue this investigation and analysis if appropriate.  **Upon the Effective Date, Reorganized XtraLight will be vested with the sole authority to review, initiate, and/or pursue any and all avoidance actions under 544, 548, 545, 549 or 553(b) of the Bankruptcy Code**.

Under the Plan, the Avoidance Actions belonging to XtraLight's Estate are specifically reserved and Reorganized XtraLight will have the exclusive authority as a representative of the Estate to investigate and prosecute all such Avoidance Actions in accordance with Section 1123(b)(3) of the Bankruptcy Code.

## 2. Other Claims and Causes of Action

In addition to the Avoidance Actions described above, XtraLight has claims and potential Causes of Action against third parties which, if successful, could generate additional Cash or result in the reduction or elimination of Claims against XtraLight's Estates.

XtraLight may have claims and/or Causes of Action for, without limitation, commercial torts, tortious interference with contractual and/or business relations, unfair competition, breach of contract, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers arising other than under the United States Bankruptcy Code, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, recklessness, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of information to gain improper advantage and other, similarly grounded claims and Causes of Action against, without limitation, current and/or former shareholders, members, equity interest holders, debt holders, partners, prospective joint venture participants, joint venture participants, prospective contracting parties, contracting parties, prospective purchasers, purchasers, prospective sellers, sellers, directors, officers, managers, employees, agents, contractors, insurers, sureties, investment bankers, consultants, advisors, representatives, competitors, vendors and/or other creditors of XtraLight and/or entities affiliated with or otherwise related to any of the foregoing. Except as otherwise specifically provided by the Plan, all claims and Causes of Action will be retained under the Plan and transferred to Reorganized XtraLight to be prosecuted for the benefit of creditors.

Specifically, XtraLight retains its interests in the following lawsuits:

- Cause No. 2017-49373, XtraLight Manufacturing, Ltd. V. Robert Resnick dba Elite Lighting Texas, in the 269th District Court of Harris County, Texas which has been non-suited without prejudice and can be refiled at any time.

### E.    Other Provisions of the Plan

#### 1.    Conditions to Confirmation.

Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless (a) all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to XtraLight shall have been satisfied. In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Bankruptcy Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

#### 2.    Waiver and Nonfulfillment of Conditions to Confirmation.

Nonfulfillment of any condition to confirmation of the Plan may be waived only by XtraLight. In the event that XtraLight determines that the conditions to the Plan's confirmation which it may waive cannot be satisfied and should not, in its discretion, be waived, XtraLight may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

#### 3.    Confirmation Order Provisions for Pre-Effective Date Actions.

The Confirmation Order shall empower and authorize XtraLight to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

#### 4.    Conditions to the Effective Date.

The following are conditions precedent to the effectiveness of the Plan (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) TCB purchases the DIP Revolving Credit Facility and distributes funds to Compass; and, (iii) the case is closed or administratively closed. The purchase of the Compass debt shall also be deemed substantial consummation.

#### 5.    Binding Effect.

As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind XtraLight, any entity acquiring property under the Plan and any Creditor, Interest Holder, or shareholder of XtraLight, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder has accepted the

Plan. After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Interest Holders, except to the extent as provided for in the Plan as the case may be. The Confirmation Order shall contain an appropriate provision to effectuate the terms of paragraph 13.1 of the Plan.

## 6.      Discharge.

Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, XtraLight shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

## 7.      Injunction and Exculpation.

The Confirmation Order shall provide for exculpation and include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against XtraLight or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim. Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan.

## 8.      Preservation of Setoff Rights.

In the event that XtraLight has a Claim of any nature whatsoever against the Holders of Claims, XtraLight may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by XtraLight of any Claim that XtraLight has against the Holder of Claims.

## 9.      Releases.

On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, XtraLight and Reorganized XtraLight, and to the maximum extent provided by law, its agents release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:

- Jerry Caroom, Xtra-Light Services, Cay Capital, LLC, their employees, agents, affiliates attorneys and representatives (the "**Insider Released Parties**"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of XtraLight or the Bankruptcy Estate and/or on account of XtraLight's Case shall be released. The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date. Neither the releases contemplated by this Article IV.F.9, nor any provisions of the Plan, shall release claims against non-debtor third parties; and,

- XtraLight's Professionals, officers and directors will be released and exculpated from any and all claims and liabilities other than gross negligence and willful misconduct or except as otherwise provided under the Professional Code of Responsibility.

### 10. Lawsuits.

On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against XtraLight except proof of Claims and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to XtraLight and Reorganized XtraLight. Such dismissal shall be with prejudice to the assertion of such Claims in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by XtraLight or any entity proceeding in the name of or for the benefit of XtraLight against a person shall remain in place only with respect to the claim(s) asserted by XtraLight or such other entity, and shall become property of Reorganized XtraLight as may be applicable, to prosecute, settle or dismiss as it sees fit.

### 11. Insurance and Surety Bond Program.

Confirmation and consummation of the Plan shall have no effect on the Surety Bond Program or the insurance policies of XtraLight in which XtraLight or any of XtraLight's representatives or agents is or was the insured or bonded party; XtraLight shall continue as the insured party under any such policies or as the principal or oblige under the terms of any bonds without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company and surety is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to XtraLight's bankruptcy, the Plan or any provision within the Plan. Notwithstanding any of the foregoing, the terms of the Surety Bond Program shall control the relationship with Xtralight.

**F.      Directors and Officers of Reorganized XtraLight.**

The Officers of XtraLight are authorized to continue as Officers of Reorganized XtraLight from and after the Effective Date of the Plan.

**G.      Claims Bar Dates**

     **1.      Administrative Claims Bar Date.**

Any holder of an Administrative Claim against XtraLight, except for expenses incurred in the ordinary course of operating XtraLight's business, Claims of governmental units as provided in Section 503(b)(1)(D) of the Bankruptcy Code, and the Class 1 Claim of Compass Bank, shall file proof of such Claim or application for payment of such Administrative Claim on or within sixty (60) days after the Confirmation Date, with actual service upon counsel for XtraLight or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices.  To the extent, if any, post-petition taxes are due to the Comptroller on or before the Effective Date, they shall be paid in full on the Effective Date in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code.  To the extent, if any, post-petition taxes have been incurred by XtraLight but are not yet due as of the Effective Date, those taxes shall be paid when due under and in accordance with state law.

     **2.      Unsecured Claims Bar Date.**

The deadline for filing a proof of claim for unsecured claims (other than a claim for damages stemming from the rejection of an executory contract or lease) is **August 20, 2018**.  The deadline for filing governmental proofs of claim is October 8, 2018.

     **3.      Rejection Damage Claim Bar Date.**

An Unsecured Claim arising from the rejection of an executory contract or unexpired lease must be filed no later than twenty (20) days after the Confirmation Date.

**H.      Summary of Financial Projections.**

Attached hereto as **Exhibit D** are financial projections prepared by management.  These projections include the monthly forecasts for the balance of 2018 through 2021. The statements include projected cash flow forecasts and assumptions based upon XtraLight's continued operations. The projections are conservative and establish that Reorganized XtraLight will be able to make the payments provided for in the Plan from existing cash and revenue from operations. Acceptance and Confirmation of the Plan.

I.        **Confirmation Hearing**

The Bankruptcy Court will schedule a hearing to consider Confirmation of the Plan.  At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan should be Confirmed in light of both the affirmative requirements of the Bankruptcy Code and any objections, if any, that are timely filed.

J.        **Requirements of Confirmation**

Confirmation of a Plan under Chapter 11 requires, among other things, that at least one class of impaired creditors or claimants, such as the unsecured creditors in this case, vote in favor of the Plan.  This vote is calculated by only counting those creditors who actually send in a ballot on time.  If two thirds in total dollar amount and a majority in number of claims actually voting in a class approve the Plan, that class of creditors is considered an accepting class.  If the vote is insufficient, the Court can still confirm the Plan, but only upon being provided additional proof regarding the ultimate fairness of the Plan to the creditors.  XtraLight believes that the unsecured creditors will support the Plan when they consider the fact that they will be paid in full over the term of the Plan, but would only receive a fraction of what is owed if the case were to be converted to one under Chapter 7.  In this case, the impaired class consents to the treatment set forth herein and need not vote on the Plan.

The proponent of a Plan also must meet all other applicable requirements of Section 1129(a) of the Bankruptcy code (except Section 1129(a)(8), if the proponent proposes to seek confirmation of a Plan under Section 1129(b) of the Bankruptcy Code).  At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code.  XtraLight believes that the Plan satisfies or will satisfy all of the necessary requirements of chapter 11 of the Bankruptcy Code.  Specifically, in addition to other applicable requirements, XtraLight believes that the Plan satisfies or will satisfy the applicable Confirmation requirements of Section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- XtraLight, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, will be disclosed to the Bankruptcy Court, and any such payment: (a) made before Confirmation will be reasonable or (b) will be subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation.

- Either each Holder of an Impaired Claim or Interest will accept the Plan, or each non-accepting Holder will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if XtraLight were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of XtraLight or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

XtraLight believes that the Plan will be able to satisfy each of the 1129(a) confirmation requirements.  To determine whether the Plan meets the feasibility requirement, XtraLight has analyzed its ability to meet its obligations under the Plan. As part of this analysis, XtraLight has prepared the Financial Projections for Reorganized XtraLight, which are attached to this Disclosure Statement as **Exhibit C**. Based upon the Financial Projections, XtraLight believes that Reorganized XtraLight will be a viable operation following the Chapter 11 Case, and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 1.      Best Interest of Creditors

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each holder of a claim or interest of such class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such person would receive or retain if XtraLight was, on the Effective Date, liquidated under Chapter 7 of the Bankruptcy Code.  As set forth below, XtraLight believes that this test will be satisfied.

### 2.      Liquidation Analysis

#### (a)      Methodology.

The starting point in determining the amount which members of each impaired class of unsecured claims and interests would receive in a Chapter 7 case is to estimate the dollar amount

that would be generated from the liquidation of XtraLight (the "**Liquidation Proceeds**"). The Liquidation Proceeds of XtraLight would consist of the proceeds from the sale of all of the assets of XtraLight, augmented by the cash held by XtraLight.  The present value of the distribution from the Liquidation Proceeds is then compared with the present value offered to each of the classes of unsecured claims and interests of each such class.

(b)     **Analysis.**

Attached as **Exhibit D** is a liquidation analysis (the "**Liquidation Analysis**").   This Liquidation Analysis indicates that Holders of Allowed General Unsecured Claims will receive more than what they would be likely to receive if the case were converted to a Chapter 7 liquidation case.  Further, the Chapter 7 payment would be drastically delayed, which is a far less desirable result than the result to be achieved under the Plan.  Under the Plan, all Allowed Class 3 Claims will be paid in full within thirty (30) days of the Effective Date except as otherwise agreed to or provided by this Plan.  However, as discussed below, in liquidation, these creditors would likely not receive any distribution until the assets were fully liquidated by the Chapter 7 Trustee. This process would likely take several months and possibly years before any payment would be made to creditors.

All of XtraLight's assets identified above are secured by the Class 1 Claim of Compass. In a liquidation, the amount currently owed to Compass plus additional interests, fees and costs, including attorney's fees, would need to be paid before any distribution could be made to the Chapter 7 estate.  Further, in a liquidation, the Chapter 7 Trustee would utilize any cash generated from the sale of XtraLight's assets first to pay ongoing expenses associated with the Chapter 7 case, including payments to various professionals such as attorneys, brokers, auctioneers and accountants.  These fees would be paid ahead of the prepetition claims in this case.

As set forth in **Exhibit D**, absent confirmation of the Plan, the Chapter 11 Case would be converted to a case under Chapter 7 of the Bankruptcy Code and the assets would be liquidated with creditors achieving a fraction of their claim amounts.   As stated above, Chapter 7 administrative fees and expenses, then Chapter 11 administrative expense claims would be paid ahead of all other claims.

Further, the conversion of the Case to a case under Chapter 7 would add another layer of administrative expense, including professional fees and trustee commissions that would further impair the timing and potential recovery of Allowed General Unsecured Claims.  Thus, the proposed distribution to Allowed Class 3 Claims under the Plan is far more than what could be expected to be received in a Chapter 7 liquidation.

3.     **Financial Feasibility**

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Court must determine that consummation of the Plan is not likely to be

followed by the liquidation or the need for further financial reorganization of XtraLight. XtraLight believes that it will be able to fulfill its obligations under the Plan.

Attached hereto as **Exhibit C** is XtraLight's projection demonstrating the feasibility of the Plan. **Exhibit C** was prepared by XtraLight management from historical data and a projection model that assumes that revenue will be produced as projected by use of the current facilities and equipment. XtraLight believes that it is sufficient to support additional business and will continue to increase its revenues. This pro forma indicates that XtraLight will be able to survive on a post-confirmation basis.

## K.      Confirmation without Acceptance of All Impaired Classes

The Bankruptcy Code contains provisions for confirmation of a Plan even if the Plan is not accepted by all impaired classes, provided that at least one impaired class of claims has accepted it (determined without including any acceptance by any insider holding a claim of such class). These "cram-down" provisions, for confirmation of a Plan despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in Section 1129(b) of the Bankruptcy Code.

### 1.      No Unfair Discrimination.

This test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 2.      Fair and Equitable Test

Under Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class if, among other things, the plan provides:  (a) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain, on account of its claim, property that has a value as of the Effective Date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interest of such class will not receive or retain, on account of such junior claim or interest, any property unless the senior class is paid in full. The Bankruptcy Court must further find that the economic terms of a plan do not unfairly discriminate as provided in Section 1129(b) of the Bankruptcy Code with respect to the particular objecting class. Under the terms of this plan, the principals of XtraLight shall retain their interest in Reorganized XtraLight. The retention of this interest may prevent XtraLight from seeking relief under 1129(b)(2)(B). However, if the plan is not confirmed, unsecured creditors will likely not receive any distribution in a liquidation.

### 3.     Absolute Priority Rule

Absolute Priority Rule. Section 1129(b)(2)(B)(ii) controls the payment of senior and junior classes of claims or interests in the event that all of the applicable requirements of Section 1129(a), other than paragraph (8), are met with respect to a plan.  In the event that any impaired class (other than an "insider", as defined in 11 U.S.C. § 101(31)) rejects the Plan, the equity interest holders (or other interests junior to unsecured creditors) may only retain their interest in Reorganized XtraLight in return for new value infused into Reorganized XtraLight in accordance with *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 445 (1999). The assessment of the required "new value" for the equity interest holders (or other interests junior to unsecured creditors) is to be made in the event that any impaired class (that is not an "insider") rejects the Plan.

XtraLight believes that the Plan meets the "fair and equitable" test and does not discriminate unfairly with respect to all classes of creditors or interest holders.  Under the terms of this plan, the principals of XtraLight shall retain their interest in Reorganized XtraLight.  The retention of this interest may prevent XtraLight from seeking relief under 1129(b)(2)(B). Unless all impaired classes vote for XtraLight's plan, the retention of this interest will prevent XtraLight's plan from being confirmed and this case will be converted to chapter 7.

## ARTICLE V
## VOTING PROCEDURES

### A.     Ballots and Voting Deadline

There are no impaired nonconsenting classes and the Plan should be deemed accepted by all classes without any ballot and voting.

### B.     Holders of Claims Entitled to Vote

Except as otherwise provided in the Plan, any holder of a Claim against XtraLight whose claim is impaired under the Plan is entitled to vote, if either (i) XtraLight has scheduled the holder's Claim at a specific amount other than $0.00 (and such Claim is not scheduled as "disputed," "contingent," or "unliquidated") or (ii) the holder of such Claim has filed a Proof of Claim on or before the deadline set by the Bankruptcy Court for such filings in a liquidated amount. Any holder of a Claim as to which an objection has been filed (and such objection is still pending as of the time of confirmation of the Plan) is not entitled to vote, unless the Bankruptcy Court (on motion by a party whose Claim is subject to an objection) temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Such motion must be heard and determined by the Bankruptcy Court before the first date set by the Bankruptcy Court for the Confirmation Hearing of the Plan. In addition, the vote of a holder of a Claim may be disregarded if the Bankruptcy Court determines that the holder's acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

### C.    Bar Date for Filing Proofs of Claim

The Bankruptcy Court established a bar date for filing proofs of claim or interests in this case of **August 20, 2018**. The Bankruptcy Court further established a bar date for filing proofs of claim by Governmental Units of **October 8, 2018**. Timeliness or other substantive issues which may affect the ultimate allowability of a particular claim have not been considered in connection with classification. As described in Article VI.G., for the filing of claims objections, the Plan provides Reorganized XtraLight a period of the later of (i) 365 days after the Effective Date; and (ii) 60 days after the later of (a) the applicable Bar Date, or (b) entry of a Final Order deeming a late-filed Proof of Claim to be treated as timely filed; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of Reorganized XtraLight, with or without notice or hearing.

Prior to the Confirmation Hearing, XtraLight intends to file a Plan Supplement that includes, among other things, the list of assumed Executory Contracts (with associated Cure Amounts, if any), and a description of Retained Causes of Action.  As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available to parties in interest upon request.

### D.    Definition of Impairment

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan, unless, with respect to each claim or interest of such class, the plan:

1.    Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

2.    Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

    a.    Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

    b.    Reinstates the maturity of such claim or interest as it existed before the default;

    c.    Compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

d. Does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or interest; or

3. Provides that, on the Effective Date the holder of such claim or interest receives, on account of such claim or interest, cash, equal to:

a. With respect to a claim, the allowed amount of such claim; or

b. With respect to an interest, if applicable, the greater of:

i. Any applicable fixed liquidation preference; or

ii. Any fixed preference at which XtraLight, under the terms of the security, may redeem the security.

4. In Article III.D of the Plan, XtraLight has identified the impaired classes of creditors under the Plan.  In the event there are questions regarding whether a person is in an impaired class, the person should assume that his or her claim is impaired and vote.  If the claim is determined to be impaired, the vote will be considered by the Bankruptcy Court.  Holders of Class 3, Class 4 and Class 5 claims and Class 6 interest holders are impaired under the Plan.

**IMPAIRED CREDITORS ANTICIPATED TO RECEIVE A DISTRIBUTION UNDER THE PLAN ARE BEING SOLICITED TO VOTE.  IF YOU HOLD AN ADMINISTRATIVE CLAIM OR UNIMPAIRED CLAIM, THE DEBTOR IS NOT SEEKING YOUR VOTE.**

### E. All Classes Unimpaired Under the Plan

Holders of Class 1, Class 2 and Class 3 Claims are not impaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, holders of Claims within these Classes are conclusively presumed to have accepted the Plan, and therefore are not entitled to vote to accept or reject the Plan.

Allowed Class 4 Claims are also unimpaired under the Plan and, to the extent deemed impaired, consent to the treatment provided for in the Plan.

Holders of Class 5 Interests are unimpaired under the Plan and will retain their interests in Reorganized XtraLight to the same extent as held before the Petition Date.  Accordingly they are conclusively presumed to have accepted the Plan under Bankruptcy Code Section 1126(g), and therefore, are not entitled to vote to accept or reject the Plan.

# ARTICLE VI
# ALTERNATIVES

Although the Disclosure Statement is intended to provide information to assist creditors in making a judgment on whether to vote for or against the Plan, and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful.  These alternatives include conversion to a Chapter 7 or dismissal of the proceedings.  XtraLight of course, believes the proposed Plan to be in the best interests of creditors.   XtraLight assesses the alternatives as follows:

### A.    Conversion to Chapter 7

The first alternative would be to convert the Chapter 11 case to a Chapter 7 liquidating bankruptcy to liquidate the business.  If this occurred, the Bankruptcy Court will appoint a trustee to liquidate XtraLight's assets for the benefit of its creditors.  The costs associated with a trustee would then be added to the additional tier of administrative expenses entitled to priority over general unsecured claims upon conversion.  Such administrative expenses include the Trustee's commissions, as well as fees for professionals retained by the Trustee to assist in the liquidation. The Trustee's commissions are based on disbursements to creditors.  The Trustee receives 25% of the first $5,000, 10% of the next $45,000, 5% of the next $950,000 and 3% on all amount disbursed in excess of $1 million.

### B.    Dismissal

Dismissal of the proceeding would likely result in XtraLight and the plan proponents defending debt-collection litigation and numerous new lawsuits to collect debts.  Compass would foreclose on most of XtraLight's assets likely halting operations.  Under this scenario, the unsecured creditors would likely receive no payment whatsoever on their claims.

### C.    No Assurance of Either

There are other possibilities which are less likely, such as a competing plan proposed by a different party.  XtraLight has attempted to set forth the reasonable alternatives to the proposed Plan. However, XtraLight must caution creditors that a vote must be for or against the Plan.  The vote on the Plan does not include a vote on alternatives to the Plan.  There is no assurance what course the proceedings will take if the Plan fails acceptance.

### D.    Preferences and Fraudulent Transfers

Under the Bankruptcy Code and Texas State Law, the bankruptcy estate may sue to recover assets (or their value) that were transferred by "voidable transfers", which includes assets transferred:

(A)    in fraud of Creditors,

(B)     in constructive fraud of Creditors – because the asset was transferred without sufficient consideration while XtraLight was insolvent,

(C)     as a preferential transfer - a payment before bankruptcy outside the ordinary course that allows a creditor to receive more than it would receive in liquidation, or

(D)     as an unauthorized post-bankruptcy transfer by XtraLight outside of the ordinary course.

A list of all transfers made during the applicable avoidance periods is attached to XtraLight Statement of Financial Affairs filed with the Bankruptcy Court on April 11, 2018 (Doc. No. 8). XtraLight does not believe that any of these transfers are voidable under Sections 550, 547, 548, 544, or similar provision of the Bankruptcy Code.

If the Plan is not confirmed and a liquidating trustee or Chapter 7 trustee is appointed, it is possible that the trustee's analysis will differ from that of XtraLight and that avoidance actions will be commenced against Creditors of the estate, insiders, or others.

## ARTICLE VII
## RISKS POSED TO CREDITORS

The principal risk to the creditors is that the Plan will not be confirmed.  Absent confirmation of the Plan, the case would be converted to a Chapter 7 to liquidate XtraLight's assets.  As stated herein and in the Liquidation Analysis attached as **Exhibit D**, XtraLight does not believe conversion would result in a significant distribution to its creditors.  Accordingly, conversion to Chapter 7 is a risk.

Further, the settlement with the Plaintiffs' of the Boston Litigation is contingent on approval of XtraLight's Chapter 11 Plan.  If the case is converted, it is possibly that the Plaintiffs' will continue litigating their claims which may result in a greater claim being awarded to them.  If this happens, holders of unsecured claims will be further diluted and received an even smaller distribution.

## ARTICLE VIII
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**A.     Tax Consequences to Creditors**

**1.     Generally**

The tax consequence to any particular creditor may vary depending on their own circumstances and they should consult with their own tax professional for advice regarding the impact on them of their acceptance or rejection of the plan.

### 2.  Unsecured Claims

Holders of Class 2, 3, and 4 Unsecured Claims will receive distributions from XtraLight. These Claimholders should either be treated as (i) recognizing ordinary income in an amount equal to cash received and recognizing a loss in an amount equal to the tax basis in the Claim or (ii) recognizing a loss equal to the difference between the amount of cash received and their tax basis in their Claim.

A Claimholder's tax basis in a Claim should generally equal the amount included in income as a result of the provision of goods or services to XtraLight, except to the extent that a bad debt loss had previously been claimed. The gain or loss with respect to the Claim should be ordinary to the extent that it arose in the ordinary course of trade or business for services rendered or from the sale of inventory to XtraLight.

**DUE TO THE COMPLEX NATURE OF APPLICABLE TAX LAWS, CLAIMANTS SHOULD CONSULT WITH THEIR TAX PROFESSIONAL CONCERNING COMPLIANCE WITH AND THE AFFECT OF BOTH STATE AND FEDERAL TAX LAWS ON THEIR INTEREST BEFORE THEY CAST A BALLOT TO ACCEPT OR REJECT THE PLAN.**

**THE ACCOUNTANTS, ATTORNEYS, AND THE MANAGEMENT OF THE DEBTOR MAKE NO REPRESENTATIONS HEREIN CONCERNING THE IMPACT OF THE TAX LAW ON ANY INDIVIDUAL TREATED UNDER THE PLAN.**

### ARTICLE IX
### MANAGEMENT OF REORGANIZED XTRALIGHT

**A.    Directors and Officers of XtraLight**

Jerry Caroom is the limited partner of XtraLight who holds a 99% interest in the business. Caroom shall continue as an Officer, employee and owner of Reorganized XtraLight from and after the Effective Date of the Plan whether directly or indirectly.

**B.    Management Compensation**

As of the Effective Date, the management of Reorganized XtraLight shall continue to receive salaries and benefits received pre-petition.  Management reserves the right increase these salaries in accordance with usual and customary practices of the company.

# ARTICLE X
# CONCLUSION

The information provided in this Disclosure Statement is intended to assist you in evaluating the Plan in an informed fashion.  If the Plan is confirmed, you will be bound by its terms.  Accordingly, you are urged to make such further inquiries as you may deem appropriate and then cast an informed vote on the Plan.

By: _____

      Jerry Caroom
      President and Manager of XLM Management, LLC
      GP of the Debtor

HOOVER SLOVACEK, LLP
Deirdre Carey Brown
State Bar No. 24049116
brown@hooverslovacek.com
Melissa A. Haselden
State Bar No. 00794778
haselden@hooverslovacek.com
Vianey Garza
State Bar No. 24083057
garza@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
713-977-8686

ATTORNEYS FOR DEBTOR

## EXHIBIT A

## PLAN

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **XTRALIGHT MANUFACTURING, LTD.,** | § | **CASE NO. 18-31857-H1-11** |
| | § | **Chapter 11** |
| Debtor. | § | |

**PLAN OF REORGANIZATION FILED BY DEBTOR**
**XTRALIGHT MANUFACTURING, LTD.**

HOOVER SLOVACEK LLP
Deirdre C. Brown
State Bar No. 24049116
brown@hooverslovacek.com
Melissa A. Haselden
State Bar No. 00794778
haselden@hooverslovacek.com
Vianey Garza
State Bar No. 24083057
garza@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

*Attorneys for Debtor and Debtor in Possession*

# TABLE OF CONTENTS

ARTICLE I GENERAL PURPOSES OF THE PLAN...................................................................... 1

ARTICLE II DEFINITIONS ........................................................................................................... 3

    Section 2.1   Definitions. ......................................................................................................... 3

    Section 2.2   Interpretation. ..................................................................................................... 8

    Section 2.3   Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. .............................................................................................. 8

    Section 2.4   Other Terms. ....................................................................................................... 8

ARTICLE III ADMINISTRATIVE AND PRIORITY CLAIMS ..................................................... 8

    Section 3.1   Administrative Claims Bar Date. ....................................................................... 8

    Section 3.2   Payment of Non-Tax Administrative Expense Claims. ..................................... 9

    Section 3.3   Payment of Post-Petition-Tax Administrative Expense Claims. ...................... 9

    Section 3.4   Payment of Non-Tax Priority Claims. ............................................................... 9

    Section 3.5   Payment of Unsecured Priority Tax Claims. ..................................................... 9

    Section 3.6   Payment of United States Trustee Fees Incurred Prior to Confirmation. ......... 9

    Section 3.7   Payment of United States Trustee Fees Subsequent to Confirmation. .............. 9

    Section 3.8   Payment to Professionals. .................................................................................. 9

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 9

    Section 4.1   Class 2.  Allowed Administrative Claim of Compass. .................................... 10

    Section 4.2   Class 2.  Allowed Claims of Boston Litigation Plaintiffs. .......................... 10

    Section 4.3   Class 3.  Allowed General Unsecured Claims. ............................................ 10

    Section 4.4   Class 4.  Allowed General Unsecured Claims of Affiliates. ........................ 11

    Section 4.5   Class 5.  Allowed Interests of Equity Holders. ............................................ 11

ARTICLE V VOTING OF CLAIMS AND INTERESTS .............................................................. 11

ARTICLE VI MEANS FOR EXECUTION OF PLAN ................................................................. 11

    Section 6.1   Vesting of Property of the Estate in Reorganized XtraLight. ........................ 11

    Section 6.2   Continuation of Business Operations. .............................................................. 12

    Section 6.3   Source of funds for Payments due on the Effective Date. ............................. 12

    Section 6.4   Officers of Reorganized XtraLight. ................................................................ 12

    Section 6.5   Disbursing Agent. ............................................................................................ 12

    Section 6.6   Exclusive Rights and Duties of the Disbursing Agent. .................................. 12

    Section 6.7   Powers of the Disbursing Agent. ..................................................................... 12

    Section 6.8   Presumption of Disbursing Agent's Authority. .............................................. 13

    Section 6.9   Limitation on Disbursing Agent's Liability. ................................................... 13

Section 6.10   Delivery of Distributions..................................................................... 13

Section 6.11   Time Bar for Cash Payments. ............................................................. 14

Section 6.12   Unclaimed Property.............................................................................. 14

Section 6.13   Minimum Payment. .............................................................................. 14

Section 6.14   Fractional Dollars. ............................................................................... 14

Section 6.15   Distribution Dates. .............................................................................. 14

Section 6.16   Orders Respecting Claims Distribution................................................ 15

Section 6.17   Agreements, Instruments and Documents............................................. 15

Section 6.18   Further Authorization. ......................................................................... 15

ARTICLE VII CRAMDOWN AND CLAIMS ALLOWANCE.................................... 15

Section 7.1   Cramdown. ............................................................................................. 15

Section 7.2   Absolute Priority Rule............................................................................ 15

Section 7.3   Allowance of Claims under the Plan....................................................... 16

Section 7.4   Objection Deadline.................................................................................. 16

Section 7.5   Prosecution of Objections. ..................................................................... 16

ARTICLE VIII DEFAULT.............................................................................................. 16

Section 8.1   Events of Default..................................................................................... 16

Section 8.2   Remedies. ................................................................................................ 16

ARTICLE IX EXECUTORY CONTRACTS AND LEASES ...................................... 17

Section 9.1   Assumption.............................................................................................. 17

Section 9.2   Rejection.......................................................**Error! Bookmark not defined.**

Section 9.3   Rejection Claims. .................................................................................... 18

Section 9.4   Payment of Rejection Claims......................**Error! Bookmark not defined.**

ARTICLE X MODIFICATION OF THE PLAN ........................................................... 18

Section 10.1   Modification. ......................................................................................... 18

ARTICLE XI CONDITIONS PRECEDENT ................................................................. 18

Section 11.1   Conditions to Confirmation................................................................... 18

Section 11.2   Waiver and Nonfulfillment of Conditions to Confirmation.................... 19

Section 11.3   Confirmation Order Provisions for Pre-Effective Date Actions. ............ 19

Section 11.4   Conditions to the Effective Date. ........................................................... 19

Section 11.5   Waiver and Nonfulfillment of Conditions to Effective Date. .................. 19

ARTICLE XII JURISDICTION OF THE BANKRUPTCY COURT ......................... 19

Section 12.1   Retention of Bankruptcy Court Jurisdiction............................................ 19

Section 12.2   Failure of the Bankruptcy Court to Exercise Jurisdiction. ...................... 21

ARTICLE XIII EFFECT OF CONFIRMATION ....................................................... 21

    Section 13.1   Binding Effect. ..................................................................... 21

    Section 13.2   Satisfaction of Claims and Interests. .................................... 21

    Section 13.3   Vesting of Property. ............................................................. 21

    Section 13.4   Discharge. ............................................................................. 22

    Section 13.5   Injunction. ............................................................................ 22

    Section 13.6   Preservation of Setoff Rights. ............................................. 24

    Section 13.7   Releases. ............................................................................... 24

    Section 13.8   Guarantors. ........................................................................... 24

    Section 13.9   Lawsuits. .............................................................................. 24

    Section 13.10   Insurance. ............................................................................. 25

    Section 13.11   U.S. Trustee Fees. ................................................................ 25

    Section 13.12   Term of Stays. ...................................................................... 25

ARTICLE XIV MISCELLANEOUS PROVISIONS .............................................. 25

    Section 14.1   Corporate Authority. ............................................................ 25

    Section 14.2   Documentation. .................................................................... 25

    Section 14.3   Integration Clause. ............................................................... 26

    Section 14.4   Primacy of the Plan and Confirmation Order ...................... 26

    Section 14.5   Severability. ......................................................................... 26

    Section 14.6   No Admission. ...................................................................... 26

    Section 14.7   Bankruptcy Restrictions. ..................................................... 26

    Section 14.8   Governing Law. ................................................................... 27

    Section 14.9   Closing of Case. ................................................................... 27

    Section 14.10   Successors and Assigns. ...................................................... 27

    Section 14.11   Notices. ................................................................................ 27

    Section 14.12   Validity and Enforceability. ................................................ 27

    Section 14.13   Plan Supplement .................................................................. 28

<u>**PLAN OF REORGANIZATION**</u>

In accordance with Sections 1121 and 1106 of the Bankruptcy Code, Debtor, XtraLight Manufacturing, Ltd. ("**XtraLight**"), files this Plan of Reorganization ("**Plan**") as follows:

**ARTICLE I**
**GENERAL PURPOSES OF THE PLAN**

XtraLight is a Houston, Texas based limited partnership which designs, manufactures, distributes and installs high-performance, energy efficient LED lighting platforms for both interior and exterior commercial and industrial applications. XtraLight has been in business since about 1986 and has been owed by Jerry Caroom since 2000. Aside from its Houston operation, XtraLight maintains regional offices in Hammond, LA, Miami, FL, and Raleigh, NC. XtraLight currently has approximately 150 employees.

This bankruptcy case was filed, in part, as a result a Massachusetts lawsuit filed by 28 former XtraLight employees who worked as subcontractors on a project for the Boston Water & Sewer Commission (the "**Plaintiffs**"). The lawsuit hindered efforts of the Debtor to attempt to restructure or take other actions.

The Plaintiffs' lawsuit against XtraLight alleged that it violated Massachusetts law by failing to properly pay the State's prevailing wage rates, minimum wage rates, and overtime pay, and sought damages in excess of $12 million (the "**Boston Litigation**"), which, if awarded, would exceed the company's net worth. During the pendency of its Bankruptcy Case, XtraLight and the Boston Litigation Plaintiffs reached a settlement, payment of which is approved pursuant Bankruptcy Rule 9010 by incorporation under the terms of this Plan.

XtraLight has a strong core business and intends to reorganize around that business which, together with certain debt refinancing, is expected to be pay all Allowed Claims in full as provided herein. Consequently, the Plan provides for payment to Creditors as follows:

| Class | Type of Claim or Equity Interest | Approx. Allowed Claims or Interests | Treatment of Claims or Interests | Percentage Recovery Under Plan |
|---|---|---|---|---|
| 1 | Administrative | $5,000,000 | The Allowed Class 1 Administrative Claim of Compass Bank will be paid in full via Texas Capital Bank purchasing the debt and all interests therein from which will be purchased by TCB Compass on the Effective Date. No distributions will be made directly from the Debtor to Compass Bank. | 100% |
| 2 | Unsecured | $410,000 | The holders of the Allowed Class 2 Claim will receive a total of $410,000 under the Plan. Of this, $300,000 shall be paid upon the Effective Date of the Plan with the funds remitted to Plaintiffs' counsel for distribution to Plaintiffs. Thereafter, XtraLight shall pay of $55,000 within 6 months of the Effective Date and a final payment of $55,000 within 12 months of the Effective Date to Plaintiffs. | 100% |
| 3 | Unsecured | $997,220 | Except to the extent that the holder of an Allowed General Unsecured Claim and XtraLight agree to different treatment of any nature, the holders of each Allowed Class 3 Claim shall receive 100% of their Allowed claim payable within 90 days of the Effective Date of the Plan. | 100% |

| Class | Type of Claim or Equity Interest | Approx. Allowed Claims or Interests | Treatment of Claims or Interests | Percentage Recovery Under Plan |
|-------|------------------|------------------|------------------|------------------|
| 4 | Unsecured Affiliate Claims | $3,838,280 | Except to the extent that the holder of an Allowed General Unsecured Affiliate Claim and XtraLight agree to different treatment of any nature provided consistent with the Exit Facility, the holders of Allowed Class 4 Claims shall be permitted to offset any amount due to XtraLight. The remaining balance, if any, shall be paid on a Pro Rata over a period of three (3) years only after payment in full of all Allowed Class 1, Class 2, and Class 3 Claims. | 100% |
| 5 | Equity | Unknown | Holders of Allowed Class 5 Claims will retain an interest in Reorganized XtraLight to the same extent as the held prior to the Petition Date. There shall be no distribution under the Plan on account of Allowed Class 5 Claims unless and until all Allowed Class 1, Class 2, Class 3 and Class 4 Claims are paid in full. | N/A |

## ARTICLE II
## DEFINITIONS

Section 2.1    Definitions.    For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

2.1.1    "Administrative Claim" shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section.

2.1.2    "Administrative Expenses" shall mean those expenses described in Section 503 of the Bankruptcy Code.

2.1.3    "Allowed Claim" or "Allowed Interest" shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Court within the applicable period of limitations fixed by Bankruptcy Rule 3001 or, by order of this Court, (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitations fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.1.4    "Allowed Unsecured Claim" means an allowed claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

2.1.5    "Avoidance Actions" shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for voidable transfers or similar legal theories, such as the Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act, as enacted.

2.1.6    "Bankruptcy Case" shall mean Case No. 18-31857 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division filed by XtraLight Products, Inc. on April 11, 2018.

2.1.7    "Bankruptcy Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

2.1.8    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which XtraLight's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.9    "Bankruptcy Estate" shall mean all of the assets owned by XtraLight.

2.1.10   "Bankruptcy Rules" shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.11   "Bar Date" shall mean August 20, 2018, the deadline established by the Bankruptcy Court in its Order Fixing a Bar Date for Filing Certain Proofs of Claim and Approving Proof of Claim Form and Notice Procedures and in the Notice of Commencement of an Expedited Case under Chapter 11 of the Bankruptcy Code, Fixing Meeting of Creditors and Other Dates no later than which proofs of claim must be filed

except for those claims specified in this plan, which claims shall have the bar dates established herein.

2.1.12 "Cash" shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.13 "Claim" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against XtraLight in existence on or before the Petition Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.1.14 "Class" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.15 "Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, and Class 5 Interests," shall mean the Allowed Claims and Interests so classified in Sections 4.1 through 4.5 respectively.

2.1.16 "Compass" means Compass Bank, N.A., the DIP Lender in this case.

2.1.17 "Confirmation Date" shall mean the date upon which the Order Confirming Plan is entered by the Clerk of the Bankruptcy Court.

2.1.18 "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.19 "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan.

2.1.20 "Creditors" shall mean all creditors of XtraLight holding claims for debts, liabilities, or demands of any character whatsoever, as defined in Section 101(10) of the Bankruptcy Code.

2.1.21 "Debtor" shall mean XtraLight Manufacturing, Ltd..

2.1.22 "DIP Lender" shall mean Compass.

2.1.23 "DIP Revolving Credit Facility" shall mean the post-petition financing provided by Compass as authorized by the Bankruptcy Court's order at Docket Nos. 106 and 115.

2.1.24 "Disbursing Agent" shall mean Reorganized XtraLight or any party designated by XtraLight Manufacturing, Ltd. to act as disbursing agent.

2.1.25 "Disclosure Statement" shall mean the written document filed by XtraLight in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.26 "Disputed Claim" shall mean that portion (including, where appropriate, the whole) of any Claim that (a) is listed in XtraLight's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in XtraLight's schedules of liabilities and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; (c) is not listed in a XtraLight's schedules of liabilities, but as to which a proof of claim has been filed with the Bankruptcy Court; or (d) as to which an objection to a proof of claim has been filed and has not become an Allowed Claim.

2.1.27 "Effective Date" shall mean the date when the Exit Facility has been provided and finalized and which will occur only after the Confirmation Order becomes a Final Order and the Bankruptcy Court closes or administratively closes the Bankruptcy Case.

2.1.28 "Equity Interest" means any ownership interest or shares in XtraLight whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

2.1.29 "Executory Contract(s)" shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of XtraLight within the meaning of Section 365 of the Bankruptcy Code.

2.1.30 "Exit Facility" shall mean the financing provided to XtraLight by TCB, including the purchase of DIP Revolving Credit Facility by TCB, as well as any additional funding provided to Reorganized XtraLight.

2.1.31 "Exit Facility Documents" shall mean any and all documents TCB will require XtraLight or Reorganized XtraLight to execute to consummate the Exit Facility.

2.1.32 Final Order" shall mean an Order of the Bankruptcy Court which, not having been stayed, and the time to appeal from which, or to seek review or certiorari or rehearing, has expired and such Order has become conclusive upon all matters adjudicated thereby, and in full force and effect.

2.1.33 "General Unsecured Claim" shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which XtraLight has an interest or which is not subject to setoff under Section 553 of the

Bankruptcy Code or (ii) a Claim that is secured in one of the foregoing manners to the extent the amount of the Claim exceeds the value of the property securing the Claim.

2.1.34 "Government Bar Date" shall mean October 8, 2018 the deadline established by the Bankruptcy Court in its Order Shortening Governmental Claims Bar Date.

2.1.35  "Holder" shall mean the owner or holder of any Claim or Interest.

2.1.36  "Interest" shall mean an interest or equity interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.37 "Insider" shall have that meaning defined by Section 101(31) of the Bankruptcy Code.

2.1.38 "Officer" shall mean Jerry Caroom, majority limited partner of Reorganized XtraLight.

2.1.39 "Order Confirming Plan" shall mean the Final Order of the Bankruptcy Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to an entry of an Order of Confirmation.

2.1.40 "Petition Date" shall mean April 11, 2018 or the date of filing of XtraLight's Chapter 11 Bankruptcy Case No. 18-31857.

2.1.41  "Plan" shall mean this XtraLight's Plan of Reorganization in its present form, or as it may be amended or supplemented from time to time.

2.1.42  "Priority Claim" shall mean any Claim that is defined in Section 507(a)(2)-(8) of the Bankruptcy Code.

2.1.43  "Pro Rata" shall mean the proportion that the amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.44  "Reorganized XtraLight" shall mean XtraLight after the entry of Order Confirming Plan.

2.1.45  "Secured Claim" shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which XtraLight has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value

(determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in XtraLight's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.46   "Substantial Consummation" shall occur on the date Texas Compass Bank purchases the Compass debt and/or remits payment to Compass.

2.1.47   "TCB" shall mean Texas Capital Bank, N.A.

2.1.48   "XtraLight" shall mean XtraLight Manufacturing, Ltd., Debtor herein.

Section 2.2    <u>Interpretation</u>.   Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time.  The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan . Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender.  All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

Section 2.3    <u>Application of Definitions and Rules of Construction Contained in the Bankruptcy Code</u>.  Words and terms defined in the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

Section 2.4    <u>Other Terms</u>.   The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**ARTICLE III**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

Section 3.1    <u>Administrative Claims Bar Date</u>.  Any holder of an Administrative Claim against XtraLight, except for expenses incurred in the ordinary course of operating XtraLight's business, Claims of governmental units as provided in Section 503(b)(1)(D) of the Bankruptcy Code, and the Class 1 Administrative Claim of Compass., shall file proof of such Claim or application for payment of such Administrative Claim on or within sixty (60) days after the Confirmation Date, with actual service upon counsel for XtraLight or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices.  To the extent, if any, post-petition taxes are due to the Comptroller on or before the Effective Date, they shall be paid in full on the Effective Date in accordance with Section 1129(a)(9)(A).  To the extent,

if any, post-petition taxes have been incurred by XtraLight but are not yet due as of the Effective Date, those taxes shall be paid when due under and in accordance with state law.

Section 3.2    <u>Payment of Non-Tax Administrative Expense Claims</u>.  Each Holder of an unpaid Allowed Non-Tax Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

Section 3.3    <u>Payment of Post-Petition-Tax Administrative Expense Claims</u>.    Each Holder of an unpaid Allowed Administrative Claim for post-petition taxes shall be paid in Cash in full on the later of the statutory due date under applicable law or within five (5) days after the Effective Date, unless the Holder of such Claim agrees to a different treatment.

Section 3.4    <u>Payment of Non-Tax Priority Claims</u>.   Each Holder of an unpaid Allowed Non-Tax Priority Claim, if any, shall be paid in Cash on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

Section 3.5    <u>Payment of Unsecured Priority Tax Claims</u>.  Allowed Priority Tax Claims, if any, shall be paid in Cash within thirty (30) days following the Effective Date.  In computing the present value of such Claims, the interest rate applied shall be the interest rate, which is currently 5.50%, as determined by Texas Tax Code § 111.060(b) from the Petition Date until paid.

Section 3.6    <u>Payment of United States Trustee Fees Incurred Prior to Confirmation</u>.  All fees incurred pursuant to 28 U.S.C. § 1930(a)(6) for time periods prior to entry of Order Confirming Plan shall be paid by XtraLight on or before the Effective Date.

Section 3.7    <u>Payment of United States Trustee Fees Subsequent to Confirmation</u>. Reorganized XtraLight shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) entry of Order Confirming Plan. After confirmation, Reorganized XtraLight shall file with the Bankruptcy Court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to XtraLight by the United States Trustee.

Section 3.8    <u>Payment to Professionals</u>.    All payments to non-ordinary course professionals for actual, necessary services and costs advanced in behalf of the bankruptcy up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of Bankruptcy Code Section 330.  Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of Reorganized XtraLight.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below.  The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

Section 4.1 **Class 1.  Allowed Administrative Claim of Compass.**

4.1.1 <u>Classification</u>.  Class 1 consists of the Allowed Administrative Claim of Compass Bank on the DIP Revolving Credit Facility and secured by substantially all of XtraLight's pre-petition and post-petition assets.

4.1.2 <u>Treatment</u>.  The Allowed Class 1 Claim shall be purchased by TCB in accordance with the Exit Facility.  After TCB's purchase of the Class 1 Claim, all liens, security interests, and rights of Compass under its pre-Petition Date loan documents and the DIP Revolving Credit Facility, and/or applicable law will be terminated.

4.1.3 <u>Impairment</u>.  The Class 1 Claim is unimpaired.

Section 4.2 **Class 2.  Allowed Claims of Boston Litigation Plaintiffs.**

4.2.1 <u>Classification</u>.  Class 2 consists of Allowed Claims of Boston Litigation Plaintiffs.

4.2.2 <u>Treatment</u>.  The Holders of the Allowed Class 2 Claim will receive a total of $410,000 under the Plan as payment in full of their respective claims payable as follows:  $300,000 shall be paid upon the Effective Date of the Plan, with the funds remitted to Plaintiffs' counsel for distribution to Plaintiffs. Thereafter, XtraLight shall pay of $55,000 within 6 months of the Effective Date and a final payment of $55,000 within 12 months of the Effective Date to Plaintiffs, with the funds remitted to Plaintiffs' counsel for distribution to Plaintiffs.

4.2.3 <u>Impairment</u>.  Class 2 Claims are unimpaired.

Section 4.3 **Class 3.  Allowed General Unsecured Claims.**

4.3.1 <u>Classification</u>.  Class 3 consists of Allowed General Unsecured Claims, excluding any Class 4 Claim.

4.3.2 <u>Treatment</u>.  Except to the extent that the holder of an Allowed General Unsecured Claim and XtraLight agree to different treatment, the holders of each Allowed

Class 3 Claim shall receive 100% of their claim payable within 30 days of the Effective Date of the Plan..

    4.3.3   <u>Impairment</u>.  Class 3 Claims are unimpaired.

**Section 4.4**    **<u>Class 4.  Allowed General Unsecured Claims of Affiliates</u>.**

    4.4.1   <u>Classification</u>:  Class 4 consists of the Allowed General Unsecured Claims of Affiliates and Insiders.

    4.4.2   <u>Treatment</u>:  Except to the extent that the holder of an Allowed General Unsecured Affiliate Claim and XtraLight agree to different treatment, the holders of Allowed Class 4 Claims shall be permitted to offset any amount due to XtraLight.  The remaining balance, if any, shall be paid on a Pro Rata basis over a period of three (3) years only after payment in full of all Allowed Class 1, Class 2, and Class 3 Claims.

    4.4.3   <u>Impairment</u>.  The Class 4 Claims are impaired but consent to the treatment.

**Section 4.5**    **<u>Class 5.  Allowed Interests of Equity Holders.</u>**

    4.5.1   <u>Classification</u>.  Class 5 consists of the Allowed Equity Interests in XtraLight.

    4.5.2   <u>Treatment</u>.  The Holders of Class 5 Equity Interests shall retain the Equity Interests held on the date of the filing of the bankruptcy case, with the prohibition of payment of dividends until Classes 1, 2, 3, and 4 are paid as provided for herein.

    4.5.3   <u>Impairment</u>.  The Class 5 Interests are unimpaired.

**ARTICLE V**
**VOTING OF CLAIMS AND INTERESTS**

Allowed Class 1, Class 2 and Class 3 are unimpaired under the Plan.  Accordingly they are conclusively presumed to have accepted the Plan under Bankruptcy Code Section 1126(g), and therefore, are not entitled to vote to accept or reject the Plan. Allowed Class 4 Claims and Class 5 Interest are impaired under the Plan and are entitled to vote to accept or reject the Plan.

**ARTICLE VI**
**MEANS FOR EXECUTION OF PLAN**

Section 6.1   <u>Vesting of Property of the Estate in Reorganized XtraLight</u>.  On the Effective Date of the Plan, all property of XtraLight and of its Estate shall vest in Reorganized XtraLight free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of the Plan or the Exit Facility Documents.

Section 6.2     Continuation of Business Operations.   From and after the Effective Date of the Plan, Reorganized XtraLight shall be authorized to continue its normal business operations. Reorganized XtraLight shall enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.  Source of funds for Payments due on the Effective Date.  Funds received by Reorganized XtraLight through the Exit Facility, as well as current cash flow derived from operations, will be used to fund payments and pay Allowed Claims as required by the Plan.

Section 6.4     Officers of Reorganized XtraLight.    The Officers of XtraLight are authorized to continue as Officers of Reorganized XtraLight from and after the Effective Date of the Plan.

Section 6.5     Disbursing Agent.    Reorganized XtraLight shall act as the Disbursing Agent.  If Reorganized XtraLight chooses not to act as the Disbursing Agent, then it shall designate a substitute.

Section 6.6     Exclusive Rights and Duties of the Disbursing Agent.    The duties of the Disbursing Agent shall be as follows:

6.6.1     Distribution to Creditors with Administrative Claims.   In accordance with Article III of the Plan, the Disbursing Agent shall pay the Administrative and Priority Claims at it discretion either from Cash on hand or from the  proceeds of the Exit Facility.

6.6.2     Distributions to Creditors with Allowed Claims.   The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article IV of the Plan.

Section 6.7     Powers of the Disbursing Agent.    The Disbursing Agent shall have full power and authority to do the following:

6.7.1     Make disbursements to Administrative and Priority Creditors in accordance with Article III and other Creditors in accordance with Article IV of the Plan.

6.7.2     File all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

6.7.3     Take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

6.7.4     Employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase

insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.7.5   Suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

Section 6.8   Presumption of Disbursing Agent's Authority.   In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

Section 6.9   Limitation on Disbursing Agent's Liability.

6.9.1   Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.9.2   The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

Section 6.10   Delivery of Distributions.   Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known

addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

Section 6.11    Time Bar for Cash Payments.    Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof.   Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.   Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.   After such date, all Claims in respect of void checks shall be discharged and forever barred.

Section 6.12    Unclaimed Property.    If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account.   If the Person entitled to any such distributions is located within six (6) months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.   If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to Reorganized XtraLight and such Person shall have waived and forfeited its right to such distributions. Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate such Person.   It is the obligation of each Person claiming rights under the Plan to keep the Disbursing Agent advised of current address by sending written notice of any changes to the Disbursing Agent.

Section 6.13    Minimum Payment.    The minimum amount of any distribution shall be $25. If a payment anticipated by the Plan is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by Reorganized XtraLight.

Section 6.14    Fractional Dollars.    Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim.   Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

Section 6.15    Distribution Dates.    Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty

or interest, on the next Business Day. The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

Section 6.16   Orders Respecting Claims Distribution.   After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

Section 6.17   Agreements, Instruments and Documents.   All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.   Reorganized XtraLight shall have a power of attorney, coupled with an interest, to execute and deliver any Plan Document to the extent that counterparty to such document fails to execute and deliver any document required to effectuate the Plan following 20 days written notice and request to such counterparty.

Section 6.18   Further Authorization.   Reorganized XtraLight shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.   The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE VII
## CRAMDOWN AND CLAIMS ALLOWANCE

Section 7.1   Cramdown.   Subject to the absolute priority rule discussed in Section 7.2 below, in the event any Class rejects the Plan, XtraLight will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN XTRALIGHT WILL SEEK TO INVOKE THE PROVISIONS OF SECTION 1129(B) OF THE BANKRUPTCY CODE AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES. THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

Section 7.2   Absolute Priority Rule.   Section 1129(b)(2)(B)(ii) controls the payment of senior and junior classes of claims or interests in the event that all of the applicable requirements of Section 1129(a), other than paragraph (8), are met with respect to a plan.   In the event that any impaired class (other than an "insider", as defined in 11 U.S.C. Section 101(31)) rejects the Plan, the equity interest holders (or other interests junior to unsecured creditors) may only retain their

interest in Reorganized XtraLight in return for new value infused into Reorganized XtraLight in accordance with *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 445 (1999). The assessment of the required "new value" for the equity interest holders (or other interests junior to unsecured creditors) is to be made in the event that any impaired class (that is not an "insider") rejects the Plan.

XtraLight believes that the Plan meets the "fair and equitable" test and does not discriminate unfairly with respect to secured class of creditors or interest holders.  Under the terms of this Plan, the Officers of XtraLight shall retain their interest in Reorganized XtraLight.  The retention of this interest may prevent XtraLight from seeking relief under 1129(b)(2)(B). Unless all impaired classes vote for XtraLight's plan, the retention of this interest will prevent XtraLight's plan from being confirmed and this case will be converted to chapter 7.

Section 7.3      Allowance of Claims under the Plan.   Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against XtraLight, if the parties cannot agree upon such allowance.  It is expected that XtraLight and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

Section 7.4      Objection Deadline.   As soon as practicable, but in no event later than sixty (60) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

Section 7.5      Prosecution of Objections.   On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim and Reserved Avoidance Actions may be made by Reorganized XtraLight and/or Disbursing Agent.

## ARTICLE VIII
## DEFAULT

Section 8.1      Events of Default.    If any of the following events occur, Reorganized XtraLight will be in breach of this Plan ("**Default**"):

8.1.1    Failure to pay any amount due under the Plan when due; or

8.1.2    Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

Section 8.2      Remedies.   Should Reorganized XtraLight be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter Reorganized XtraLight fails to

remedy or resolve such breach within fourteen (14) calendar days from the date of the written notice, violation or default, then any Creditor owed a distribution, which Reorganized XtraLight fails to make when due, at its option, may declare that Reorganized XtraLight is in default of this Plan and the creditor may (a) enforce its claim(s), (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court.

## ARTICLE IX
## EXECUTORY CONTRACTS AND LEASES

Section 9.1     Assumption.   XtraLight hereby assumes the executory contracts and leases, and any executory contracts and leases previously assumed pursuant to bankruptcy court order, and rejects those set forth in **Exhibit A.**  For avoidance of doubt, all insurance policies with Travelers and all licenses issued to XtraLight by governmental authorities are assumed.

Further, notwithstanding any other provision of the Plan or the Confirmation Order, on the Effective Date, (1) all of the Debtor's obligations and commitments to Hartford[1] (the "Surety"), including, without limitation, obligations under any prepetition or postpetition surety bonds issued by the Surety on behalf of the Debtor or its non-Debtor affiliates (the "Surety Bonds") or any indemnity agreements, and/or any related agreements, contracts or documents executed by the Debtor, any of the Debtor's non-Debtor affiliates, or any other indemnitor of the Surety (collectively, the "Surety Indemnity Agreements"), under the Surety Bond Program (as defined in the *Order Granting Motion of the Debtor Pursuant to 11 U.S.C. §§ 105 and 363 for Authorization to Continue to Maintain its Surety Bond Program* [Docket No. 89]), shall be deemed assumed and reaffirmed, with the Surety's consent, and shall be continuing obligations of the Reorganized Debtor and unaffected by the entry of the Confirmation Order, regardless of whether such Surety Bonds and Surety Indemnity Agreements were executed prior to or after the Petition Date; (2) all bonded obligations of the Debtor for which such Surety Bonds secure performance by the Debtor shall be assumed by the Reorganized Debtor, shall be unimpaired by the Plan or Confirmation Order, and shall not be released, discharged, precluded, or enjoined by the Plan or the Confirmation Order and shall remain obligations of the applicable Reorganized Debtor as of the Effective Date; (3) to the extent any of the obligations and commitments set forth in this provision are secured by letters of credit or any other collateral, such letters of credit and any other collateral shall remain in place to secure the obligations of any of the indemnitors of the Surety regardless of when the obligations arise, and the Surety's rights and priorities in such collateral will remain unimpaired under the Plan.  In the Surety's discretion, it may elect to issue a name-change rider to any such Surety Bond or to issue new surety bonds naming the applicable Reorganized Debtor as principal. Notwithstanding any failure to object to any proposed cure amounts of Cure Claims of any applicable Surety, on the Effective Date, all premiums and loss adjustment expenses, including

---

[1] **"Hartford"** shall include, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of said companies current or future, direct or indirect insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-Surety, reinsurers, or any other person or entity underwriting any bond at Hartford's request.

attorneys' fees, that are due to the Surety as of the Effective Date shall be paid to the Surety.  Solely for purposes of the administration of the bankruptcy estate, all associated Proofs of Claim on account of or in respect of any agreement with the Surety covered by this paragraph shall be deemed withdrawn automatically and without further notice or action by the Bankruptcy Court and shall be expunged from the claims register.

Section 9.2     Rejection Claims.    Any Claims arising from rejection of an executory contract or lease must be filed on or before twenty (20) days from the Confirmation Date. Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be treated as Class 3 General Unsecured Claims.

## ARTICLE X
## MODIFICATION OF THE PLAN

Section 10.1     Modification.    XtraLight may propose amendments and modifications of this Plan prior to the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, XtraLight may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, XtraLight may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure.  With respect to all proposed modifications to the Plan both before and after confirmation, XtraLight shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE XI
## CONDITIONS PRECEDENT

Section 11.1     Conditions to Confirmation.    Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to XtraLight shall have been satisfied. In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

Section 11.2   Waiver and Nonfulfillment of Conditions to Confirmation.   Nonfulfillment of any condition to confirmation of the Plan may be waived only by XtraLight.   In the event XtraLight determines that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in its discretion, be waived, XtraLight may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

Section 11.3   Confirmation Order Provisions for Pre-Effective Date Actions.   The Confirmation Order shall empower and authorize XtraLight to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

Section 11.4   Conditions to the Effective Date.   The following are conditions precedent to the effectiveness of the Plan: (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) the Bankruptcy Court will have entered an order administratively closing the Bankruptcy Case; (iii) TCB purchases the DIP Revolving Credit Facility and Reorganized XtraLight enters into the Exit Facility; (iv) XtraLight does not withdraw the Plan at any time prior to the Effective Date; and (v) XtraLight shall have sufficient cash on hand to make the payments and distributions required under the Plan.

Section 11.5   Waiver and Nonfulfillment of Conditions to Effective Date. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by XtraLight.   If XtraLight determines that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in its sole discretion, be waived, XtraLight may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE XII
## JURISDICTION OF THE BANKRUPTCY COURT

Section 12.1   Retention of Bankruptcy Court Jurisdiction.   Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1  To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2  To estimate, liquidate, classify or determine any Claim against XtraLight, including claims for compensation or reimbursement;

12.1.3  To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan

and to protect XtraLight and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4  To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6  To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7  To adjudicate all Claims to any lien on any of XtraLight's assets;

12.1.8  To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) Sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of XtraLight, whether before or after confirmation, including to determine any and all tax effects of the Plan;

12.1.9  To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10 To determine all questions and disputes regarding title to assets and shares of XtraLight, Reorganized XtraLight or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11 To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12 To fix the value of collateral in connection with determining Claims;

12.1.13 To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate; and

12.1.14 To, even after entry of a final decree, hear any cases enforcing Bankruptcy Code Section 525.

Section 12.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII
## EFFECT OF CONFIRMATION

Section 13.1    Binding Effect.    As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind XtraLight, any entity acquiring property under the Plan and any Creditor, Equity Holder of XtraLight, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority.   After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.   The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

Section 13.2    Satisfaction of Claims and Interests.   Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all Interests.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the settlement of the Class 2 Claims, shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have on account of such Allowed Claim or Interest.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Class 2 Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement, including the Class 2 Creditor settlement, is in the best interests of the Debtor, its estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

Section 13.3    Vesting of Property.   Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in Reorganized XtraLight free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders. Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the XtraLight Bankruptcy Estate shall vest in Reorganized XtraLight free and clear of all Claims, liens,

and encumbrances.  Moreover, all licenses and permits held by XtraLight shall continue be held by them.

Section 13.4   Discharge.  Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, XtraLight shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.  Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest is Allowed; or (3) the Holder of such Claim or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

Section 13.6   Injunction and Exculpation.  Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.   EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED HEREIN (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO

RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES.  THIS INJUNCTION ALSO PERMITS REORGANIZED XTRALIGHT TO ENFORCE 11 U.S.C. SECTION 525(A) UPON IMPROPER REVOCATION OR RESTRICTION OF LICENSES.

UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTOR AND ITS DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS WILL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THIS PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.

EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE EXCULPATED FIDUCIARIES AND, SOLELY TO THE EXTENT PROVIDED BY SECTION 1125(E) OF THE BANKRUPTCY CODE, THE SECTION 1125(E) PARTIES, SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN (INCLUDING THE PLAN SUPPORT AGREEMENT) OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS; PROVIDED, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT; PROVIDED, FURTHER THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING WITH REGARD TO THE DISTRIBUTIONS OF NEW COMMON STOCK AND NEW WARRANTS (IF ANY) PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT AND SHALL NOT BE LIABLE AT ANY TIME FOR THE VIOLATIONS OF ANY APPLICABLE LAW, RULE, OR

REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

Section 13.7  <u>Preservation of Setoff Rights</u>.  In the event that XtraLight has a Claim of any nature whatsoever against the Holders of Claims, XtraLight may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by XtraLight of any Claim that XtraLight has against the Holder of Claims.

Section 13.8  <u>Releases</u>.  On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, XtraLight, Reorganized XtraLight, and to the maximum extent provided by law, its agents, release and forever discharge all Avoidance Actions (except those related to the claim objection process) and other claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:

13.8.1  Jerry Caroom, Xtra-Light Services, Cay Capital, LLC, their employees, agents, affiliates attorneys and representatives (the "**Insider Released Parties**"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of XtraLight or the Bankruptcy Estate and/or on account of XtraLight's Case shall be released.  The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.  Neither the releases contemplated by this Article XIII, nor any provisions of the Plan, shall release claims against non-debtor third parties.

13.8.2  XtraLight's Professionals, officers, and/or directors shall be released from any and all claims and liabilities other than gross negligence and willful misconduct.

Section 13.9  <u>Guarantors</u>.  Nothing herein shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as XtraLight is current with respect to all of its obligations under this Plan and the Confirmation Order Creditors may not pursue collection of their Claims from any guarantor.  If XtraLight commits an uncured default in its obligations hereunder, then and only then may Creditors seek relief against guarantors.

Section 13.10  <u>Lawsuits</u>.  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against XtraLight and any guarantor except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to XtraLight and/or Reorganized XtraLight.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as

prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by XtraLight or any entity proceeding in the name of or for the benefit of XtraLight against a person shall remain in place only with respect to the claim(s) asserted by XtraLight or such other entity, and shall become property of the Post-Confirmation Reorganized XtraLight to prosecute, settle or dismiss as it sees fit.

Section 13.11 <u>Insurance</u>. Confirmation and consummation of the Plan shall have no effect on insurance policies of XtraLight or Reorganized XtraLight in which XtraLight or any of XtraLight's representatives or agents is or was the insured party; Reorganized XtraLight shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to XtraLight's bankruptcy, the Plan or any provision within the Plan.

Section 13.12 <u>U.S. Trustee Fees</u>. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, including administratively closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

Section 13.13 <u>Term of Stays</u>. Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.1 <u>Corporate Authority</u>. All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of XtraLight, all Interest Holders, and all current directors of XtraLight.

Section 14.2 <u>Documentation</u>. XtraLight, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan. The Bankruptcy Court may determine that the failure of

any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by XtraLight, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

Section 14.3    Integration Clause.    This Plan is a complete, whole, and integrated statement of the binding agreement between XtraLight, Creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parole evidence shall not be admissible in an action regarding this Plan or any of its provisions.

Section 14.4    Primacy of the Plan and Confirmation Order.   To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

Section 14.5    Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan as provided herein so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.   Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

Section 14.6    No Admission.    Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by XtraLight of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which XtraLight may possess against any other party.  If the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of XtraLight's case.

Section 14.7    Bankruptcy Restrictions.    From and after the Effective Date, XtraLight shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines.  The Disbursing Agent may, on behalf of XtraLight, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

Section 14.8   <u>Governing Law</u>.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

Section 14.9   <u>Closing of Case</u>.   As soon as XtraLight has either obtained substantial consummation or otherwise performed its obligations under the Plan Reorganized XtraLight shall seek the entry of an Order of the Court closing this case.

Section 14.10   <u>Successors and Assigns</u>.   The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

Section 14.11   <u>Notices</u>.   All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

>XtraLight Manufacturing, Ltd.
>8812 Frey Rd.
>Houston, TX 77034
>Attn: Jerry Caroom
>
>with copies to:
>Deirdre Carey Brown
>Hoover Slovacek LLP
>Galleria Tower II
>5051 Westheimer, Suite 1200
>Houston, Texas  77056

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by XtraLight.

Section 14.12   <u>Validity and Enforceability</u>.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

Section 14.13  <u>Plan Supplement</u>.  Any and all exhibits or schedules not filed with the Plan shall be contained in a Plan Supplement filed prior to the Confirmation Hearing.

Respectfully submitted this 29th day of August, 2018

XTRALIGHT MANUFACTURING, LTD.

    /s/ Jerry Caroom, with permission by DCB

By: _____
      Jerry Caroom
      President and Manager of XLM Management, LLC
      GP of the Debtor

HOOVER SLOVACEK, LLP
Deirdre Carey Brown
State Bar No. 24049116
brown@hooverslovacek.com
Melissa A. Haselden
State Bar No. 00794778
haselden@hooverslovacek.com
Vianey Garza
State Bar No. 24083057
garza@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
713-977-8686

ATTORNEYS FOR DEBTOR

# PLAN EXHIBIT A

## EXECUTORY CONTRACTS TO BE ASSUMED AND PROPOSED CURE AMOUNTS

**(To be supplemented prior to the confirmation hearing)**

**<u>EXHIBIT B</u>**

**CLAIMS ANALYSIS**

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULLED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | ALIEF ISD TAX ASSESSOR/COLLECTOR | CU | Secured | 0.00 | 12 | 6/7/2018 | | 237.59 | 237.59 | 2018 Accrued Personal Property Taxes - Inventory maintained at GI Circuits, 10850 W Wilcrest Dr., Houston, Texas |
| 2.2 | AMADA AMERICA INC | D | Secured | 0.00 | | | | | 0.00 | UCC LIEN - One  Amada NC Laser Cutting Machine, Model LCG3015AJ-3K Paid in Full. Lien has not been terminated. |
| 2.3 | BBVA COMPASS BANK | | Secured | 4,300,000.00 | | | | | 4,300,000.00 | Cross Collateralized Loan - Assets of Debtor |
| 2.4 | BBVA COMPASS BANK | | Secured | 481,412.00 | | | | | 481,412.00 | Equipment Note E - Laser Cutter |
| 2.5 | BBVA COMPASS BANK | | Secured | 250,000.00 | | | | | 250,000.00 | Equipment Note D - Manufacturing Equipment |
| | CITY OF HOUSTON | | Secured | | 13 | 8/7/2018 | SECURED | 16,091.05 | 16,091.05 | Estimated 2014 Personal Property Taxes |
| 2.6 | CRESTRON ELECTRONICS INC | CUD | Secured | 0.00 | | | | | 0.00 | UCC Lien - Electronic goods and merchandise bearing Crestron trademark |
| 2.7 | HARRIS COUNTY, ET AL | CU | Secured | 22,000.00 | 2 | 4/24/2018 | SECURED | 18,439.79 | 18,439.79 | 2018 Accrued Real (Leasehold) and Personal Property Taxes - Real and personal property located at 8812 Frey Road, Houston, Texas.  *All local taxes combined |
| 2.8 | ORBIAN FINANCIAL SERVICES II LLC | CU | Secured | Unk | | | | | Unk | UCC LIEN - Accounts or  A/R owed to Debtor by Siemens Industry Inc. |
| 2.9 | PASADENA ISD TAX ASSESSOR/COLLECTOR | CU | Secured | 0.00 | | | | | 0.00 | 2018 Accrued Real (Leasehold) and Personal Property Taxes - Real and personal property located at 8812 Frey Road, Houston, Texas. *See Item 2.7 |
| | | | TOTAL: | 5,053,412.00 | | | | | 5,066,180.43 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | CU | | Unknown | | | | | | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.1 | A & C PLASTICS | | Unsecured | 5,607.00 | 3 | 4/27/2018 | Unsecured | 6,920.00 | 6,920.00 | Includes $1,313 on April 11 Purchase Order. |
| 3.2 | A.A.G. STUCCHI NORTH AMERICA | | Unsecured | 2,652.00 | | | | | 2,652.00 | |
| 3.4 | ABATIX CORP. | | Unsecured | 0.00 | | | | | 0.00 | $297.73 paid in full prior to filing. |
| 3.5 | AETCH LLC | | Unsecured | 13,200.00 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.6 | ALKOTE INC. | | Unsecured | 2,445.04 | | | | | 2,445.04 | |
| 3.7 | ALL AMERICAN GASKET | | Unsecured | 2,800.19 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.8 | ALLIED ELECTRONICS INC. | | Unsecured | 143.99 | 8 | 5/21/2018 | Unsecured | 184.46 | 184.46 | |
| 3.9 | ALMECO USA | | Unsecured | 41,527.76 | | | | | 41,527.76 | |
| 3.10 | ALP | | Unsecured | 1,730.70 | | | | | 1,730.70 | |
| 3.11 | AMADA AMERICA INC | | Unsecured | 301.83 | | | | | 301.83 | |
| 3.13 | ANDY'S EXPRESS CO. | | Unsecured | 262.93 | | | | | 262.93 | |
| 3.15 | ARIES FREIGHT SYSTEMS | | Unsecured | 17,672.15 | | | | | 17,672.15 | |
| 3.16 | ARROW ELECTRONICS | | Unsecured | 11,010.00 | 1 | 4/18/2018 | Unsecured | 25,946.53 | 25,946.53 | 4/17/18 Reclamation Claim for $15,410.92. |
| | ATMOS ENERGY CORP | | | | 11 | 5/30/2018 | Unsecured | 53.57 | 53.57 | |
| 3.17 | BA LIGHTING LLC | | Unsecured | 1,649.89 | | | | | 1,649.89 | |
| 3.18 | BADGER METER | | Unsecured | 2,652.87 | | | | | 2,652.87 | |
| 3.19 | BEST LIGHTING PRODUCTS | | Unsecured | 6,989.72 | 10 | 5/29/2018 | Unsecured | 6,956.11 | 6,956.11 | |
| 3.20 | BLACKLAND PRECISION HARDWARE | | Unsecured | 3,546.42 | | | | | 3,546.42 | |
| 3.21 | BOYD'S CAR CARE | | Unsecured | 1,943.68 | | | | | 1,943.68 | |
| 3.22 | BR WELDING SUPPLY, LLC | | Unsecured | 166.67 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.23 | BRIGHT VIEW TECHNOLOGIES CORP | | Unsecured | 233.13 | | | | | 233.13 | |
| 3.24 | BRIOS MEDIA | | Unsecured | 10,000.00 | | | | | 10,000.00 | |
| 3.25 | CASNER & EDWARDS | | Unsecured | 59,143.02 | 4 | 4/27/2018 | Unsecured | 66,698.96 | 66,698.96 | Includes $207.64 in interest; POC 14 amends POC #4, which includes post-petition invoice totaling $3,998.45. |
| 3.27 | CERASIS INC | | Unsecured | 142.69 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.29 | CHRIS LYON | | Unsecured | 112.00 | | | | | 112.00 | |
| 3.31 | CITY OF HOUSTON ARA | | Unsecured | 142.53 | | | | | 142.53 | |
| 3.32 | CL ALLOYS | | Unsecured | 1,112.40 | | | | | 1,112.40 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.33 | COBURN'S WHOLESALE DISTRIBUTORS | | Unsecured | 15,334.84 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.34 | CONSOLIDATED METAL PRODUCTS | | Unsecured | 14,369.70 | | | | | 14,369.70 | |
| 3.35 | CONSOLIDATED PIPE AND SUPPLY | | Unsecured | 9,198.67 | | | | | 4,385.93 | Claim was paid $4,812.74 pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.36 | CORE & MAIN | | Unsecured | 3,544.70 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.37 | CORPORATE UNICORN LIMITED | | Unsecured | 53,874.80 | | | | | 53,874.80 | |
| 3.38 | COUGAR PALLET INC | | Unsecured | 4,900.00 | | | | | 4,900.00 | |
| 3.39 | CPI ONE POINT | | Unsecured | 156.75 | | | | | 156.75 | |
| 3.40 | CRITICAL COMPONENTS | | Unsecured | 1,055.83 | | | | | 1,055.83 | |
| 3.41 | CRYSTAL SPRINGS | | Unsecured | 57.94 | | | | | 57.94 | |
| 3.42 | CUSTOM ALUMINUM PRODUCTS,INC. | | Unsecured | 0.00 | | | | | 0.00 | $8,699.87 was paid in full prior to the filing. |
| 3.43 | D. B. ROBERTS | | Unsecured | 1,386.92 | 9 | 5/25/2018 | Unsecured | 1,667.88 | 1,667.88 | Includes $280.96 of potential post-petition invoice amounts, dated 4/18 and 5/9/18. |
| 3.45 | DAYLIGHT TRANSPORT, LLC. | | Unsecured | 1,739.82 | | | | | 1,739.82 | |
| 3.46 | DEL'S PLATING WORKS | | Unsecured | 272.00 | | | | | 272.00 | |
| 3.48 | DHL EXPRESS - USA | | Unsecured | 71.09 | | | | | 71.09 | |
| 3.50 | DIGI-KEY CORPORATION | | Unsecured | 4,527.69 | | | | | 4,527.69 | |
| 3.51 | DOW GOLUB REMELS | | Unsecured | 1,610.00 | | | | | 1,610.00 | |
| 3.53 | ELASTOTECH SOUTHWEST INC | | Unsecured | 108.12 | | | | | 108.12 | |
| 3.54 | ENCAPSULITE | | Unsecured | 271.00 | | | | | 271.00 | |
| 3.55 | ENGINEERED PRODUCTS CO. | | Unsecured | 0.00 | | | | | 0.00 | Was ($21.58) - was incorrectly scheduled as $21.58. |
| 3.56 | ESPEN TECHNOLOGY | | Unsecured | 83,136.50 | | | | | 83,136.50 | |
| 3.57 | ESQUIRE WIRE INC. | | Unsecured | 874.02 | | | | | 874.02 | |
| 3.58 | EXCERGY | | Unsecured | 8,750.00 | | | | | 8,750.00 | |
| 3.59 | EXPEDITED LOGISTICS AND | | Unsecured | 520.00 | | | | | 520.00 | |
| 3.60 | FASTENAL | | Unsecured | 496.73 | | | | | 496.73 | |
| 3.61 | FEDEX BANKRUPTCY DEPARTMENT | | Unsecured | 1,174.68 | | | | | 1,174.68 | |
| 3.62 | FEDEX FREIGHT | | Unsecured | 165.31 | | | | | 165.31 | |
| 3.63 | FERGUSON ENTERPRISES | | Unsecured | 0.00 | | | | | 0.00 | $74.10 was paid in full prior to filing. |
| 3.64 | FERGUSON WATERWORKS | | Unsecured | 2,556.20 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.65 | FERGUSON WOLSELEY | | Unsecured | 27.20 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.66 | FULHAM CO., INC. | | Unsecured | 8,076.60 | | | | | 8,076.60 | |
| 3.67 | FUSECO | | Unsecured | 35.64 | | | | | 35.64 | |
| 3.68 | FUTURE ELECTRONICS | | Unsecured | 210,525.03 | 15 | 7/6/2018 | Unsecured | 212,236.65 | 212,236.65 | |
| 3.69 | GATOR GRAPHICS | | Unsecured | 102.30 | | | | | 102.30 | |
| 3.70 | GE LIGHTING | | Unsecured | 10,905.20 | | | | | 10,905.20 | |
| 3.71 | GE LIGHTING SOLUTIONS LLC | | Unsecured | 57.60 | | | | | 57.60 | |
| 3.72 | GI CIRCUITS, INC. | | Unsecured | 61,459.08 | | | | | 61,459.08 | |
| 3.73 | GRAINGER | | Unsecured | 115.01 | | | | | 115.01 | |
| 3.74 | GREEN'S BLUE FLAME GAS CO, INC | | Unsecured | 108.28 | | | | | 108.28 | |
| 3.75 | GRIPPLE | | Unsecured | 2,715.69 | | | | | 2,715.69 | |
| 3.76 | GULF SOUTH CONTRACTING | | Unsecured | 10,700.00 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.78 | HOME DEPOT CREDIT SERVICES | | Unsecured | 485.03 | | | | | 485.03 | |
| 3.79 | ICON SYSTEMS | | Unsecured | 4,539.75 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.8 | IDEAL INDUSTRIES, INC. | | Unsecured | 5,068.86 | | | | | 5,068.86 | |
| 3.84 | INDUSTRIAL GLASS TECHNOLOGIES | | Unsecured | 1,448.55 | | | | | 1,448.55 | |
| 3.85 | INTEGRITY PLUMBING | | Unsecured | 18,620.00 | | | | | 18,620.00 | |
| 3.86 | INTERTEK TESTING SERVICES | | Unsecured | 58,000.00 | | | | | 58,000.00 | |
| 3.87 | INVENTRONICS USA, INC. | | Unsecured | 54,346.37 | 16 | 7/9/2018 | Unsecured | 54,876.87 | 54,876.87 | |
| 3.88 | IOTA ENGINEERING CO. | | Unsecured | 48.00 | | | | | 48.00 | |
| 3.89 | IRON MOUNTAIN | | Unsecured | 92.69 | | | | | 92.69 | |
| 3.102 | KEELING COMPANY | | Unsecured | 517.68 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.103 | KEELING COMPANY | | Unsecured | 0.00 | | | | | 0.00 | $93,285.12 was paid prior to the filing. |
| 3.104 | KENTWOOD SPRINGS | | Unsecured | 0.00 | | | | | 0.00 | $103.33 was paid in full prior to filing. |
| 3.105 | KLARO SOLUTIONS, INC | | Unsecured | 4,791.35 | | | | | 4,791.35 | |
| 3.107 | LABSPHERE | | Unsecured | 2,917.93 | | | | | 2,917.93 | |
| 3.108 | LEGACY PAPER & PACKAGING | | Unsecured | 883.32 | | | | | 883.32 | |
| 3.109 | LEVITON MFG DEPT #05510 | | Unsecured | 2,823.50 | | | | | 2,823.50 | |
| 3.111 | LUMILEDS LLC | | Unsecured | 635.00 | | | | | 635.00 | |
| 3.112 | LUTRON ELECTRONICS CO., INC. | | Unsecured | 1,599.88 | | | | | 1,599.88 | |
| 3.116 | MAYA INTERNATIONAL | | Unsecured | 2,800.00 | | | | | 2,800.00 | |
| 3.117 | MCMASTER-CARR SUPPLY CO. | | Unsecured | 1,489.34 | 7 | 5/16/2018 | Unsecured | 1,529.16 | 1,529.16 | |
| 3.118 | MG CAPITAL MAINTENANCE | | Unsecured | 50.00 | | | | | 50.00 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.119 | MISUMI USA | | Unsecured | 1,762.80 | | | | | 1,762.80 | |
| 3.120 | MOBILE DEMAND | | Unsecured | 0.00 | | | | | 0.00 | $75 was paid in full prior to filing. |
| 3.121 | MOBILE FASTENERS | | Unsecured | 104.04 | | | | | 104.04 | |
| 3.122 | MOBILE MODULAR PORTABLE STORAGE | | Unsecured | 0.00 | | | | | 0.00 | |
| 3.123 | MOUSER ELECTRONICS | | Unsecured | 550.00 | | | | | 550.00 | |
| 3.124 | MSC INDUSTRIAL SUPPLY CO. INC. | | Unsecured | 0.00 | | | | | 0.00 | $302.03 was paid in full prior to filing. |
| 3.125 | MUNIBILLING | | Unsecured | 366.27 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.126 | MUSTANG DELIVERY SERVICES | | Unsecured | 1,004.17 | | | | | 1,004.17 | |
| 3.127 | N J MALIN & ASSOCIATES LLC | | Unsecured | 2,929.22 | | | | | 2,929.22 | |
| 3.129 | NEWARK/element14 | | Unsecured | 398.81 | | | | | 398.81 | |
| 3.130 | NTS COMMUNICATIONS | | Unsecured | 144.98 | | | | | 144.98 | |
| 3.131 | OFFICE DEPOT CREDIT PLAN | | Unsecured | 281.65 | | | | | 281.65 | |
| 3.132 | PAC-VAN | | Unsecured | 139.44 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.133 | PACIFIC DIE CAST | | Unsecured | 0.00 | | | | | 0.00 | $78.22 was paid in full prior to filing. |
| 3.134 | PEXCO, LLC - PHILADELPHIA | | Unsecured | 4,793.40 | | | | | 4,793.40 | |
| 3.135 | PHILIPS LIGHTING | | Unsecured | 0.00 | | | | | 0.00 | |
| 3.136 | PHILIPS LIGHTING ELECTRONICS | | Unsecured | 15,402.95 | | | | | 15,402.95 | |
| 3.137 | PHILIPS LIGHTING ELECTRONICS | | Unsecured | 3,468.00 | | | | | 3,468.00 | |
| 3.138 | PRAXAIR DISTRIBUTION, INC. | | Unsecured | 918.88 | 6 | 5/9/2018 | Unsecured | 4,237.76 | 4,237.76 | Claim includes: $2,400 value of leased cylinders; $517.99 post petition; $400.80 pre petition; and $918.88 A/R balance. |
| 3.139 | PRECISION MULTIPLE CONTROLS | | Unsecured | 370.00 | | | | | 370.00 | |
| 3.140 | PROTO LABS, INC. | | Unsecured | 12,499.00 | | | | | 12,499.00 | |
| 3.141 | PSI INDUSTRIES | | Unsecured | 0.00 | | | | | 0.00 | |
| 3.142 | QUILL CORPORATION | | Unsecured | 92.09 | | | | | 92.09 | |
| 3.143 | R S HUGHES COMPANY | | Unsecured | 2,948.58 | | | | | 2,948.58 | |
| 3.144 | RAY BROWN | | Unsecured | 2,000.00 | | | | | 2,000.00 | |
| 3.145 | RELIANCE METAL CENTER DIV 07 | | Unsecured | 0.00 | | | | | 0.00 | $165 was paid in full prior to filing. |
| 3.146 | REPUBLIC SERVICES | | Unsecured | 340.45 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.147 | REPUBLIC SERVICES #855 | | Unsecured | 1,577.21 | | | | | 1,577.21 | |
| 3.148 | S&S PRINTING | | Unsecured | 1,045.00 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.149 | SANDEE MANUFACTURING | | Unsecured | 7,420.25 | | | | | 7,420.25 | |
| 3.150 | SCIENTIFIC LIGHTING PRODUCTS | | Unsecured | 1,504.85 | | | | | 1,504.85 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.151 | SEALCON | | Unsecured | 774.07 | | | | | 774.07 | |
| 3.152 | SHELL | | Unsecured | 253.36 | | | | | 253.36 | |
| 3.153 | SMART ELECTRIC NORTH AMERICA | | Unsecured | 68,741.96 | | | | | 68,741.96 | |
| 3.154 | SOUTHEASTERN FREIGHT LINES | | Unsecured | 5,113.62 | 17 | 7/26/2018 | Unsecured | 4,953.08 | 4,953.08 | |
| 3.155 | SOUTHERN AMERICAN INSURANCE AGENCY | | Unsecured | 0.00 | | | | | 0.00 | Claim was paid $23,833 pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72). Southern American Insurance had a balance of ($4,496) at the time of the filing. |
| 3.156 | SOUTHERN CONTAINER LTD. | | Unsecured | 1,673.28 | | | | | 1,673.28 | |
| 3.157 | SOUTHERN PIPE & SUPPLY CO., INC. | | Unsecured | 13,091.60 | | | | | 443.43 | Claim was paid $12,648.17 pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.158 | SOUTHERN PRODUCT FINISHING | | Unsecured | 1,741.04 | | | | | 1,741.04 | |
| 3.159 | STRICTLY ELECTRICAL SOLUTIONS, LLC | | Unsecured | 15,000.00 | | | | | 0.00 | Claim was pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.160 | SUPER BRIGHT LEDS INC | | Unsecured | 897.86 | | | | | 897.86 | |
| 3.161 | SUPER ROOTER INC. | | Unsecured | 9,000.00 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.162 | TESSCO | | Unsecured | 3,075.98 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.163 | THE LOCAL GOVERNMENT | | Unsecured | 143.54 | | | | | 143.54 | |
| 3.164 | THE WATTSTOPPER, INC. | | Unsecured | 825.00 | 18 | 8/7/2018 | Unsecured | 888.00 | 888.00 | |
| 3.166 | TIME WARNER CABLE | | Unsecured | 0.00 | | | | | 0.00 | $199.99 was paid prior to filing. |
| 3.168 | TMC TRANSPORTATION | | Unsecured | 2,656.36 | | | | | 2,656.36 | |
| 3.169 | TRUMPF INC | | Unsecured | 3,498.61 | | | | | 3,498.61 | |
| 3.170 | TYLER TECHNOLOGIES | | Unsecured | 26,800.00 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.171 | ULINE | | Unsecured | 328.85 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.172 | UNIVERSAL LIGHTING TECHNOLOGIE | | Unsecured | 492.30 | | | | | 492.30 | |
| 3.173 | UTILITY METALS | | Unsecured | 792.20 | | | | | 792.20 | |
| 3.174 | WAGO CORPORATION | | Unsecured | 7,750.00 | | | | | 7,750.00 | |
| 3.175 | WARRANTY RESERVE CLAIMS | | Unsecured | 0.00 | | | | | 0.00 | |
| 3.176 | WATER ENERGY | | Unsecured | 0.00 | | | | | 0.00 | $18,187 was paid prior to filing. |
| 3.177 | WATER KEY LLC | | Unsecured | 203.22 | | | | | 0.00 | Claim was paid pursuant to Order approving Motion to Pay Material Suppliers with Lien Rights (Doc. #72) |
| 3.178 | WHOLESALE ELECTRIC SUPPLY | | Unsecured | 4,590.70 | | | | | 4,590.70 | |
| 3.18 | WJM POLES | | Unsecured | 180.00 | | | | | 180.00 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SCHEDULED AS SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT, AS AMENDED | CLAIM NUMBER | DATE CLAIM FILED | FILED AS SECURED PRIORITY UNSECURED | CLAIM AMOUNT FILED | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.181 | XTREME GRAPHICS | | Unsecured | 845.53 | | | | | 845.53 | |
| 3.182 | YRC (RDWY) | | Unsecured | 1,023.76 | | | | | 1,023.76 | |
| | | | **TOTAL:** | **1,094,881.68** | | | | | **997,241.78** | |

| CLAIM NUMBER | SCHEDULE NUMBER | CLAIMANT NAME | DATE CLAIM FILED | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT | CLAIM AMOUNT | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|
|  | 3.3 | AARON DANIEL GADD |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.14 | ANTHONY NORMAN |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.28 | CHERYL ROBINSON |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.30 | CHRISTIAN HOWELL |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.44 | DAVID M WENDOWSKI |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.47 | DERRICK DAVIES |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.49 | DIANN STAFFORD |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.52 | DREW TAYLOR FRENETTE |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.77 | HERBERT WILKINSON |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.90 | ISRAEL APONTE |  | CUD | Unsecured | 12,000,000.00 |  |  | WAGE CLAIM LITIGATION - CLAIM AMOUNT IS INCLUSIVE OF ALL CLAIMANTS IN THE LITIGATION. |
|  | 3.91 | JACK ROSE |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.92 | JACYN NORFLEET |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.93 | JAMIL GIMENEZ |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.94 | JAY LEVEY |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.95 | JEREMY A GONSALVES |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.98 | JOHN MARCO RAMOS |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |
|  | 3.99 | JOSEPH MANUEL AZEVEDO |  | CUD | Unsecured | Unk |  |  | WAGE CLAIM LITIGATION |

| CLAIM NUMBER | SCHEDULE NUMBER | CLAIMANT NAME | DATE CLAIM FILED | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT | CLAIM AMOUNT | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| | 3.100 | JULIAN JOSEPH AZEVEDO | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.101 | JULIAN P AZEVEDO | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.106 | KYLE CHEVALIER | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.110 | LINO GRACE | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.113 | MANUEL AZEVEDO | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.114 | MARTIN THOMAS FORHAN | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.115 | MATTHEW LISOWSKI | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.128 | NATANAEL ARAGON-MARTINEZ | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.165 | THOMAS J GAMBLE | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.167 | TIMOTHY GREENWELL | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | 3.179 | WILLIAM H BOUSHELL | | CUD | Unsecured | Unk | | | WAGE CLAIM LITIGATION |
| | | | | | SETTLEMENT TOTAL: | | $420,000.00 | 420,000.00 | |

| SCHEDULE NUMBER | CLAIMANT NAME | CLAIMANT ADDRESS | CONTINGENT UNLIQUIDATED DISPUTED (CUD) | SECURED PRIORITY UNSECURED | SCHEDULED AMOUNT | ALLOWED UNSECURED CLAIMED AMOUNT | NOTES |
|---|---|---|---|---|---|---|---|
| 3.12 | AMERICAN TESTING AND ASSESSMENT LABS | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | | Unsecured | 2,785.00 | | |
| 3.26 | CAY CAPITAL LLC | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | | | 94,916.90 | 94,916.90 | |
| 3.81 | ILLUMINATION CASUALTY CORP | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | | | 1,217,702.53 | 1,217,702.53 | Loan |
| 3.82 | ILLUMINATION CASUALTY CORP | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | | | 1,666,316.77 | 1,666,316.77 | Loan |
| 3.83 | ILLUMINATION CASUALTY CORP | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | | | 111,801.00 | 111,801.00 | Pro rata premiums for 3 months (estimate) |
| 3.96 | JERRY CAROOM | 8812 FREY ROAD,   HOUSTON, TX 77034-0000 | CU | | 0.00 | 0.00 | Equipment Lease - 2015 Bentley, 2013 Bentley, 2017 MB E300 |
| 3.97 | JERRY CAROOM | D/B/A XTRALIGHT SERVICES, 8812 FREY ROAD HOUSTON, TX 77034-0000 | | | 1,068,971.06 | 1,068,971.06 | Affiliate |
| | | | | TOTAL: | 4,159,708.26 | 4,159,708.26 | |

# **EXHIBIT C**

# **FINANCIAL PROJECTIONS**

| | | 10/31/2018 | 11/30/2018 | 12/31/2018 | 2019 |
|---|---|---|---|---|---|
| **Beginning Cash** | | **100,000.00** | **1,244,000.00** | **1,351,000.00** | **1,458,000.00** |
| | | | | | |
| Inome | | | | | |
| | Sales | 2,300,000.00 | 2,300,000.00 | 2,300,000.00 | 30,000,000.00 |
| | Exit Financing | 1,350,000.00 | - | - | - |
| | | | | | |
| Cost of Goods Sold | | 1,518,000.00 | 1,518,000.00 | 1,518,000.00 | 19,500,000.00 |
| | | | | | |
| **Gross Receipts** | | **2,132,000.00** | **782,000.00** | **782,000.00** | **10,500,000.00** |
| | | 93% | 34% | 34% | 35% |
| Expenses | | | | | |
| | Operating Expenses | 640,000 | 640,000 | 640,000 | 7,620,000 |
| | Property Taxes (post-petition) | 12,000 | 12,000 | 12,000 | 144,000 |
| | Insurance | 23,000 | 23,000 | 23,000 | 276,000 |
| | | | | | |
| **Total Expenses** | | **675,000** | **675,000** | **675,000** | **8,040,000** |
| | | | | | |
| **Net Cash Flow (before debt service)** | | **1,457,000** | **107,000** | **107,000** | **2,460,000** |
| | | | | | |
| Debt Service | | - | 100,000 | 100,000 | 100,000 |
| | | | | | |
| Plan Payments | | | | | |
| | Hoover Slovacek[1] | - | - | - | - |
| | US Trustee | 13,000 | - | - | - |
| | Class 1 - Compass Bank[2] | - | | | |
| | Class 2 - Boston Litigation Plaintiffs | 300,000 | - | - | 110,000 |
| | Class 3 - General Unseucred Claims | | - | - | 997,220 |
| | | | | | |
| **Total Plan Payments** | | **313,000** | **-** | **-** | **1,107,220** |
| | | | | | |
| **End Balance** | | **1,244,000.00** | **1,351,000.00** | **1,458,000.00** | **2,810,780.00** |

[1]Fees through completion are estimated $180,000.  Hoover Slovacek holds $185,000 in trust at this time.

[2]Compass Bank will be paid directly by Texas Capital Bank, N.A. An additional $1,350,000 will be borrowed to pay other obligations under the Plan.

# EXHIBIT D

# LIQUIDATION ANALYSIS

| XtraLight Manufacturing, Ltd. | | | | |
|---|---|---|---|---|
| Case No. 18-31857 | | | | |
| | | | | |
| Assets: | | | Current FMV | Liquidation Value | |
| Cash[1] | | | 366,242.00 | 366,242.00 | 100.0% |
| Pre-Payments[2] | | | 397,022.00 | 277,915.40 | 70.0% |
| Accounts Receivable[3] | | | 3,850,415.00 | 2,887,811.25 | 75.0% |
| Inventory[4] | | | 2,031,598.00 | 1,015,799.00 | 50.0% |
| Office Furniture & Equipment[5] | | | 316,695.00 | - | 0.0% |
| Machinery & Equipment | | | 1,438,903.00 | 719,451.50 | 50.0% |
| Leasehold Improvements[6] | | | 130,160.00 | - | 0.0% |
| | | | | | |
| | Total Fair Market Value | | 8,531,035.00 | | |
| | Total Liquidation Value | | | 5,267,219.15 | |
| | | | | | |

[1] Cash includes estimated cash on hand as of July 31, 2018.

[2] As of July 31, 2018. About 70% of prepayments are for materials which will likely be recoverablein Chapter 7.

[3] Accounts Receivable as of July 31, 2018

[4] XtraLight believes a it would receive half the value of its inventory if sold at a fire sale.

[5] The book valuefurniture and equipment is listed.  However, these assets would have little value to the Trustee who would likely be unable to market t

[6] The leasehold improvements would not inure to the benefit of the Chapter 7 bankruptcy estate and will have no value to creditors if assets are liquidated.

| Creditor Payout according to Priority under 507 | | | Claim Amount | Amount Paid | Percentage Recovery |
|---|---|---|---|---|---|
| | | | | | |
| Administrative Claim of Compass Bank | | | 6,000,000.00 | 5,267,219.15 | 87.8% |
| Other Administrative Claims (Taxes, Fees, Bond) | | | - | - | 0.0% |
| Chapter 7 Administrative Costs | | | - | - | 0.0% |
| Chapter 11 Administrative Claims - Professionals/US Trustee | | | - | - | 100.0% |
| General Unsecured Claims | | | 5,576,949.00 | - | 0.0% |

In a Chapter 7, XtraLight does not foresee a distribution to creditors based on the amounts owed to Compass Bank.  It is likely Compass would move to lift the automatic stay to foreclose on its property.